# EXHIBIT 10

## HB2/Budget Trailer Materials

# HB2-FN-A-L

| Body | Description |
|------|-------------|
| H | Introduced (in recess of) 02/25/2021 and referred to Finance HJ 4 P. 48 |
| H | Division III Work Session: 03/09/2021 12:00 pm Members of the public may attend using the following link: To join the webinar: https://www.zoom.us/j/93701004543 |
| H | Division III Work Session: 03/16/2021 10:30 am Members of the public may attend using the following link: To join the webinar: https://www.zoom.us/j/93701004543 |
| H | Public Hearing: 03/16/2021 01:00 pm Members of the public may attend using the following link: To join the webinar: https://www.zoom.us/j/92166004660 |
| H | Division III Work Session: 03/12/2021 12:00 pm Members of the public may attend using the following link: To join the webinar: https://www.zoom.us/j/93701004543 |
| H | Division II Work Session: 03/16/2021 10:30 am Members of the public may attend using the following link: To join the webinar: https://www.zoom.us/j/96814127480 |
| H | Division I Work Session: 03/16/2021 09:00 am Members of the public may attend using the following link: To join the webinar: https://www.zoom.us/j/94444579237 |
| H | Division III Work Session: 03/19/2021 09:30 am Members of the public may attend using the following link: To join the webinar: https://www.zoom.us/j/93701004543 |
| H | Division III Work Session: 03/18/2021 09:30 am Members of the public may attend using the following link: To join the webinar: https://www.zoom.us/j/93701004543 |
| H | Division II Work Session: 03/17/2021 10:00 am Members of the public may attend using the following link: To join the webinar: https://www.zoom.us/j/96814127480 |
| H | Division II Work Session: 03/18/2021 10:00 am Members of the public may attend using the following link: To join the webinar: https://www.zoom.us/j/96814127480 |
| H | Division III Work Session: 03/15/2021 10:00 am Members of the public may attend using the following link: To join the webinar: https://www.zoom.us/j/93701004543 |
| H | Division I Work Session: 03/23/2021 10:30 am Members of the public may attend using the following link: To join the webinar: https://www.zoom.us/j/94444579237 |
| H | Division III Work Session: 03/22/2021 10:00 am Members of the public may attend using the following link: To join the webinar: https://www.zoom.us/j/93701004543 |
| H | ==CANCELLED== Division III Work Session: 03/25/2021 09:30 am Members of the public may attend using the following link: To join the webinar: https://www.zoom.us/j/93701004543 |
| H | ==CANCELLED== Division III Work Session: 03/26/2021 09:30 am Members of the public may attend using the following link: To join the webinar: https://www.zoom.us/j/93701004543 |
| H | Division II Work Session: 03/22/2021 10:00 am Members of the public may attend using the following link: To join the webinar: https://www.zoom.us/j/96814127480 |
| H | Division II Work Session: 03/23/2021 10:00 am Members of the public may attend using the following link: To join the webinar: https://www.zoom.us/j/96814127480 |
| H | Division II Work Session: 03/24/2021 10:00 am Members of the public may attend using the following link: To join the webinar: https://www.zoom.us/j/96814127480 |
| H | Division II Work Session: 03/25/2021 10:00 am Members of the public may attend using the following link: To join the webinar: https://www.zoom.us/j/96814127480 |
| H | ==CANCELLED== Division II Work Session: 03/26/2021 10:00 am Members of the public may attend using the following link: To join the webinar: https://www.zoom.us/j/96814127480 |
| H | Executive Session: 03/29/2021 10:00 am Members of the public may attend using the following link: To join the webinar: https://www.zoom.us/j/92166004660 |
| H | |

**CANCELLED** Executive Session: 03/30/2021 09:00 am Members of the
public may attend using the following link: To join the webinar:
https://www.zoom.us/j/92166004660

| | |
|---|---|
| H | **TIME CHANGE** Executive Session: 03/31/2021 10:00 am Members of the public may attend using the following link: To join the webinar: https://www.zoom.us/j/92166004660 |
| H | Majority Committee Report: Ought to Pass with Amendment # 2021-1059h (Vote 12-9; RC) **HC 18** P. 30 |
| H | Minority Committee Report: Inexpedient to Legislate |
| H | FLAM # 2021-1064h (Reps. Walz, Hatch): AF RC 175-203 04/07/2021 **HJ 5** P. 89 |
| H | FLAM # 2021-1065h (): AF RC 175-206 04/07/2021 **HJ 5** P. 92 |
| H | FLAM # 2021-1068h (Reps. Rogers, Nordgren, Wallner): AF RC 181-199 04/07/2021 **HJ 5** P. 94 |
| H | FLAM # 2021-1071h (Rep. McWilliams): AF RC 177-206 04/07/2021 **HJ 5** P. 96 |
| H | FLAM # 2021-1073h (Rep. Heath): AF RC 174-206 04/07/2021 **HJ 5** P. 99 |
| H | FLAM # 2021-1062h (Reps. Heath, K. Murray): AF RC 178-203 04/07/2021 **HJ 5** P. 101 |
| H | FLAM # 2021-1093h (Reps. Leishman, Buco): AF RC 186-197 04/07/2021 **HJ 5** P. 104 |
| H | FLAM # 2021-1094h (Reps. Hatch, Leishman, Buco, Walz): AF RC 176-208 04/07/2021 **HJ 5** P. 106 |
| H | FLAM # 2021-1063h (Rep. Hatch): AF RC 186-193 04/07/2021 **HJ 5** P. 109 |
| H | FLAM # 2021-1069h (Reps. Nordgren, Rogers, Wallner): AF RC 180-201 04/07/2021 **HJ 5** P. 115 |
| H | FLAM # 2021-1066h (Reps. Rogers, Nordgren, Wallner): AF RC 184-194 04/07/2021 **HJ 5** P. 117 |
| H | FLAM # 2021-1104h (Rep. Almy): AF RC 161-218 04/07/2021 **HJ 5** P. 120 |
| H | Ought to Pass with Amendment 2021-1059h: MA RC 200-181 04/07/2021 **HJ 5** P. 123 |
| H | Reconsider (Rep. Osborne): MF RC 175-204 04/07/2021 **HJ 5** P. 125 |
| S | Introduced 04/01/2021 and Referred to Finance; **SJ 11** |
| H | Amendment # 2021-1059h: AA RC 204-178 04/07/2021 **HJ 5** P. 87 |
| S | Remote Hearing: 05/04/2021, 01:00 pm; Links to join the hearing can be found in the Senate Calendar; **SC 21** |
| S | Remote Hearing: 05/04/2021, 06:00 pm; Links to join the hearing can be found in the Senate Calendar; **SC 21** |
| S | Committee Report: Ought to Pass with Amendment # 2021-1799s, 06/03/2021; **SC 26** |
| S | Sen. Soucy Moved to divide the Question on Committee Amendment 2021-1799s: on Sections 74-75; Sections 427-429, Sections 397-404; and Section 412; 06/03/2021; **SJ 18** |
| S | The Chair ruled the Question Divisible; 06/03/2021; **SJ 18** |
| S | Sen. Bradley Moved to divide the Question on Committee Amendment 2021-1799s Sections 89-102 and then the Remainder; 06/03/2021; **SJ 18** |
| S | Committee Amendment # 2021-1799s, on Sections 89-102, RC 13Y-10N, AA; 06/03/2021; **SJ 18** |
| S | Committee Amendment # 2021-1799s, Remainder of the Committee Amendment, RC 14Y-10N, AA; 06/03/2021; **SJ 18** |
| S | Sen. Bradley Floor Amendment # 2021-1816s, RC 24Y-0N, AA; 06/03/2021; **SJ 18** |
| S | Sen. Whitley Floor Amendment # 2021-1862s, RC 10Y-14N, AF; 06/03/2021; **SJ 18** |
| S | Sen. Kahn Floor Amendment # 2021-1855s, RC 10Y-14N, AF; 06/03/2021; **SJ 18** |
| S | Sen. Rosenwald Floor Amendment # 2021-1850s, RC 10Y-14N, AF; 06/03/2021; **SJ 18** |
| S | Sen. Kahn Floor Amendment # 2021-1863s, RC 10Y-14N, AF; 06/03/2021; **SJ 18** |
| S | Sen. Bradley Moved to divide the Question on Floor Amendment 2021-1861s on Sections 89-102 of the Amending Language and then the Remainder of the Amendment; 06/03/2021; **SJ 18** |
| S | The Chair ruled the Question Divisible; 06/03/2021; **SJ 18** |
| S | Floor Amendment #2021-1861s, Sections 89-102 of the Amending Language, RC 10Y-13N, AF; 06/03/2021; **SJ 18** |
| S | Floor Amendment 2021-1861s; on the Remainder of the Amendment RC 10Y-14N, AF; 06/03/2021; **SJ 18** |
| S | Sen. Rosenwald Floor Amendment # 2021-1858s, RC 9Y-14N, AF; 06/03/2021; **SJ 18** |

