# EXHIBIT 17

# Governor's Advisory Council on Diversity and Inclusion Correspondence Regarding Banned Concepts Act



**CHRISTOPHER T. SUNUNU**
Governor

**Governor's Advisory Council on Diversity and Inclusion**

March 9, 2021

Ahni Malachi, Chair
Dr. Dottie Morris, Vice Chair
Sean Locke, Secretary
Devon Chaffee
Chief Charlie Dennis
Maria Devlin
Sharon Harris
Ann Landry
James Maggiore
Dr. Salman Malik
Commissioner Ken Merrifield
Dr. James Morse
Pawn Nitichan
Commissioner Robert Quinn
Marianne Rechy
Sheriff Eliezer Rivera
Allyson Ryder

His Excellency Christopher T. Sununu
Governor of the State of New Hampshire
State House
107 North Main Street
Concord, NH 03301

Dear Governor Sununu,

The Governor's Council on Diversity and Inclusion ("the Council") has several concerns about the pending bill, HB 544 "relative to the propagation of divisive concepts." Although the fate of this bill is uncertain, its passage carries the potential to impact both: (1) the ability of people working within and on behalf of the state to engage in honest, robust discussions on matters of pressing concern to Granite Staters and (2) ongoing efforts to create an environment in New Hampshire that is deeply rooted in principles of equity, diversity, and inclusion.

By its own terms, HB 544 would prohibit state actors and contractors with the state from teaching, instructing, or training "any employee, contractor, staff member, student, or any other individual or group" divisive concepts. This could include purely elective educational offerings within the state's university system.

The Council believes that the definition of "divisive concepts" and the prohibitions HB 544 endeavor to create carry the potential to undermine all of the work done within the Granite State over the past few years to promote diversity and inclusion and address the continued harms of racism. This includes efforts that you have championed over the past several years, such as the work done by and recommendations given by the Commission on Law Enforcement Accountability, Community, and Transparency ("LEACT"), the COVID-19 Equity Response Team, and this Council.

Additionally, the controlling nature of the bill could significantly impede important work by educators in this state and our institutions of higher learning. Critical Race Theory, implicit bias, and other concepts, ideas, and theories are a part of academic disciplines. For example, implicit bias is a concept discussed in Social Psychology courses. If this bill is enacted, the interpretation of the bill could extend to these courses.

Governor's Advisory Council on Diversity and Inclusion
Letter to Gov. Sununu re HB 544
Page 2 of 2

The Council believes honest, robust discussion on significant issues such as racism and sexism is important and limiting conversations amongst all citizens of New Hampshire is not reflective of our state's embrace of freedom of speech and freedom of expression. The Council also believes that to ensure educational conversations relative to historical events dealing with race, racial identity, racism, gender, sex, or sexism are not hampered whether they take place in a scholastic or workplace setting.

The Council believes that to address harmful behavior, we must face our past, learn from it, and move forward with a clearer vision. Because of the work and research of genocide and other crimes against humanity by individuals, such as Dr. James Waller at Keene State College, we know the impact of creating repressive measures like those outlined in HB 544. Once language and dialogue are controlled, the path has been laid for other forms of repression to become normalized.

The Council respectfully urges you to continue to consistently speak up in support of equity, diversity, and inclusion efforts. You have demonstrated your commitment by creating committees and task forces to examine how our state is performing and to discover places where there is need for improvement to make the Granite State a more welcoming and inclusive state. You have championed the work and recommendations of this Council, LEACT, and the COVID-19 Equity Task Force in the past; to protect that work, the Council recommends that you to act against HB 544.

We look forward to continuing to work with you to make the State of New Hampshire a model for the positive impact of having equity, diversity, and inclusion as core values. Most of all, we want to work to continue protecting the rights of all Granite Staters to engage in open and honest dialogue to learn to live together.