| | |
|---|---|
| S | Sen. Perkins Kwoka Floor Amendment # 2021-1859s, AA, VV; 06/03/2021; **SJ 18** |
| S | Sen. Rosenwald Floor Amendment # 2021-1847s, RC 9Y-14N, AF; 06/03/2021; **SJ 18** |
| S | Sen. Birdsell Floor Amendment # 2021-1842s, RC 14Y-9N, AA; 06/03/2021; **SJ 18** |
| S | Sen. Soucy Floor Amendment # 2021-1874s, RC 9Y-14N, AF; 06/03/2021; **SJ 18** |
| S | Sen. Kahn Floor Amendment # 2021-1876s, RC 9Y-14N, AF; 06/03/2021; **SJ 18** |
| S | The Chair ruled the Question Divisible; 06/03/2021; **SJ 18** |
| S | Sen. Whitley Floor Amendment # 2021-1883s, RC 9Y-14N, AF; 06/03/2021; **SJ 18** |
| S | Sen. Sherman Floor Amendment # 2021-1878s, RC 9Y-14N, AF; 06/03/2021; **SJ 18** |
| S | Sen. Rosenwald Floor Amendment # 2021-1875s, RC 9Y-14N, AF; 06/03/2021; **SJ 18** |
| S | Sen. Kahn Floor Amendment # 2021-1852s, RC 9Y-14N, AF; 06/03/2021; **SJ 18** |
| S | Sen. Whitley Floor Amendment # 2021-1867s, RC 9Y-14N, AF; 06/03/2021; **SJ 18** |
| S | Sen. Soucy Floor Amendment # 2021-1815s, RC 9Y-14N, AF; 06/03/2021; **SJ 18** |
| S | Sen. Rosenwald Floor Amendment # 2021-1882s, RC 9Y-14N, AF; 06/03/2021; **SJ 18** |
| S | Sen. Daniels Floor Amendment # 2021-1821s, AA, VV; 06/03/2021; **SJ 18** |
| S | Sen. Carson Floor Amendment # 2021-1827s, AA, VV; 06/03/2021; **SJ 18** |
| S | Sen. Giuda Floor Amendment # 2021-1838s, RC 8Y-15N, AF; 06/03/2021; **SJ 18** |
| S | Sen. Hennessey Floor Amendment # 2021-1866s, AA, VV; 06/03/2021; **SJ 18** |
| S | Sen. Bradley Moved to divide the Question on Ought To Pass with Amendment on Sections 89-102 and then the Remainder of the Bill; 06/03/2021; **SJ 18** |
| S | The Chair ruled the Question Divisible; 06/03/2021; **SJ 18** |
| S | Sen. Bradley Floor Amendment # 2021-1884s, AA, VV; 06/03/2021; **SJ 18** |
| S | Ought to Pass with Amendment on Sections 89-102, RC 13Y-9N, MA, 06/03/2021; **SJ 18** |
| S | Ought to Pass with Amendment on the Remainder of the Bill, RC 14Y-9N, MA, OT3rdg; 06/03/2021; **SJ 18** |
| S | Committee Amendment # 2021-1799s, on Sections 74-75 Sections 427-429 Sections 397-404 and Section 412, RC 24Y-0N, AA; 06/03/2021; **SJ 18** |
| S | Sen. D'Allesandro Floor Amendment # 2021-1861s; 06/03/2021; **SJ 18** |
| S | Without Objection, the Clerk is authorized to make technical and administrative corrections which are necessary to reflect the intent of the Senate. Relative to Bills and Amendments Passed Today, MA; 06/03/2021; **SJ 18** |
| H | House Non-Concurs with Senate Amendment 2021-1799s and 2021-1816s and 2021-1859s and 2021-1842s and 2021-1821s and 2021-1827s and 2021-1866s and 2021-1884s and Requests CofC (Reps. L. Ober, Weyler, Umberger, Turcotte, Packard) MA VV 06/04/2021 **HJ 9** P. 53 |
| H | Speaker Appoints Alternates: Reps. Edwards, Leishman, Wallner, Major, Emerick 06/04/2021 **HJ 9** P. 53 |
| S | Sen. Daniels Accedes to House Request for Committee of Conference, MA, VV; (In recess 06/03/2021); **SJ 19** |
| S | President Appoints: Senators Morse, Bradley, Rosenwald; (In Recess 06/03/2021); **SJ 19** |
| H | ==RECESSED== Conference Committee Meeting: 06/14/2021 11:00 am LOB 210-211 |
| H | Conferee Change: Rep. Erf added as Alternate 06/10/2021 **HJ 10** P. 22 |
| H | ==RECESSED== Conference Committee Meeting: 06/15/2021 01:00 pm LOB 210-211 |
| H | ==RECESSED== Conference Committee Meeting: 06/16/2021 01:00 pm LOB 210-211 |
| H | ==CONTINUED== Conference Committee Meeting: 06/17/2021 10:00 am LOB 210-211 |
| S | Conferee Change; Senator Daniels Replaces Senator Rosenwald; **SJ 20** |
| H | Conferee Change: Rep. Edwards Replaces Rep. Turcotte 06/10/2021 **HJ 10** P. 23 |
| H | Conferee Change: Rep. Emerick Replaces Rep. Packard 06/10/2021 **HJ 10** P. 23 |
| S | Conference Committee Report Filed, # 2021-2040c; 06/24/2021 |
| S | Conference Committee Report # 2021-2040c; RC 14Y-10N, Adopted; 06/24/2021; **SJ 20** |
| H | Reconsider (Rep. Osborne): MF DV 172-203 06/24/2021 |
| H | Conference Committee Report 2021-2040c: Adopted, RC 198-181 06/24/2021 |

S          Enrolled Bill Amendment # 2021-2048e Adopted, VV, (In recess of 06/24/2021);
           **SJ 20**

H          Enrolled Bill Amendment # 2021-2048e: AA VV (in recess of) 06/24/2021

H          Enrolled (in recess of) 06/24/2021

S          Enrolled Adopted, VV, (In recess 06/24/2021); **SJ 20**

H          Signed by Governor Sununu 06/25/2021; Chapter 91; Unless otherwise
           specified the remainder of this act shall take effect: 07/01/2021

**House**

House Finance
March 31, 2021
2021-1059h
05/06

Amendment to HB 2-FN-A-LOCAL

1    Amend the bill by replacing all after the enacting clause with the following:

1 ████████████████████████████████████████████████

2 ████████████████████████████████  ███████████████

3 ████████████████████████████████████████████████

4 ████████████████████████████████████████████████

5 ████████████████████████████████████████████████

6 ████████████████████████████████████████████████

7 ████████████████████████████████████████████████

8 ██████████████

9 ██████████████████████████████████

10 ████████████████████████████████

11　　　330  New Chapter; Propagation of Divisive Concepts Prohibited.  Amend RSA by inserting after

12　chapter 10-B the following new chapter:

13 CHAPTER 10-C

14 PROPAGATION OF DIVISIVE CONCEPTS PROHIBITED

15　10-C:1  Definitions.  In this chapter:

16　　　I.  "Contractor" means any and all persons, individuals, corporations, or businesses of any

17　kind that in any manner have entered into a contract, or perform a subcontract pursuant to a

18　contract, with the state of New Hampshire.

19　　　II.  "Divisive concept" means the concept that:

20　　　　　(a)  One race or sex is inherently superior to another race or sex;

21　　　　　(b)  The state of New Hampshire or the United States is fundamentally racist or sexist;

22　　　　　(c)　An individual, by virtue of his or her race or sex, is inherently racist, sexist, or

23　oppressive, whether consciously or unconsciously;

24　　　　　(d)  An individual should be discriminated against or receive adverse treatment solely or

25　partly because of his or her race or sex;

26　　　　　(e)　Members of one race or sex cannot and should not attempt to treat others without

27　respect to race or sex;

28　　　　　(f)  An individual's moral character is necessarily determined by his or her race or sex;

29　　　　　(g)　An individual, by virtue of his or her race or sex, bears responsibility for actions

30　committed in the past by other members of the same race or sex;

31　　　　　(h)　Any individual should feel discomfort, guilt, anguish, or any other form of

32　psychological distress on account of his or her race or sex; or

33　　　　　(i)  Meritocracy or traits such as a hard work ethic are racist or sexist, or were created by

34　a particular race to oppress another race.

35　　　　　(j)  The term "divisive concepts" includes any other form of race or sex stereotyping or

36　any other form of race or sex scapegoating.

**Amendment to HB 2-FN-A-LOCAL**
**- Page 156 -**

III.  "Race or sex stereotyping" means ascribing character traits, values, moral and ethical codes, privileges, status, or beliefs to a race or sex, or to an individual because of his or her race or sex.

IV.  "Race or sex scapegoating" means assigning fault, blame, or bias to a race or sex, or to members of a race or sex because of their race or sex.  It similarly encompasses any claim that, consciously or unconsciously, and by virtue of his or her race or sex, members of any race are inherently racist or are inherently inclined to oppress others, or that members of a sex are inherently sexist or inclined to oppress others.

V.  "The state of New Hampshire" means all agencies and political subdivisions of the state of New Hampshire, including counties, cities, towns, school districts, and the state university system.

VI.  "Student" means any and all students of any school district, school, college, or university which receives grants, funds, or assets from the state of New Hampshire.

10-C:2  Unlawful Propagation of Divisive Concepts.

I.  Requirements for the state of New Hampshire:

(a)  The state of New Hampshire shall not teach, instruct, or train any employee, contractor, staff member, student, or any other individual or group, to adopt or believe any of the divisive concepts defined in RSA 10-C:1, II.

(b)  No employee, contractor, staff member, or student of the state of New Hampshire shall face any penalty or discrimination on account of his or her refusal to support, believe, endorse, embrace, confess, act upon, or otherwise assent to the divisive concepts defined in RSA 10-C:1, II.

II.  Requirements for government contractors:

(a)  All state contracts entered into on or after the effective date of this chapter shall include the following provision:

"During the performance of this contract, the contractor agrees as follows:

The contractor shall not use any workplace training that inculcates in its employees any form of race or sex stereotyping or any form of race or sex scapegoating, including the concepts that:  (a) one race or sex is inherently superior to another race or sex; (b) an individual, by virtue of his or her race or sex, is inherently racist, sexist, or oppressive, whether consciously or unconsciously; (c) an individual should be discriminated against or receive adverse treatment solely or partly because of his or her race or sex; (d) members of one race or sex cannot and should not attempt to treat others without respect to race or sex; (e) an individual's moral character is necessarily determined by his or her race or sex; (f) an individual, by virtue of his or her race or sex, bears responsibility for actions committed in the past by other members of the same race or sex; (g) any individual should feel discomfort, guilt, anguish, or any other form of psychological distress on account of his or her race or sex; or (h) meritocracy or traits such as a hard work ethic are racist or sexist, or were created by a particular race to oppress another race.  The term "race or sex stereotyping" means ascribing character traits,

1   values, moral and ethical codes, privileges, status, or beliefs to a race or sex, or to an individual

2   because of his or her race or sex, and the term "race or sex scapegoating" means assigning fault,

3   blame, or bias to a race or sex, or to members of a race or sex because of their race or sex."

4          (b)   The contractor shall send to each labor union or representative of workers with

5   which the contractor has a collective bargaining agreement or other contract or understanding, a

6   notice, to be provided by the agency contracting officer, advising the labor union or workers'

7   representative of the contractor's commitments under this section, and shall post copies of the notice

8   in conspicuous places available to employees and applicants for employment.

9          (c)   In the event of the contractor's noncompliance with the requirements of this section,

10   or with any rules, regulations, or policies that may be promulgated in accordance with this section,

11   the contract may be canceled, terminated, or suspended in whole or in part and the contractor may

12   be declared ineligible for further government contracts.