    Sincerely,

    The Governor's Advisory Council on
    Diversity and Inclusion



**CHRISTOPHER T. SUNUNU**
Governor

**Governor's Advisory Council on Diversity and Inclusion**

June 2, 2021

Ahni Malachi, Chair
Dr. Dottie Morris, Vice Chair
Sean Locke, Secretary
Devon Chaffee
Sarah Burke Cohen
Jeremy Denlea
Chief Charlie Dennis
Maria Devlin
Sharon Harris
Ann Landry
James Maggiore
Dr. Salman Malik
Dr. James Morse
Pawn Nitichan
Commissioner Robert Quinn
Marianne Rechy
Sheriff Eliezer Rivera
Allyson Ryder

His Excellency Christopher T. Sununu
Governor of the State of New Hampshire
State House
107 North Main Street
Concord, NH 03301

Dear Governor Sununu,

The Governor's Advisory Council on Diversity and Inclusion ("the Council") writes to express our grave concerns regarding section 330 of the Senate Finance Committee's amendment to HB 2 ("Section 330"), replacing the section on "divisive concepts." The ambiguous and contradictory language and enhanced penalties in this new provision threaten to censor New Hampshire schools, police, and other government agencies from having important conversations about race, gender, sex, and ability. As such, the provision is likely to chill honest, frank, and robust discussions that are central to ongoing efforts to make New Hampshire a more equitable, diverse, and inclusive place.

The language in Section 330 presents many of the same serious concerns the Council expressed in its previous letter recommending you act against HB 544.[1] We greatly appreciate your strong leadership in opposing that standalone bill—publicly and definitively. As you rightly stated, HB 544's restrictions would have censored local school districts, encroached upon local control, and prevented local communities from making their own decisions about how to address difficult topics. We recognize the Senate Finance Committee's attempt to address these concerns. Unfortunately, however, Section 330 does not resolve the Council's concerns and would likely have the same detrimental impact as HB 544.

By its own terms, Section 330 would prohibit state employers and programs from teaching, instructing, or training "any employee, student, service recipient, contractor, staff members, inmate or any other individual or group" three enumerated concepts. Section 330 also targets local public schools with explicit prohibitions that threaten to censor how those local institutions address sensitive issues of race, sex, gender, and ability. These prohibitions include disciplinary sanctions and civil action for violations, including lawsuits brought under RSA chapter 345-A.

---

[1] https://www.governor.nh.gov/sites/g/files/ehbemt336/files/inline-documents/sonh/20210309-hb544-_1.pdf

Governor's Advisory Council on Diversity and Inclusion
Letter to Gov. Sununu re HB 544
Page 2 of 2

The prohibited concepts seem to target the use of theories critical to most diversity, equity, and inclusion training. For example, the second of these prohibited concepts appears designed to prohibit the discussion of "unconscious" biases. Social psychologists have long demonstrated, through extensive research, the detrimental impact of implicit or unconscious bias; particularly, when a person lacks the tools to make the unconscious conscious. This concept is central to many trainings used by New Hampshire agencies—including the New Hampshire Council on Police Standards and Training. To prohibit such trainings would undermine years of local and state diversity and inclusion efforts.

Although Section 330 includes exceptions for certain types of "sensitivity training" and university activities in an academic setting, these ambiguous allowances add to the confusion over what is permitted and what is prohibited. In the absence of clarity, schools, police departments, and other agencies are likely to self-censor out of fear of potential civil liability.

Our concern here is not hypothetical. Multiple New Hampshire agencies—including the New Hampshire Business and Industry Association, the Municipal Association, the Office of the Child Advocate, and multiple school districts—have expressed their opposition to the Section 330's language, making clear how it would negatively impact their constituencies. Several Council members have witnessed the distress experienced by local educators and agencies who fear having to operate under the proposed restrictions.

The Council believes that Section 330 continues to carry the potential to undermine your administration's recent work to promote diversity and inclusion--including the work done by and recommendations given by the Commission on Law Enforcement Accountability, Community, and Transparency, the COVID-19 Equity Response Team, and this Council.