13          (d)   The contractor shall include the provisions of this section in every subcontract or

14   purchase order unless exempted by rules, regulations, or policies of the department of administrative

15   services, so that such provisions shall be binding upon each subcontractor or vendor.  The contractor

16   shall take such action with respect to any subcontract or purchase order as may be directed by the

17   department of administrative services as a means of enforcing such provisions including sanctions

18   for noncompliance.

19          III.   The department of administrative services, or an agency designated by the department

20   of administrative services, is directed to investigate complaints received alleging that a state

21   contractor is utilizing such training programs in violation of the contractor's obligations under the

22   binding provisions of this section.  The department shall take appropriate enforcement action and

23   provide remedial relief, as appropriate.

24          IV.   The heads of all agencies shall review their respective grant programs and identify

25   programs for which the agency may, as a condition of receiving such a grant, require the recipient to

26   certify that it will not use state funds or assets to promote any of the divisive concepts defined in

27   RSA 10-C:1, II.

28          V.   Requirements for agencies.

29          (a)   The fair and equal treatment of individuals is an inviolable principle that must be

30   maintained in the state workplace.  Agencies should continue all training that will foster a

31   workplace that is respectful of all employees.  Accordingly:

32          (1)   The head of each agency shall use his or her authority under to ensure that the

33   agency, agency employees while on duty status, and any contractors hired by the agency to provide

34   training, workshops, forums, or similar programming, for purposes of this section, "training," to

35   agency employees do not teach, advocate, act upon, or promote in any training to agency employees

36   any of the divisive concepts listed in RSA 10-C:1; and

**Amendment to HB 2-FN-A-LOCAL**
**- Page 158 -**

1     (2)  Agency diversity and inclusion efforts shall, first and foremost, encourage agency
2  employees not to judge each other by their color, race, ethnicity, sex, or any other characteristic
3  protected by federal or state law.

4     (b)  The commissioner of the department of administrative services, pursuant to RSA
5  541-A, shall develop regulations for the enforcement of the provisions of this statute.

6     (c)  Each agency head shall:

7     (1)  Issue a policy incorporating the requirements of this chapter into agency
8  operations, including by making compliance with the policy a provision in all agency contracts;

9     (2)  Request that the agency thoroughly review and assess not less than annually
10  thereafter, agency compliance with the requirements of the policy in the form of a report submitted
11  to the department of administrative services; and

12     (3)  Assign at least one senior political appointee responsibility for ensuring
13  compliance with the requirements of the policy.

14  VI.  Review of agency training.

15     (a)  All training programs for state agency employees relating to diversity or inclusion
16  shall, before being used, be reviewed by the department of administrative services for compliance
17  with the requirements of RSA 10-C:2, V.

18     (b)  If a contractor provides a training for agency employees relating to diversity or
19  inclusion that teaches, advocates, or promotes the divisive concepts defined in RSA 10-C:1, II, and
20  such action is in violation of the applicable contract, the agency that contracted for such training
21  shall evaluate whether to pursue debarment of that contractor, consistent with applicable law and
22  regulations.

23  10-C:3  General Provisions.

24  I.  Nothing in this chapter shall prevent agencies or contractors from promoting racial,
25  cultural, or ethnic diversity or inclusiveness, provided such efforts are consistent with the
26  requirements of this chapter.

27  II.  Nothing in this chapter shall be construed to prohibit discussing, as part of a larger
28  course of academic instruction, the divisive concepts listed in RSA 10-C:1, II in an objective manner
29  and without endorsement.

30  III.  If any provision of this chapter, or the application of any provision to any person or
31  circumstance, is held to be invalid, the remainder of this chapter and the application of its provisions
32  to any other persons or circumstances shall not be affected thereby.

33  331  Effective Date.  Section 330 of this act shall take effect January 1, 2022.



**State of
New Hampshire**

# HOUSE RECORD

### First Year of the 167th General Court

## Calendar and Journal of the 2021 Session

#### Web Site Address: www.gencourt.state.nh.us

| Vol. 43 | Concord, N.H. | Friday, April 2, 2021 | No. 18 |

**Contains: House Deadlines; House Bills Amended by Senate; Committee Reports;
Meetings and Notices; Revised Fiscal Notes**

# HOUSE CALENDAR

**MEMBERS OF THE HOUSE:**

The House will meet in session on Wednesday, April 7th at 9:00 a.m., Thursday, April 8th, at 9:00 a.m., and Friday, April 9th at 9:00 a.m. in the NH Sportsplex facility at 68 Technology Dr. in Bedford, NH.

Session day logistics, including arrival times, parking, entry, materials and lunch distribution will be similar to the previous event, and where necessary, updates and modifications have been made. Those details appear in the back of this House Calendar. House members can expect an email with any further details early next week.

I have discussed with the Democratic and Republican Leaders our need to work together to manage our time wisely during the House session days. While there may be disagreement on many issues, we all agree that we can complete our business in a timely manner if we work together with mutual respect and understanding.

The House Finance committee will offer a budget briefing for House members on Monday April 5th at 1:00 p.m. via Zoom webinar. As in prior budget years, members of the public may watch a livestream via YouTube. A link to the YouTube stream is published in a notice in this House Calendar. House members will receive a link to the webinar by email so they may raise their hand and ask questions of the Finance Committee and Legislative Budget Assistant, if desired.

The amendment to House Bill 1 adopted by the majority of the House Finance Committee is one that replaces the entire bill and is over 700 pages long. Rather than print 400 copies of that amendment for next week, the Legislative Budget Assistant's Office has posted a link to that amendment here: http://www.gencourt.state.nh.us/LBA/Budget/Capital_Budget_House/Week%20of%203-29/HB_1_H_Finance_COMBINED_33021.pdf All other amendments to bills will be printed in two addendum calendars.

Additionally, if you are interested in the other documents used throughout the entire House budget process, the LBA has a webpage with those available to you found here:http://www.gencourt.state.nh.us/LBA/Budget/fy2022_2023_budget.aspx

The New Hampshire Automobile Dealers Association will be sponsoring one of our session day's lunches next week at session. Typically the NHADA hosts an annual Crossover reception for all legislators and staff, however in this unusual time, we have not been able to attend the usual social events that may exist for legislators. These receptions go a long way in terms of allowing members across the whole chamber to socialize and get to know their colleagues, and I know I speak for myself when I say this has been missed. We are thankful to the NHADA for sponsoring this lunch.

I am happy to announce that captioning for House sessions is now available. The link to access captions is a separate link from the session streaming link and will be available on the General Court website before the start of each session.

Sherman A. Packard, Speaker of the House

---

## NOTICE

The **Finance** Committee will hold **budget briefings** on *HB 1-A*, making appropriations for the expenses of certain departments of the state for fiscal years ending June 30, 2022 and June 30, 2023, and *HB 2-FN-A-L*, relative to state fees, funds, revenues, and expenditures on April 5th at 1:00 pm. House members will receive secure Zoom links. Members of the public may attend using the following link: https://www.youtube.com/watch?v=MvMW6Lf-ltw.

Rep. Kenneth Weyler, Chairman
Finance Committee

HB 1 provides no funding to the Department of Transportation (DOT) to address the deficit in the Highway Fund and has left DOT with a vacancy level in staffing of 15%. The reduction in the equipment maintenance fund will cause delays in planned road and bridge repairs by about two years.

Four million was cut from the Department of Safety (DOS), resulting in the underfunding of over 50 positions which will likely cause delays in services, especially in the DMV. Constituents using other DOS agencies will find an increase in wait times and a delay in response times across all services due to cuts in almost every line item in the safety portion of HB 1. All of these cuts are compounded by huge lapses back to the general fund in 2021 due to COVID-19. This budget will leave the Department of Safety unable to fully staff its Forensic, CODIS, Toxicology Lab and unable to maintain its vehicle replacement plan.

HB 1 underfunds the Department of Health and Human Services (DHHS) in many areas. This budget fails to fund the gap in federal funding that is vital for family planning providers across the state who provide vital services such as STD testing and cancer screening that do not currently exist in traditionally underserved parts of the state.

The DHHS-Tobacco Prevention and Cessation Unit had requested and was denied in this budget an additional prioritized need of $440,000 to fully implement an adolescent tobacco helpline to address this critical need. Without this additional $440,000, DHHS will be unable to fully implement this program and meet the needs of addicted youth through cessation services. This additional funding is a drop in the bucket compared to the over $214 million New Hampshire generated in tobacco tax revenue in 2020.

The youth rapid rehousing program that addresses teen homelessness is not funded in this budget. The purpose of this program is to support youth 18-24 who are experiencing homelessness by providing two years of rental assistance and supportive services to successfully maintain housing.

This budget directs DHHS to cut $50 million in general funds; $30 million in the first year and $20 million in the second year in any area excluding a few services. At this time there is no way of knowing what services would be reduced since the Finance Committee handed this responsibility to the department. Also, since most general funds at DHHS are matched with federal funds, we stand to lose an additional $50 million in federal matching funds.

In addition to any other required reductions, DHHS is directed to reduce their personnel budget by $22.6 million, which represents 226 full-time positions. This budget also requires that at no time during the biennium shall DHHS exceed 3,000 full-time authorized positions, further restricting the department's ability to provide critical direct services to New Hampshire residents. Here we stand to lose up to an additional $22.6 million in federal matching funds.

This budget fails to fund valuable public health services supported home visiting programs that help strengthen young families in New Hampshire. These services include individualized support, parenting education, and access to resources like primary care, WIC, and early intervention to reduce stress and improve family life. HB 1 dramatically underfunds protective preventive child care services for families who are under stress and involved with DCYF, helping to prevent abuse or neglect.

HB 1 does not fund the widely supported adult dental program that would require DHHS to provide critical adult dental care to residents under the Medicaid managed care program.

The minority finds that it cannot support HB 1 as amended by the Finance Committee due to the extensive underfunding of vital services, programs and positions throughout the state workforce.