Honest, robust discussion on significant issues such as racism, sexism, and ableism is important. The Council reiterates its belief that limiting conversations amongst all citizens of New Hampshire is not reflective of our state's embrace of freedom of speech and freedom of expression. The chilling effect that Section 330 threatens to create will harm the Granite State's ability to best understand and meet the needs of all its residents. To protect your administration's work and New Hampshire values, the Council recommends that you act against Section 330, and continue to champion equity, diversity, and inclusion efforts.

As always, we look forward to continuing to work with you to make the State of New Hampshire a more equitable, diverse, and inclusive state, and to protect the rights of all Granite Staters to engage in open and honest dialogue to learn to live together. To that end, the Council would like an opportunity to sit down with you to discuss these issues and more so together we can pursue this important work.

    Sincerely,

    The Governor's Advisory Council on
    Diversity and Inclusion

June 29, 2021

Governor Chris Sununu
107 N. Main St.
Concord, NH 03301

Dear Governor Sununu,

We are writing to inform you of our collective resignation from the Governor's Advisory Council on Diversity and Inclusion, effective immediately.

On June 25, 2021 you signed into law a provision that aims to censor conversations essential to advancing equity and inclusion in our state, specifically for those within our public education systems, and all state employees. This will directly impact those who are working with some of our state's most vulnerable populations, including educators, child welfare workers, and law enforcement.

This is in direct conflict with the stated purpose of the Council laid out in your 2018 Executive Order instructing us to identify ways to "combat discrimination and advance diversity and inclusion." We accepted your appointment to this council out of commitment and love for this state and your stated desire to advance diversity and inclusion. Given your willingness to sign this damaging provision and make it law, we are no longer able to serve as your advisors.

As members of the Council on Diversity and Inclusion, we have spent hundreds of hours in conversation with over a dozen New Hampshire communities over the past three years. We have heard the stories of struggle from individuals who have experienced racism, sexism, ableism and other forms of systemic discrimination right here in the Granite State. We have also heard uplifting stories of growth and learning from local leaders, police departments, and educators coming together to collectively address implicit bias and bias incidents. We have a responsibility to those community members to uplift their truth and ensure their voices are heard over the growing din of politically motivated fear mongering currently dominating the public discourse.

Governor, we feel obligated to inform you that—contrary to your recent public statements—systemic racism does in fact exist here in New Hampshire. You appointed us to explore these issues, and we have reported our findings to you in detail every step of the way. The pain that we heard in the voices of those who came to the meetings to convey their truths and lived experiences served as a call to action. The only way to truly serve all Granite Staters is to acknowledge what is true for some of the citizens, continue to implement many of the strategies suggested by teams and councils you appointed to examine discrimination, and heal from the wounds of the past so we can create a brighter future for our children.

We sent you two letters urging you to oppose this damaging legislative proposal, both in its original form and as passed by the Senate, and requested a chance to meet with you to seek a solution that didn't derail the important efforts underway in New Hampshire. The Council has continuously worked to deliver to you our findings, sent you our opinion that this would weaken—not strengthen—the state's anti-discrimination laws, and urged you to oppose this provision. Your disregard of this work makes clear that we are no longer able to fulfill the Council's mandate.

It should not be taken lightly that nearly every member of the Council that is not part of your administration is resigning today, as we collectively see no path forward with this legislation in place.

Despite our resignation from this Council, we are more committed than ever to advancing the real work that is needed to build a more equitable and inclusive Granite State. Separate from the Council, we will find ways to support local educators, municipal employees, and community leaders as they grapple with the corrosive impact of this legislation, which we are already seeing at a local level throughout the state. We look forward to many future honest and difficult conversations about race, gender, and other forms of discrimination and bias. We also hope that, in time, you will come to understand the true damage that this legislation has caused to the fabric of New Hampshire's communities.

Sincerely,

Dr. Dottie Morris
Devon Chaffee
Maria Devlin
Sharon Harris
James Maggiore
Dr. Salman Malik
Dr. James Morse
Pawn Nitichan
Sheriff Eliezer Rivera
Allyson Ryder