**HB 2-FN-A-LOCAL,** relative to state fees, funds, revenues, and expenditures. **MAJORITY: OUGHT TO PASS WITH AMENDMENT. MINORITY: INEXPEDIENT TO LEGISLATE.**

Rep. Kenneth Weyler for the **Majority** of Finance. HB 1 contains all the spread sheets and line items which are appropriated for spending. However, there are tax changes and reorganizations that are part of the appropriating process. These details are delineated in HB 2, sometimes called the trailer bill. This time HB 2 had more reorganization than normal. We from Finance, asked the policy committee chairmen to review the appropriate sections. The Governor proposed combining the university system with the community college system. The timeline seemed too short, so we stretched it out. Previous budgets funded development money for a 25 bed psychiatric hospital, but in HB 2 it became a 60 bed hospital. We had no warning of such a change, so we will remove that for further study. A 60 page reorganization of the Department of Energy was in the bill. After review by the Science, Technology and Energy Committee, that went forward. We need to not only remember that this is one of our most important votes, but that we all need to support it for the good of our citizens.

A Graphic Services Fund created to better manage Administrative Services, and Payment and Procurement Fund established to pay costs of procurement card collections. Several tax reductions, in Business Profits Tax, Business EnterpriseTax, Rooms and Meals, and Interest and Dividends. Reduction in Carry Forward Tax Credit changed. Historical Horse Racing was added to increase revenue. Some sections eliminated as no longer needed. A major reorganization of the Public Utilities Commission and the Department of Energy were reviewed before inclusion in the bill.

Due to increased revenue projections from Ways and Means and the reduction of the Public School Infrastructure program we were able to fund much needed programs in the Department of Transportation. As you saw in HB 1

we had reduced the highway fund by over $5 million. The extra revenue allowed us to put $19 million back into the highway fund to support the Highway Block Grants, betterment, winter maintenance and provide money for fleet equipment. In the Department of Education (DOE) we were able to put $19,836,000 into building aid and require schools to submit a 10 year plan to the state for building requirements. We also provided $8,000,000 to accelerate payments for current liabilities DOE owes on outstanding school bonds. We will also reduce the SWEPT (State-Wide Education Property Tax) to be collected from cities and towns by $100,000. This reduction to the local taxpayers will be reimbursed to the cities and towns from the state so all school districts will be made whole. We also funded dual and concurrent enrollment program at $1,500,000 per year and transferred the management from DOE to the Community College System of New Hampshire. We also increased the charter school lease cap to $50,000. Finally, several schools that began kindergarten in FY20/21 did not receive their start up grants so we allocated $1,906,313. The Governor had proposed a plan for the merger of the University System and the Community College System with one Board of Trustees starting in July 2021. We believed this action needed to slow down a little and we are recommending a commission to bring back to the legislature by January 22 their plan for merging the two systems. If approved, it will be effective in July 23. We outlined numerous areas that they should look at as well as providing $1.5 million to hire outside experts to assist them. We also approved, with the help of the Transportation Committee the definition of unmanned aircraft, and Fish and Game helped us sort through Wildlife Damage Control: damage by bears.

The legislature lent the Governor a large share of its powers under the state of emergency laws passed in 2002 with the image of 9/11 fresh in our minds. With this first use of those laws, it's become clear that the legislature made it easy for the Governor to declare an emergency and made it very difficult for the legislature to either be involved in crisis management policies, federal funding decisions, restriction of civil and constitutional rights, or in bringing the state of emergency to an appropriate end. The legislature gave up too much involvement and too much discretion and part of HB 2 addresses sharing power more appropriately to bring an emergency to a conclusion. We removed an authorization to build a 60-bed new forensic mental health hospital because the size grew from 25 to 60 and the funds being authorized appeared to circumvent standard capital budgeting processes. We removed $1.5 million from a well-intended program to help senior citizen centers with barrier materials to mitigate virus spread because over 800 centers were eligible and the program overhead costs would make an evaluation and award program ineffective. Family planning programs were fully funded with a $50,000 set-aside for new program awardees. This is intended to stimulate the full, fair and open competition as a restriction is added to prohibit abortion services from being provided at the same location as state funded family planning counseling. Opponents argue that it is impossible to separate abortion services from the seven existing centers offering family planning counseling due to costs. This argument does not recognize that the other seven centers have not been offering abortion and Pro-Choice advocates have often stated that "no family planning money is going to fund abortions." HB 2 helps that to be a true statement. The Department of Health and Human Services has been reluctant to provide alternatives to housing juveniles in the Sununu Youth Center in committed and detained statuses. The state spends about $1 million a year per person to maintain a census of 10-16. With new restrictions on who can be housed at the Center, that $13 million a year would go to a population expected to be less than half the current size. With a 60% recidivism rate, the current model is obviously broken and we are shutting it down in FY23. **Vote 12-9.** Rep. Mary Jane Wallner for the **Minority** of Finance. The minority of the Finance Committee cannot support HB 2 as presented. Included are over $100 million in revenue cuts resulting from cuts to the Business Enterprise Tax, the Business Profits Tax, The Rooms and Meals Tax, and the Interest and Dividends Tax. The outcomes are dangerous reductions in essential services such as the elimination of water grants already awarded to communities throughout the state, likely causing an increase in local property tax burdens. Revenue sharing in the form of direct support to cities and towns across the state from the previous biennium is not continued. Various policies that have never had a public hearing are included. Specifically, HB 2 includes a very flawed creation of a new Department of Energy that expands government, guts the Public Utilities Commission, and is funded by having our citizens pay more in their electric, gas and water utility bills. It also includes the use of our limited public dollars to reimburse those who gambled their money in the Financial Resources Mortgage (FRM) Ponzi scheme. No state has ever used tax dollars to reimburse people for their own bad investments. HB 2 includes the language of HB 544 that prohibits teaching about "divisive concepts" such as unconscious bias, an ideological policy that should have no place in law, much less in a budget.

HB 2 proposes a merger of the University System of New Hampshire and the Community College System of New Hampshire without any public hearing or input from the major stakeholders, including faculty, students, unions and administration. While the idea may have merit, the timeline proposed is unrealistic and could lead to serious unforeseen and unintended consequences.

Additionally, instead of using $100 million to mitigate losses seen by school districts due to the pandemic, a late amendment was introduced to use that money for a one-time reduction of SWEPT (State-Wide Education Property Tax). This would only result in a very small tax reduction to property owners, while using that money to shore up stressed school budgets would benefit all children in all school districts throughout the state.

This budget unfunds any family planning health care clinic that offers abortion services by requiring that no state funds shall be awarded to any "reproductive health facility" unless the state funded family planning program project is physically and financially separate from a reproductive health facility as defined in RSA 132:37, I. In addition to severely restricting abortion service in the Granite State, language in HB 2 will also make receiving health care services for lower income families extremely difficult. Family planning health care clinics provide the vast majority of STD testing, breast exams and pap tests across the state. This budget puts at risk vital health services and basic care to some of our most vulnerable residents.

This budget only partially funds the implementation of the recommendations of a review conducted by Alvarez & Marsal to increase efficiencies and accountability within DHHS. In particular the report recommends bringing back to New Hampshire, and developing adequate care options, for 38 individual adults with developmental disabilities who are currently receiving services in Florida due to lack of appropriate facilities in New Hampshire. By bringing these individuals home, they would be near their families and existing support networks. This implementation also has the potential for cost savings by providing more appropriate care in-state.

A last minute policy addition to HB 2 dramatically alters the powers of the Governor relating to declaring a state of emergency. Similar policy proposals have been introduced and thoroughly addressed in policy committees. HB 2 is not the appropriate place for additions such as this.

The minority finds that it cannot support HB 2 as amended by the Finance Committee due to the significant underfunding of vital services, programs and positions throughout the state workforce as well as the inclusion of wide reaching and controversial matters that we think should have been worked out with public input in policy committees.

# WEDNESDAY, APRIL 7
# REGULAR CALENDAR - PART TWO
## CHILDREN AND FAMILY LAW

**HB 139,** relative to the submission of evidence in divorce proceedings. **MAJORITY: OUGHT TO PASS. MINORITY: INEXPEDIENT TO LEGISLATE.**

Rep. Josh Yokela for the **Majority** of Children and Family Law. This bill addresses the current problem of evidence submitted on the day of court, which is in violation of current court rules that are not always enforced. The bill allows for the opposing party to request a continuance if evidence was submitted 5 days prior to the hearing, allowing for preparation of a rebuttal. It also allows for a judge to declare evidence as de minimis and to record reasoning for not granting a continuance. **Vote 8-7.**

Rep. Debra Altschiller for the **Minority** of Children and Family Law. This bill is well-intentioned, but will undermine current NH Family Division rules which actually provide for submissions of evidence up to five days before a hearing, as set forth in the bill. The committee heard testimony from both the NH Judicial branch and from NH Legal Assistance that this bill would have the opposite effect than is intended. The testimony reinforced that current rules already provide the mechanisms necessary to exclude evidence that is not submitted in a timely fashion. The bill seeks to undermine the judicial rules process where there is already legislative representation and is potentially harmful to an already stressed court.

**HB 142,** relative to causes for divorce. **MAJORITY: OUGHT TO PASS. MINORITY: INEXPEDIENT TO LEGISLATE.**

Rep. Debra DeSimone for the **Majority** of Children and Family Law. The current NH statute, reflected in section 458:7, is more than 20 years old and does not reflect societal changes such as same gender marriage and serious drug and alcohol addiction problems. This bill simply updates the law to encompass these issues. **Vote 8-7.**

Rep. Gaby Grossman for the **Minority** of Children and Family Law. This bill is attempting to revise fault-based grounds for divorce to include adultery for same-sex marriage and habitual alcohol and drug abuse. The Supreme Court of NH is currently addressing the issue of adultery in same-sex situations and a finding from the courts related to this matter is expected. The bill text lacks specific language related to alcohol and drug abuse Substance Use Disorder (SUD) treatment may not always be consecutive and recovery from SUD can be a fluid situation which, due to vague language in this legislation, may result in more problems for someone actively seeking treatment.

**HB 161,** relative to the calculation of child support. **MAJORITY: OUGHT TO PASS WITH AMENDMENT. MINORITY: INEXPEDIENT TO LEGISLATE.**

Rep. Josh Yokela for the **Majority** of Children and Family Law. The majority believes that the calculation of child support is overdue for an update and this bill adopts the recommendations of the last child support study which is required by law to happen every four years. The amendment clarifies that the court can make adjustments to child support for the best interest of the child. The bill raises the self-support reserve so people are not put into homelessness by child support. It updates to the percentages in the child support calculation and adds a credit for shared parenting which causes most of the deviations from the current formula. This bill will smooth the process in the courts with a more predictable and just outcome. **Vote 8-7.**

Rep. Hatch, Coos 6
March 31, 2021
2021-1063h
12/08

Floor Amendment to HB 2-FN-A-LOCAL

1   Amend the bill by deleting sections 330 and 331 relative to the dissemination of divisive concepts.

2021-1063h

AMENDED ANALYSIS

Delete:

76.  Defines and prohibits the dissemination of certain divisive concepts related to sex and race in state contracts, grants, and training programs.

**HB 2-FN-A-LOCAL - AS AMENDED BY THE HOUSE**

7Apr2021... 1059h

2021 SESSION

21-1082
08/10

HOUSE BILL     *2-FN-A-LOCAL*

AN ACT          relative to state fees, funds, revenues, and expenditures.

SPONSORS:     Rep. Weyler, Rock. 13; Rep. L. Ober, Hills. 37; Rep. Edwards, Rock. 4; Rep.
              Umberger, Carr. 2

COMMITTEE:    Finance

─────────────────────────────────────────────────────────

AMENDED ANALYSIS

1.  Requires the judicial branch to reimburse the sheriff's offices for costs of court security and prisoner custody and control, within available funds appropriated by the legislature, and requires remote technology whenever possible.

2.  Makes a transfer of unexpended funds to the state heating system savings account.

3.  Eliminates the bureau of planning and management functions and moves such functions to the division of plant and property.

4.  Establishes the graphic services fund in the department of administrative services.

5.  Consolidates human resources and payroll functions in the department of administrative services.

6.  Repeals the memorandum of understanding with the commissioner of the department of health and human services for the purpose of delineating the functions to be assumed by the department of administrative services.

7.  Extends the date on which an appropriation to the department of administrative services for scheduling software lapses.

8.  Directs the payment of state employee medical benefits payments  from  the retirement system.

9.  Enables the supreme court to transfer funds.

10.  Provides for the state to reimburse the sheriff's offices for court security for the biennium.

11.  Enables the sale of the lakes region facility in Laconia.

12.  Requires the commissioner of the department of health and human services to make quarterly reports on the status of estimated Medicaid payments in relation to actual costs.

13.  Repeals provisions relative to the senior volunteer grant program.

14.  Establishes the emergency services for children, youth, and families fund.

15.  Eliminates certain parental reimbursements.

**HB 2-FN-A-LOCAL - AS AMENDED BY THE HOUSE**
**- Page 155 -**

330  New Chapter; Propagation of Divisive Concepts Prohibited.  Amend RSA by inserting after chapter 10-B the following new chapter:

CHAPTER 10-C

PROPAGATION OF DIVISIVE CONCEPTS PROHIBITED

10-C:1  Definitions.  In this chapter:

I.  "Contractor" means any and all persons, individuals, corporations, or businesses of any kind that in any manner have entered into a contract, or perform a subcontract pursuant to a contract, with the state of New Hampshire.

II.  "Divisive concept" means the concept that:

(a)  One race or sex is inherently superior to another race or sex;

(b)  The state of New Hampshire or the United States is fundamentally racist or sexist;

(c)  An individual, by virtue of his or her race or sex, is inherently racist, sexist, or oppressive, whether consciously or unconsciously;

(d)  An individual should be discriminated against or receive adverse treatment solely or partly because of his or her race or sex;

(e)  Members of one race or sex cannot and should not attempt to treat others without respect to race or sex;

(f)  An individual's moral character is necessarily determined by his or her race or sex;

(g)  An individual, by virtue of his or her race or sex, bears responsibility for actions committed in the past by other members of the same race or sex;

(h)  Any individual should feel discomfort, guilt, anguish, or any other form of psychological distress on account of his or her race or sex; or

(i)  Meritocracy or traits such as a hard work ethic are racist or sexist, or were created by a particular race to oppress another race.

(j)  The term "divisive concepts" includes any other form of race or sex stereotyping or any other form of race or sex scapegoating.

**HB 2-FN-A-LOCAL - AS AMENDED BY THE HOUSE**
**- Page 156 -**

1    III.  "Race or sex stereotyping" means ascribing character traits, values, moral and ethical

2    codes, privileges, status, or beliefs to a race or sex, or to an individual because of his or her race or

3    sex.

4    IV.  "Race or sex scapegoating" means assigning fault, blame, or bias to a race or sex, or to

5    members of a race or sex because of their race or sex.  It similarly encompasses any claim that,

6    consciously or unconsciously, and by virtue of his or her race or sex, members of any race are

7    inherently racist or are inherently inclined to oppress others, or that members of a sex are

8    inherently sexist or inclined to oppress others.

9    V.  "The state of New Hampshire" means all agencies and political subdivisions of the state

10   of New Hampshire, including counties, cities, towns, school districts, and the state university

11   system.

12   VI.  "Student" means any and all students of any school district, school, college, or university

13   which receives grants, funds, or assets from the state of New Hampshire.

14   10-C:2  Unlawful Propagation of Divisive Concepts.

15   I.  Requirements for the state of New Hampshire:

16   (a)  The state of New Hampshire shall not teach, instruct, or train any employee,

17   contractor, staff member, student, or any other individual or group, to adopt or believe any of the

18   divisive concepts defined in RSA 10-C:1, II.

19   (b)  No employee, contractor, staff member, or student of the state of New Hampshire

20   shall face any penalty or discrimination on account of his or her refusal to support, believe, endorse,

21   embrace, confess, act upon, or otherwise assent to the divisive concepts defined in RSA 10-C:1, II.

22   II.  Requirements for government contractors:

23   (a)  All state contracts entered into on or after the effective date of this chapter shall

24   include the following provision:

25   "During the performance of this contract, the contractor agrees as follows:

26   The contractor shall not use any workplace training that inculcates in its employees any form of race

27   or sex stereotyping or any form of race or sex scapegoating, including the concepts that:  (a) one race

28   or sex is inherently superior to another race or sex; (b) an individual, by virtue of his or her race or

29   sex, is inherently racist, sexist, or oppressive, whether consciously or unconsciously; (c) an individual

30   should be discriminated against or receive adverse treatment solely or partly because of his or her

31   race or sex; (d) members of one race or sex cannot and should not attempt to treat others without

32   respect to race or sex; (e) an individual's moral character is necessarily determined by his or her race

33   or sex; (f) an individual, by virtue of his or her race or sex, bears responsibility for actions committed

34   in the past by other members of the same race or sex; (g) any individual should feel discomfort, guilt,

35   anguish, or any other form of psychological distress on account of his or her race or sex; or (h)

36   meritocracy or traits such as a hard work ethic are racist or sexist, or were created by a particular

37   race to oppress another race.  The term "race or sex stereotyping" means ascribing character traits,

**HB 2-FN-A-LOCAL - AS AMENDED BY THE HOUSE**
**- Page 157 -**

1    values, moral and ethical codes, privileges, status, or beliefs to a race or sex, or to an individual

2    because of his or her race or sex, and the term "race or sex scapegoating" means assigning fault,

3    blame, or bias to a race or sex, or to members of a race or sex because of their race or sex."

4    (b)   The contractor shall send to each labor union or representative of workers with

5    which the contractor has a collective bargaining agreement or other contract or understanding, a

6    notice, to be provided by the agency contracting officer, advising the labor union or workers'

7    representative of the contractor's commitments under this section, and shall post copies of the notice

8    in conspicuous places available to employees and applicants for employment.

9    (c)   In the event of the contractor's noncompliance with the requirements of this section,

10   or with any rules, regulations, or policies that may be promulgated in accordance with this section,

11   the contract may be canceled, terminated, or suspended in whole or in part and the contractor may

12   be declared ineligible for further government contracts.

13   (d)   The contractor shall include the provisions of this section in every subcontract or

14   purchase order unless exempted by rules, regulations, or policies of the department of administrative

15   services, so that such provisions shall be binding upon each subcontractor or vendor.  The contractor

16   shall take such action with respect to any subcontract or purchase order as may be directed by the

17   department of administrative services as a means of enforcing such provisions including sanctions

18   for noncompliance.

19   III.   The department of administrative services, or an agency designated by the department

20   of administrative services, is directed to investigate complaints received alleging that a state

21   contractor is utilizing such training programs in violation of the contractor's obligations under the

22   binding provisions of this section.  The department shall take appropriate enforcement action and

23   provide remedial relief, as appropriate.

24   IV.   The heads of all agencies shall review their respective grant programs and identify

25   programs for which the agency may, as a condition of receiving such a grant, require the recipient to

26   certify that it will not use state funds or assets to promote any of the divisive concepts defined in

27   RSA 10-C:1, II.

28   V.  Requirements for agencies.

29   (a)   The fair and equal treatment of individuals is an inviolable principle that must be

30   maintained in the state workplace.   Agencies should continue all training that will foster a

31   workplace that is respectful of all employees.  Accordingly:

32   (1)   The head of each agency shall use his or her authority under to ensure that the

33   agency, agency employees while on duty status, and any contractors hired by the agency to provide

34   training, workshops, forums, or similar programming, for purposes of this section, "training," to

35   agency employees do not teach, advocate, act upon, or promote in any training to agency employees

36   any of the divisive concepts listed in RSA 10-C:1; and

**HB 2-FN-A-LOCAL - AS AMENDED BY THE HOUSE**
**- Page 158 -**

1    (2)   Agency diversity and inclusion efforts shall, first and foremost, encourage agency

2    employees not to judge each other by their color, race, ethnicity, sex, or any other characteristic

3    protected by federal or state law.

4    (b)   The commissioner of the department of administrative services, pursuant to RSA

5    541-A, shall develop regulations for the enforcement of the provisions of this statute.

6    (c)  Each agency head shall:

7    (1)   Issue a policy incorporating the requirements of this chapter into agency

8    operations, including by making compliance with the policy a provision in all agency contracts;

9    (2)   Request that the agency thoroughly review and assess not less than annually

10   thereafter, agency compliance with the requirements of the policy in the form of a report submitted

11   to the department of administrative services; and

12   (3)   Assign at least one senior political appointee responsibility for ensuring

13   compliance with the requirements of the policy.

14   VI.   Review of agency training.

15   (a)   All training programs for state agency employees relating to diversity or inclusion

16   shall, before being used, be reviewed by the department of administrative services for compliance

17   with the requirements of RSA 10-C:2, V.

18   (b)   If a contractor provides a training for agency employees relating to diversity or

19   inclusion that teaches, advocates, or promotes the divisive concepts defined in RSA 10-C:1, II, and

20   such action is in violation of the applicable contract, the agency that contracted for such training

21   shall evaluate whether to pursue debarment of that contractor, consistent with applicable law and

22   regulations.

23   10-C:3  General Provisions.

24   I.   Nothing in this chapter shall prevent agencies or contractors from promoting racial,

25   cultural, or ethnic diversity or inclusiveness, provided such efforts are consistent with the

26   requirements of this chapter.

27   II.   Nothing in this chapter shall be construed to prohibit discussing, as part of a larger

28   course of academic instruction, the divisive concepts listed in RSA 10-C:1, II in an objective manner

29   and without endorsement.

30   III.   If any provision of this chapter, or the application of any provision to any person or

31   circumstance, is held to be invalid, the remainder of this chapter and the application of its provisions

32   to any other persons or circumstances shall not be affected thereby.

33   331  Effective Date.  Section 330 of this act shall take effect January 1, 2022.

34   ██████████████████████████

35   ████████████████████████████████████████████████████

36   ██████████████████████████████████████████████████████████

37   ██████████████████████████████████████████████████████████

# Senate

Senate Finance
May 28, 2021
2021-1799s
08/10

Amendment to HB 2-FN-A-LOCAL

1    Amend the bill by replacing all after the enacting clause with the following:

**Amendment to HB 2-FN-A-LOCAL**
**- Page 144 -**



297    New Subdivision; State Commission on Human Rights; Right to Freedom From Discrimination in Public Workplaces and Education.  Amend RSA 354-A by inserting after section 28 the following new subdivision:

Right to Freedom from Discrimination in Public Workplaces and Education

354-A:29  Right to Freedom from Discrimination in Public Workplaces and Education.

I.  The general court hereby finds and declares that practices of discrimination against any New Hampshire inhabitants because of age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin are a matter of state concern, that discrimination based on these characteristics not only threatens the rights and proper privileges of New Hampshire inhabitants but menaces the institutions and foundation of a free democratic state and threatens the peace, order, health, safety and general welfare of the state and its inhabitants.

1      II.  Nothing in this subdivision shall be construed to prohibit racial, sexual, religious, or
2  other workplace sensitivity training based on the inherent humanity and equality of all persons and
3  the ideal that all persons are entitled to be treated with equality, dignity, and respect.

4      III.  Nothing in this subdivision shall be construed to limit the academic freedom of faculty
5  members of the university system of New Hampshire and the community college system of New
6  Hampshire to conduct research, publish, lecture, or teach in the academic setting.

7  354-A:30  Definitions.  In this subdivision:

8      I.  "Government program" means any activity undertaken by a public employer, both as an
9  employer and in performance of its government function.

10      II.  "Public employee" means any person working on a full-time or part-time basis for the
11  state, or any subdivision thereof, including, but not limited to counties, cities, towns, precincts,
12  water districts, school districts, school administrative units, or quasi-public entities.

13      III.  "Public employer" includes the state or any subdivision thereof, including, but not
14  limited to counties, cities, towns, precincts, water districts, school districts, school administrative
15  units, or quasi-public entities.

16  354-A:31  Prohibition on Public Employers.  No public employer, either directly or through the
17  use of an outside contractor, shall teach, advocate, instruct, or train any employee, student, service
18  recipient, contractor, staff member, inmate, or any other individual or group, any one or more of the
19  following:

20      I.  That people of one age, sex, gender identity, sexual orientation, race, creed, color, marital
21  status, familial status, mental or physical disability, religion, or national origin, are inherently
22  superior or inferior to people of another age, sex, gender identity, sexual orientation, race, creed,
23  color, marital status, familial status, mental or physical disability, religion, or national origin;

24      II.  That an individual, by virtue of his or her age, sex, gender identity, sexual orientation,
25  race, creed, color, marital status, familial status, mental or physical disability, religion, or national
26  origin is inherently racist, sexist, or oppressive, whether consciously or unconsciously;

27      III.  That an individual should be discriminated against or receive adverse treatment solely
28  or partly because of his or her age, sex, gender identity, sexual orientation, race, creed, color, marital
29  status, familial status, mental or physical disability, religion, or national origin; or

30      IV.  That people of one age, sex, gender identity, sexual orientation, race, creed, color,
31  marital status, familial status, mental or physical disability, religion, or national origin cannot and
32  should not attempt to treat others equally and/or without regard to age, sex, gender identity, sexual
33  orientation, race, creed, color, marital status, familial status, mental or physical disability, religion,
34  or national origin.

35  354-A:32  Prohibition on the Content of Government Programs and Speech.  No government
36  program shall teach, advocate, or advance any one or more of the following:

1    I.  That people of one age, sex, gender identity, sexual orientation, race, creed, color, marital

2    status, familial status, mental or physical disability, religion, or national origin are inherently

3    superior or inferior to people of another age, sex, gender identity, sexual orientation, race, creed,

4    color, marital status, familial status, mental or physical disability, religion, or national origin;

5    II.  That an individual, by virtue of his or her age, sex, gender identity, sexual orientation,

6    race, creed, color, marital status, familial status, mental or physical disability, religion, or national

7    origin, is inherently racist, sexist, or oppressive, whether consciously or unconsciously;

8    III.  That an individual should be discriminated against or receive adverse treatment solely

9    or partly because of his or her age, sex, gender identity, sexual orientation, race, creed, color, marital

10   status, familial status, mental or physical disability, religion, or national origin; or

11   IV.  That people of one age, sex, gender identity, sexual orientation, race, creed, color,

12   marital status, familial status, mental or physical disability, religion, or national origin cannot and

13   should not attempt to treat others equally and/or without regard to age, sex, gender identity, sexual

14   orientation, race, creed, color, marital status, familial status, mental or physical disability, religion,

15   or national origin.

16   354-A:33  Protection for Public Employees.  No public employee shall be subject to any adverse

17   employment action, warning, or discipline of any kind for refusing to participate in any training,

18   program, or other activity at which a public employer or government program advocates, trains,

19   teaches, instructs, or compels participants to express belief in, or support for, any one or more of the

20   following:

21   I.  That people of one age, sex, gender identity, sexual orientation, race, creed, color, marital

22   status, familial status, mental or physical disability, religion, or national origin are inherently

23   superior or inferior to people of another age, sex, gender identity, sexual orientation, race, creed,

24   color, marital status, familial status, mental or physical disability, religion, or national origin;

25   II.  That an individual, by virtue of his or her age, sex, gender identity, sexual orientation,

26   race, creed, color, marital status, familial status, mental or physical disability, religion, or national

27   origin, is inherently racist, sexist, or oppressive, whether consciously or unconsciously;

28   III.  That an individual should be discriminated against or receive adverse treatment solely

29   or partly because of his or her age, sex, gender identity, sexual orientation, race, creed, color, marital

30   status, familial status, mental or physical disability, religion, or national origin; or

31   IV.  That people of one age, sex, gender identity, sexual orientation, race, creed, color,

32   marital status, familial status, mental or physical disability, religion, or national origin cannot and

33   should not attempt to treat others equally and/or without regard to age, sex, gender identity, sexual

34   orientation, race, creed, color, marital status, familial status, mental or physical disability, religion,

35   or national origin.

1    354-A:34  Remedies.  Any person aggrieved by an act made unlawful under this subdivision may

2    pursue all of the remedies available under RSA 354-A, RSA 491, RSA 275-E, or RSA 98-E, or any

3    other applicable common law or statutory cause of action.

4    298  New Section; Prohibition on Teaching Discrimination.  Amend RSA 193 by inserting after

5    section 39 the following new section:

6    193:40  Prohibition on Teaching Discrimination.

7    I.  No pupil in any public school in this state shall be taught, instructed, inculcated or

8    compelled to express belief in, or support for, any one or more of the following:

9    (a)  That one's age, sex, gender identity, sexual orientation, race, creed, color, marital

10    status, familial status, mental or physical disability, religion or national origin is inherently superior

11    to people of another age, sex, gender identity, sexual orientation, race, creed, color, marital status,

12    familial status, mental or physical disability, religion, or national origin;

13    (b)  That an individual, by virtue of his or her age, sex, gender identity, sexual

14    orientation, race, creed, color, marital status, familial status, mental or physical disability, religion,

15    or national origin, is inherently racist, sexist, or oppressive, whether consciously or unconsciously;

16    (c)  That an individual should be discriminated against or receive adverse treatment

17    solely or partly because of his or her age, sex, gender identity, sexual orientation, race, creed, color,

18    marital status, familial status, mental or physical disability, religion, or national origin; or

19    (d)  That people of one age, sex, gender identity, sexual orientation, race, creed, color,

20    marital status, familial status, mental or physical disability, religion, or national origin cannot and

21    should not attempt to treat others without regard to age, sex, gender identity, sexual orientation,

22    race, creed, color, marital status, familial status, mental or physical disability, religion, or national

23    origin.

24    II.  Nothing in this section shall be construed to prohibit discussing, as part of a larger

25    course of academic instruction, the historical existence of ideas and subjects identified in this

26    section.

27    III.  Any person claiming to be aggrieved by a violation of this section, including the attorney

28    general, may initiate a civil action against a school or school district in superior court for legal or

29    equitable relief, or with the New Hampshire commission for human rights as provided in RSA 354-

30    A:34.

31    IV.  Violation of this section by an educator shall be considered a violation of the educator

32    code of conduct that justifies disciplinary sanction by the state board of education.

33    V.  For the purposes of this section, "educator" means a professional employee of any school

34    district whose position requires certification by the state board pursuant to RSA 189:39.

35    Administrators, specialists, and teachers are included within the definition of this term.

**Amendment to HB 2-FN-A-LOCAL**
**- Page 148 -**

1    299  Severability.  If any provision of sections 297-298, or the application of any provision to any

2    person or circumstance is held to be invalid, the remainder of such sections, and their application to

3    any other persons or circumstances shall not be affected thereby.

4    300  Effective Date.  Sections 297-299 of this act shall take effect upon passage.

**Important Notice**

Due to the COVID-19 pandemic, the General Court is conducting legislative activities remotely with the exception of publicly noticed sessions in the House or Senate Calendar. During this time, the State House and Legislative Office Building remain closed to visitors.

May  28,  2021
No.  26

# STATE  OF  NEW  HAMPSHIRE

**Website Address: http://gencourt.state.nh.us**

**NH Senate Digital Calendar Website Address:**
**http://gencourt.state.nh.us/senate/schedule/dailyschedule.aspx**



## First Year of the 167th Session of the
## New Hampshire General Court

# SENATE  CALENDAR

4                          **Important Notice**

**Due to the COVID-19 pandemic, the General Court is conducting legislative activities remotely with the exception of publicly noticed sessions in the House or Senate Calendar. During this time, the State House and Legislative Office Building remain closed to visitors.**


Senate Finance
May 28, 2021
2021-1799s
08/10

                       Amendment to HB 2-FN-A-LOCAL

The Senate Amendment to HB 2-FN-A-LOCAL is contained in a separate document labeled as Senate Calendar 26-Supplement 2, Dated May 28, 2021.

Capital Budget
May 27, 2021
2021-1785s
10/04

                          Amendment to HB 25-A

Amend the bill by replacing all after the enacting clause with the following:

   1 Capital Appropriations. The sums hereinafter detailed are hereby appropriated for the projects specified to the departments, agencies, and branches named:

   I. Department of Administrative Services

   A. Court Facilities

| | |
|---|---|
| 1. Hillsborough County South - Cooling And Controls | 975,000 |
| 2. Lebanon Circuit Courthouse - Remove And Replace Underground Fuel | |
|    Storage Tank | 310,000 |
| 3. Portsmouth And Dover Circuit Court Boilers | 570,000 |
| 4. Statewide Courthouse Roof Replacements | 2,100,000 |

   B. Facilities and Asset Management

| | |
|---|---|
| 1. Life Safety Upgrades | 570,000 |
| 2. Main Building Rewiring Phase 1 | 800,000 |
| 3. Philbrook Building - Sewer Line Replacement | 300,000 |
| 4. Thayer Building - Replace Roof | 650,000 |
| 5. Tunnel System: Repair And Abandonment Plan | 620,000 |

   C. Financial Data Management

| | |
|---|---|
| 1. NH First Migration To Information Cloud Environment | 5,100,000 |

   D. General Services

| | |
|---|---|
| 1. HHS Roof Replacement | 2,385,000 |
| 2. HHS/DES Mechanical Replacements And Controls | 1,200,000 |
| 3. Morton, Johnson, HHS Underground Tank Removal | 700,000 |
| 4. Safety Mechanical Replacements And Repairs | 3,125,000 |
| 5. Coos County New Parking Lot and Concrete Plaza Entrance | 442,750 |
| 6. Hillsborough County Courthouse North Cooling Tower | 189,750 |
| 7. Annex 1 - Bancroft ADA Connector | 400,000 |

Sen. Soucy, Dist 18
Sen. Cavanaugh, Dist 16
Sen. D'Allesandro, Dist 20
Sen. Kahn, Dist 10
Sen. Perkins Kwoka, Dist 21
Sen. Rosenwald, Dist 13
Sen. Sherman, Dist 24
Sen. Watters, Dist 4
Sen. Whitley, Dist 15
Sen. Prentiss, Dist 5
June 1, 2021
2021-1815s
11/04

Floor Amendment to HB 2-FN-A-LOCAL

1    Amend the bill by deleting sections 297-300.

2021-1815s

AMENDED ANALYSIS

Delete:

70.  Establishes and describes a right to freedom from certain types of discrimination based on age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin in public workplaces and education.

**HB 2-FN-A-LOCAL - AS AMENDED BY THE SENATE**

7Apr2021... 1059h
06/03/2021   1799s
06/03/2021   1816s
06/03/2021   1859s
06/03/2021   1842s
06/03/2021   1821s
06/03/2021   1827s
06/03/2021   1866s
06/03/2021   1884s

2021 SESSION

21-1082
08/10

HOUSE BILL          *2-FN-A-LOCAL*

AN ACT          relative to state fees, funds, revenues, and expenditures.

SPONSORS:       Rep. Weyler, Rock. 13; Rep. L. Ober, Hills. 37; Rep. Edwards, Rock. 4; Rep. Umberger, Carr. 2

COMMITTEE:      Finance

───────────────────────────────────────────────────────────────

AMENDED ANALYSIS

This bill:

1.  Requires the judicial branch to reimburse the sheriff's offices for costs of court security and prisoner custody and control, within available funds appropriated by the legislature, and requires remote technology whenever possible.

2.  Makes a transfer of unexpended funds to the state heating system savings account.

3.  Eliminates the bureau of planning and management functions and moves such functions to the division of plant and property.

4.  Establishes the graphic services fund in the department of administrative services.

5.  Consolidates human resources and payroll functions in the department of administrative services.

6.  Repeals the memorandum of understanding with the commissioner of the department of health and human services for the purpose of delineating the functions to be assumed by the department of administrative services.

7.  Extends the date on which an appropriation to the department of administrative services for scheduling software lapses.

8.  Directs the payment of state employee medical benefits payments  from  the retirement system.

9.  Enables the supreme court to transfer funds.

10.  Provides for the state to reimburse the sheriff's offices for court security for the biennium.

11.  Enables the sale of the lakes region facility in Laconia.

**HB 2-FN-A-LOCAL - AS AMENDED BY THE SENATE**
**- Page 144 -**

297   New Subdivision; State Commission on Human Rights; Right to Freedom From Discrimination in Public Workplaces and Education.  Amend RSA 354-A by inserting after section 28 the following new subdivision:

Right to Freedom from Discrimination in Public Workplaces and Education

354-A:29  Right to Freedom from Discrimination in Public Workplaces and Education.

I.  The general court hereby finds and declares that practices of discrimination against any New Hampshire inhabitants because of age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin are a matter of state concern, that discrimination based on these characteristics not only threatens the rights and proper privileges of New Hampshire inhabitants but menaces the institutions and foundation of a free democratic state and threatens the peace, order, health, safety and general welfare of the state and its inhabitants.

II.  Nothing in this subdivision shall be construed to prohibit racial, sexual, religious, or other workplace sensitivity training based on the inherent humanity and equality of all persons and the ideal that all persons are entitled to be treated with equality, dignity, and respect.

III.  Nothing in this subdivision shall be construed to limit the academic freedom of faculty members of the university system of New Hampshire and the community college system of New Hampshire to conduct research, publish, lecture, or teach in the academic setting.

354-A:30  Definitions.  In this subdivision:

I.  "Government program" means any activity undertaken by a public employer, both as an employer and in performance of its government function.

II.  "Public employee" means any person working on a full-time or part-time basis for the state, or any subdivision thereof, including, but not limited to counties, cities, towns, precincts, water districts, school districts, school administrative units, or quasi-public entities.

III.  "Public employer" includes the state or any subdivision thereof, including, but not limited to counties, cities, towns, precincts, water districts, school districts, school administrative units, or quasi-public entities.

354-A:31  Prohibition on Public Employers.  No public employer, either directly or through the use of an outside contractor, shall teach, advocate, instruct, or train any employee, student, service recipient, contractor, staff member, inmate, or any other individual or group, any one or more of the following:

I.  That people of one age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin, are inherently superior or inferior to people of another age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin;

II.  That an individual, by virtue of his or her age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin is inherently racist, sexist, or oppressive, whether consciously or unconsciously;

III.  That an individual should be discriminated against or receive adverse treatment solely or partly because of his or her age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin; or

IV.  That people of one age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin cannot and should not attempt to treat others equally and/or without regard to age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin.

354-A:32  Prohibition on the Content of Government Programs and Speech.  No government program shall teach, advocate, or advance any one or more of the following:

1      I.  That people of one age, sex, gender identity, sexual orientation, race, creed, color, marital

2   status, familial status, mental or physical disability, religion, or national origin are inherently

3   superior or inferior to people of another age, sex, gender identity, sexual orientation, race, creed,

4   color, marital status, familial status, mental or physical disability, religion, or national origin;

5      II.  That an individual, by virtue of his or her age, sex, gender identity, sexual orientation,

6   race, creed, color, marital status, familial status, mental or physical disability, religion, or national

7   origin, is inherently racist, sexist, or oppressive, whether consciously or unconsciously;

8      III.  That an individual should be discriminated against or receive adverse treatment solely

9   or partly because of his or her age, sex, gender identity, sexual orientation, race, creed, color, marital

10   status, familial status, mental or physical disability, religion, or national origin; or

11      IV.   That people of one age, sex, gender identity, sexual orientation, race, creed, color,

12   marital status, familial status, mental or physical disability, religion, or national origin cannot and

13   should not attempt to treat others equally and/or without regard to age, sex, gender identity, sexual

14   orientation, race, creed, color, marital status, familial status, mental or physical disability, religion,

15   or national origin.

16      354-A:33  Protection for Public Employees.  No public employee shall be subject to any adverse

17   employment action, warning, or discipline of any kind for refusing to participate in any training,

18   program, or other activity at which a public employer or government program advocates, trains,

19   teaches, instructs, or compels participants to express belief in, or support for, any one or more of the

20   following:

21      I.  That people of one age, sex, gender identity, sexual orientation, race, creed, color, marital

22   status, familial status, mental or physical disability, religion, or national origin are inherently

23   superior or inferior to people of another age, sex, gender identity, sexual orientation, race, creed,

24   color, marital status, familial status, mental or physical disability, religion, or national origin;

25      II.  That an individual, by virtue of his or her age, sex, gender identity, sexual orientation,

26   race, creed, color, marital status, familial status, mental or physical disability, religion, or national

27   origin, is inherently racist, sexist, or oppressive, whether consciously or unconsciously;

28      III.  That an individual should be discriminated against or receive adverse treatment solely

29   or partly because of his or her age, sex, gender identity, sexual orientation, race, creed, color, marital

30   status, familial status, mental or physical disability, religion, or national origin; or

31      IV.   That people of one age, sex, gender identity, sexual orientation, race, creed, color,

32   marital status, familial status, mental or physical disability, religion, or national origin cannot and

33   should not attempt to treat others equally and/or without regard to age, sex, gender identity, sexual

34   orientation, race, creed, color, marital status, familial status, mental or physical disability, religion,

35   or national origin.

1  354-A:34  Remedies.  Any person aggrieved by an act made unlawful under this subdivision may
2  pursue all of the remedies available under RSA 354-A, RSA 491, RSA 275-E, or RSA 98-E, or any
3  other applicable common law or statutory cause of action.

4  298  New Section; Prohibition on Teaching Discrimination.  Amend RSA 193 by inserting after
5  section 39 the following new section:

6  193:40  Prohibition on Teaching Discrimination.

7  I.  No pupil in any public school in this state shall be taught, instructed, inculcated or
8  compelled to express belief in, or support for, any one or more of the following:

9  (a)  That one's age, sex, gender identity, sexual orientation, race, creed, color, marital
10  status, familial status, mental or physical disability, religion or national origin is inherently superior
11  to people of another age, sex, gender identity, sexual orientation, race, creed, color, marital status,
12  familial status, mental or physical disability, religion, or national origin;

13  (b)  That an individual, by virtue of his or her age, sex, gender identity, sexual
14  orientation, race, creed, color, marital status, familial status, mental or physical disability, religion,
15  or national origin, is inherently racist, sexist, or oppressive, whether consciously or unconsciously;

16  (c)  That an individual should be discriminated against or receive adverse treatment
17  solely or partly because of his or her age, sex, gender identity, sexual orientation, race, creed, color,
18  marital status, familial status, mental or physical disability, religion, or national origin; or

19  (d)  That people of one age, sex, gender identity, sexual orientation, race, creed, color,
20  marital status, familial status, mental or physical disability, religion, or national origin cannot and
21  should not attempt to treat others without regard to age, sex, gender identity, sexual orientation,
22  race, creed, color, marital status, familial status, mental or physical disability, religion, or national
23  origin.

24  II.  Nothing in this section shall be construed to prohibit discussing, as part of a larger
25  course of academic instruction, the historical existence of ideas and subjects identified in this
26  section.

27  III.  Any person claiming to be aggrieved by a violation of this section, including the attorney
28  general, may initiate a civil action against a school or school district in superior court for legal or
29  equitable relief, or with the New Hampshire commission for human rights as provided in RSA 354-
30  A:34.

31  IV.  Violation of this section by an educator shall be considered a violation of the educator
32  code of conduct that justifies disciplinary sanction by the state board of education.

33  V.  For the purposes of this section, "educator" means a professional employee of any school
34  district whose position requires certification by the state board pursuant to RSA 189:39.
35  Administrators, specialists, and teachers are included within the definition of this term.

**HB 2-FN-A-LOCAL - AS AMENDED BY THE SENATE**
**- Page 148 -**

1    299  Severability.  If any provision of sections 297-298, or the application of any provision to any

2  person or circumstance is held to be invalid, the remainder of such sections, and their application to

3  any other persons or circumstances shall not be affected thereby.

4    300  Effective Date.  Sections 297-299 of this act shall take effect upon passage.

# Committee of Conference

June 17, 2021
2021-2040-CofC
08/04

1    Committee of Conference Report on HB 2-FN-A-LOCAL, relative to state fees, funds, revenues, and

2    expenditures.

3

4    Recommendation:

5         That the House recede from its position of nonconcurrence with the Senate amendment, and

6    concur with the Senate amendment, and

7         That the Senate and House adopt the following new amendment to the bill as amended by the

8    Senate, and pass the bill as so amended:

9

10   Amend the bill by replacing all after the enacting clause with the following:

11



**Committee of Conference Report on HB 2-FN-A-LOCAL**
**- Page 145 -**



297   New Subdivision; State Commission on Human Rights; Right to Freedom From Discrimination in Public Workplaces and Education.  Amend RSA 354-A by inserting after section 28 the following new subdivision:

Right to Freedom from Discrimination in Public Workplaces and Education

354-A:29  Right to Freedom from Discrimination in Public Workplaces and Education.

I.  The general court hereby finds and declares that practices of discrimination against any New Hampshire inhabitants because of age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin are a matter of state concern, that discrimination based on these characteristics not only threatens the rights and proper privileges of New Hampshire inhabitants but menaces the institutions and foundation of a free democratic state and threatens the peace, order, health, safety and general welfare of the state and its inhabitants.

1      II.   Nothing in this subdivision shall be construed to prohibit racial, sexual, religious, or
2   other workplace sensitivity training based on the inherent humanity and equality of all persons and
3   the ideal that all persons are entitled to be treated with equality, dignity, and respect.

4      III.   Nothing in this subdivision shall be construed to limit the academic freedom of faculty
5   members of the university system of New Hampshire and the community college system of New
6   Hampshire to conduct research, publish, lecture, or teach in the academic setting.

7   354-A:30  Definitions.  In this subdivision:

8      I.  "Government program" means any activity undertaken by a public employer, both as an
9   employer and in performance of its government function.

10      II.  "Public employee" means any person working on a full-time or part-time basis for the
11   state, or any subdivision thereof, including, but not limited to counties, cities, towns, precincts,
12   water districts, school districts, school administrative units, or quasi-public entities.

13      III.  "Public employer" includes the state or any subdivision thereof, including, but not
14   limited to counties, cities, towns, precincts, water districts, school districts, school administrative
15   units, or quasi-public entities.

16   354-A:31  Prohibition on Public Employers.  No public employer, either directly or through the
17   use of an outside contractor, shall teach, advocate, instruct, or train any employee, student, service
18   recipient, contractor, staff member, inmate, or any other individual or group, any one or more of the
19   following:

20      I. That people of one age, sex, gender identity, sexual orientation, race, creed, color, marital
21   status, familial status, mental or physical disability, religion, or national origin, are inherently
22   superior or inferior to people of another age, sex, gender identity, sexual orientation, race, creed,
23   color, marital status, familial status, mental or physical disability, religion, or national origin;

24      II.  That an individual, by virtue of his or her age, sex, gender identity, sexual orientation,
25   race, creed, color, marital status, familial status, mental or physical disability, religion, or national
26   origin is inherently racist, sexist, or oppressive, whether consciously or unconsciously;

27      III.  That an individual should be discriminated against or receive adverse treatment solely
28   or partly because of his or her age, sex, gender identity, sexual orientation, race, creed, color, marital
29   status, familial status, mental or physical disability, religion, or national origin; or

30      IV.  That people of one age, sex, gender identity, sexual orientation, race, creed, color,
31   marital status, familial status, mental or physical disability, religion, or national origin cannot and
32   should not attempt to treat others equally and/or without regard to age, sex, gender identity, sexual
33   orientation, race, creed, color, marital status, familial status, mental or physical disability, religion,
34   or national origin.

35   354-A:32  Prohibition on the Content of Government Programs and Speech.  No government
36   program shall teach, advocate, or advance any one or more of the following:

1       I.  That people of one age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin are inherently superior or inferior to people of another age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin;

II.  That an individual, by virtue of his or her age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin, is inherently racist, sexist, or oppressive, whether consciously or unconsciously;

III.  That an individual should be discriminated against or receive adverse treatment solely or partly because of his or her age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin; or

IV.  That people of one age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin cannot and should not attempt to treat others equally and/or without regard to age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin.

354-A:33  Protection for Public Employees.  No public employee shall be subject to any adverse employment action, warning, or discipline of any kind for refusing to participate in any training, program, or other activity at which a public employer or government program advocates, trains, teaches, instructs, or compels participants to express belief in, or support for, any one or more of the following:

I.  That people of one age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin are inherently superior or inferior to people of another age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin;

II.  That an individual, by virtue of his or her age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin, is inherently racist, sexist, or oppressive, whether consciously or unconsciously;

III.  That an individual should be discriminated against or receive adverse treatment solely or partly because of his or her age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin; or

IV.  That people of one age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin cannot and should not attempt to treat others equally and/or without regard to age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin.

## Committee of Conference Report on HB 2-FN-A-LOCAL
### - Page 148 -

354-A:34  Remedies.  Any person aggrieved by an act made unlawful under this subdivision may pursue all of the remedies available under RSA 354-A, RSA 491, RSA 275-E, or RSA 98-E, or any other applicable common law or statutory cause of action.

298  New Section; Prohibition on Teaching Discrimination.  Amend RSA 193 by inserting after section 39 the following new section:

193:40  Prohibition on Teaching Discrimination.

I.  No pupil in any public school in this state shall be taught, instructed, inculcated or compelled to express belief in, or support for, any one or more of the following:

(a)  That one's age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion or national origin is inherently superior to people of another age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin;

(b)  That an individual, by virtue of his or her age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin, is inherently racist, sexist, or oppressive, whether consciously or unconsciously;

(c)  That an individual should be discriminated against or receive adverse treatment solely or partly because of his or her age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin; or

(d)  That people of one age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin cannot and should not attempt to treat others without regard to age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin.

II.  Nothing in this section shall be construed to prohibit discussing, as part of a larger course of academic instruction, the historical existence of ideas and subjects identified in this section.

III.  Any person claiming to be aggrieved by a violation of this section, including the attorney general, may initiate a civil action against a school or school district in superior court for legal or equitable relief, or with the New Hampshire commission for human rights as provided in RSA 354-A:34.

IV.  Violation of this section by an educator shall be considered a violation of the educator code of conduct that justifies disciplinary sanction by the state board of education.

V.  For the purposes of this section, "educator" means a professional employee of any school district whose position requires certification by the state board pursuant to RSA 189:39. Administrators, specialists, and teachers are included within the definition of this term.

**Committee of Conference Report on HB 2-FN-A-LOCAL**
**- Page 149 -**

1    299  Severability.  If any provision of sections 297-298, or the application of any provision to any

2    person or circumstance is held to be invalid, the remainder of such sections, and their application to

3    any other persons or circumstances shall not be affected thereby.

4    300  Effective Date.  Sections 297-299 of this act shall take effect upon passage.

**Committee of Conference Report on HB 2-FN-A-LOCAL**
**- Page 212 -**

The signatures below attest to the authenticity of this Report on HB 2-FN-A-LOCAL, relative to state fees, funds, revenues, and expenditures.

Conferees on the Part of the Senate                    Conferees on the Part of the House

_____                    _____
Sen. Morse, Dist. 22                                    Rep. L. Ober, Hills. 37


_____                    _____
Sen. Bradley, Dist. 3                                   Rep. Weyler, Rock. 13


_____                    _____
Sen. Daniels, Dist. 11                                  Rep. Umberger, Carr. 2


                                                        _____
                                                        Rep. Edwards, Rock. 4


                                                        _____
                                                        Rep. Emerick, Rock. 21