**EXHIBIT 20**

Attorney General
Opinion No. 2021-01
(Sept. 7, 2021)

# ATTORNEY GENERAL
# DEPARTMENT OF JUSTICE

33 CAPITOL STREET
CONCORD, NEW HAMPSHIRE 03301-6397

JOHN M. FORMELLA
ATTORNEY GENERAL



JANE E. YOUNG
DEPUTY ATTORNEY GENERAL

## ATTORNEY GENERAL OPINION NO. 2021-01

September 7, 2021

Doug Palardy, Chair
Ahni Malachi, Executive Director
New Hampshire Commission for Human Rights
2 Industrial Park Drive, Building One
Concord, NH  03301

RE:  Request for Attorney General's Opinion regarding new anti-discrimination protections

Dear Chair Palardy and Director Malachi:

You requested, on behalf of the New Hampshire Commission for Human Rights, that this office provide an official Attorney General Opinion concerning the scope and application of the recently passed Sections 297 and 298 of House Bill 2 ("Sections 297 and 298"),[1] to be codified at RSA 354-A:29, RSA 354-A:30, RSA 354-A:31, RSA 354-A:32, RSA 354-A:33, RSA 354-A:34; and RSA 193:40. These statutes collectively comprise a subdivision in RSA chapter 354-A titled "Right to Freedom from Discrimination in Public Workplaces and Education" and new section in RSA chapter 193 titled "Prohibition on Teaching Discrimination."

Some have voiced concerns that these new statutes are confusing and that public employers and schools will struggle to understand the scope of the new prohibitions. *See* Governor's Advisory Council on Diversity and Inclusion, *Letter to Gov. re HB 544* (June 2, 2021). To help address these concerns, the Department of Justice, Commission for Human Rights, and the Department of Education released guidance shortly after the new anti-discrimination laws took effect. Recognizing the important need for public employers, government programs, and school systems to engage in sensitivity training that may include frank and candid discussions of the historical aspects of oppression and its contemporary effects, you requested that this office provide an official Attorney General Opinion.

The Commission for Human Rights (the "Commission") was created with the power to eliminate and prevent discrimination in employment, places of public accommodation, housing,

---

[1] Before final passage by the legislature, this legislation was included in HB 2 as Section 330 and 330-a. The final version of HB 2 includes the legislation at Section 297 and 298.

Doug Palardy, Chair
Ahni Malachi, Executive Director
September 7, 2021
Page 2 of 9

and, effective in 2019, public education. The Commission is charged with receiving, investigating, and adjudicating complaints related to violations of RSA chapter 354-A that may be filed by members of the public or the Commission and holding hearings as required to execute the Commission's duties. Section 297 prohibits certain public sector activities and expands the Commission's jurisdiction to address such activities. Section 298 prohibits the teaching of certain subjects in elementary and secondary schools and it also places review of violations within the Commission's jurisdiction.

The Attorney General's duties include advising "any state board, commission, agent or officer as to questions of law relating to the performance of their official duties, and he shall, under the direction of the governor and council, exercise a general supervision over the state departments, commissions, boards, bureaus, and officers, to the end that they perform their duties according to law." RSA 7:8. In situations where requests for legal advice are significant to the operation of the state board, commission, or agency and are likely to be of continuing importance, the advice may be issued by an official Attorney General Opinion. In such situations, the questions posed are researched and an opinion drafted by a group of attorneys. The draft opinion is also subject to multiple layers of review, including by the Associate Attorney General for the Division of Legal Counsel and the Solicitor General. The Attorney General provides a final review and approval.

Given the importance of your questions to the education and training of your staff to best serve New Hampshire residents, I am providing an official Attorney General Opinion as set forth below.

## QUESTIONS PRESENTED

1. What is the scope of Sections 297 and 298 and what types of education and training activities do those sections prohibit and permit?

2. Do the new sections of RSA chapter 354-A prohibit trainings or programs designed to promote diversity and inclusion or to educate participants about concepts such as implicit bias?

3. Does RSA 193:40 prohibit education on the historical concepts related to discrimination or oppression?

## CONCLUSION

1. The new sections added to RSA chapter 354-A prohibit trainings or programs that teach participants that one identified group possesses inherent characteristics, meaning natural, biological, or innate characteristics, as opposed to apparent or accidental characteristics that: (1) make them superior or inferior to other identified groups or (2) make one identified group racist, sexist, or oppressive. The new sections added to RSA chapter 354-A also prohibit trainings or programs that teach participants that any identified group can or should be treated unequally to

Doug Palardy, Chair
Ahni Malachi, Executive Director
September 7, 2021
Page 3 of 9

any other identified group and that one identified group should be discriminated against or treated adversely.

Similarly, RSA 193:40 prohibits teaching students that one identified group possesses inherent characteristics, meaning natural, biological, or innate characteristics, as opposed to apparent or accidental characteristics that: (1) make them superior or inferior to other identified groups or (2) make one identified group racist, sexist, or oppressive. RSA 193:40 also prohibits teaching students that any identified group can or should be treated unequally to any other identified group and that one identified group should be discriminated against or treated adversely.

2.   No. The new sections added to RSA chapter 354-A **explicitly permit** public employers and government programs to provide sensitivity training, which RSA 354-A:29 defines as "based on the inherent humanity and equality of all persons" and based upon the "ideal that all persons are entitled to be treated with equality, dignity, and respect." Implicit bias training, for example, is premised on teaching people about biases they may have of which they are not consciously aware and helping people become aware of those biases so as to encourage treating others with dignity and respect and to avoid treating others less than equally. Implicit bias training does not violate Section 297. Similarly, the new sections added to RSA chapter 354-A do not prohibit other diversity, equity, inclusion, and equality trainings. Section 297 prohibits trainings if and only if they include concepts of group superiority or inferiority based on inherent or innate group characteristics or advocate for less than equal treatment of identified groups.

3.   No. RSA 193:40 does not prohibit discussion of historical concepts related to discrimination. RSA 193:40 prohibits education related to solely the four subjects identified in Short Answer 1. Specifically, it prohibits teaching that one or more identified groups are: (1) inherently superior or inferior to people of another identified group; (2) inherently racist, sexist, or oppressive, whether consciously or unconsciously; (3) should be discriminated against or receive adverse treatment; or (4) should not treat members of other identified groups equally. It is important to note that although education related to racism, sexism, and other practices or ideas that have harmed or continue to harm certain identified groups may make some parents, students, or faculty uncomfortable, that fact alone does not mean that a school has violated RSA 193:40.

**BACKGROUND**

On June 25, 2021, the Governor signed into law House Bill 2, which added, in Section 297, new provisions to RSA chapter 354-A entitled, "Right to Freedom from Discrimination in Public Workplaces and Education." Specifically, Section 297 adds six new sections to RSA chapter 354-A: (1) RSA 354-A:29, "Right to Freedom from Discrimination in Public Workplaces and Education"; (2) RSA 354-A:30, "Definitions"; (3) RSA 354-A:31, "Prohibition on Public Employers"; (4) RSA 354-A:32, "Prohibition on the Content of Government Programs and Speech"; (5) RSA 354-A:33, "Prohibition on Public Employees"; and (6) RSA 354-A:34, "Remedies."

Doug Palardy, Chair
Ahni Malachi, Executive Director
September 7, 2021
Page 4 of 9

Section 297 is part of the amended progeny of House Bill 544, which was commonly known as the "divisive concepts" bill. The House of Representatives voted to table House Bill 544 but to incorporate its language into House Bill 2. During its review, the Senate Finance Committee stripped the language of House Bill 544 out of House Bill 2 and added the language that is now Sections 297 and 298. The House of Representatives acceded to these changes during the Committee of Conference.

The major provisions of Section 297, codified as RSA 354-A:31, RSA 354-A:32, and RSA 354-A:33, prohibit training, education, or other state-sponsored speech that incorporates any of the following four concepts:

1. That people of one age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin, are inherently superior or inferior to people of another age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin;

2. That an individual by virtue of that person's age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin is inherently racist, sexist, or oppressive, whether consciously or unconsciously;

3. That an individual should be discriminated against or receive adverse treatment solely or partly because of that person's age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin; and

4. That people of one age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin cannot and should not attempt to treat others equally and/or without regard to age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin.[2]

These four new statutory provisions combine to limit the types of training and education public employers may introduce to their employees, and protects employees who object to participating in training programs inconsistent with the new statutory provisions. RSA 354-A:31 prohibits public employers from teaching, advocating, instructing, or training anyone any of the above listed concepts. RSA 354-A:32 prohibits "government programs," which it defines as any

---

[2] This Opinion will use the term "identified group" to mean age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin. With this inclusive of a definition, every resident and visitor to New Hampshire is a member of one or more identified groups.

Doug Palardy, Chair
Ahni Malachi, Executive Director
September 7, 2021
Page 5 of 9

activity undertaken by a public employer including in the performance of its government function, from teaching, advocating, or advancing any of the above listed concepts. RSA 354-A:33 prohibits a public employer from disciplining a public employee for refusing to participate in any training, program, or other activity that advocates for or compels the employee to express support for any of the above listed concepts.

Section 298 is the remainder of the amended progeny of HB 544. This section creates a new statute, RSA 193:40: "Prohibition on Teaching Discrimination." RSA 193:40 prohibits teaching students in an elementary or secondary education program any of the four concepts that the new sections in RSA chapter 354-A prohibit.

The statutory changes within Sections 297 and 298 are legislation of limited reach. The new statutes do not prohibit racial, sexual, religious, or other workplace sensitivity training "based on the inherent humanity and equality of all persons." They do not prohibit workplace trainings based upon the "ideal that all persons are entitled to be treated with equality, dignity, and respect." These statutes explicitly exclude such sensitivity trainings from the scope of the new prohibitions created by RSA 354-A:31, RSA 354-A:32, and RSA 354-A:33. Nor do they prohibit discussing or teaching students about the historical existence of ideas related to the four prohibited subjects, such as the history of discrimination.

## ANALYSIS

The scope of Sections 297 and 298's prohibitions hinges on the meaning of the language those sections employ. When interpreting a statute, a court or agency charged with such interpretation must first look to the language of the statute itself. *Conduent State & Local Solutions, Inc. v. N.H. Dep't of Transportation*, 171 N.H. 414, 419 (2018). In doing so, the agency must begin with the plain meaning of the words used. *Union Leader Corp. v. Town of Salem*, 173 N.H. 345, 350 (2020); *see also* RSA 21:2 (2012) ("Words and phrases shall be construed according to the common and approved usage of the language."). The agency must confine itself to the statute as written and not consider what the legislature might have said or add language the legislature did not include. *Conduent State & Local Solutions, Inc.*, 171 N.H. at 420. The agency must look at the statute as a whole and should construe the statute to avoid absurd or unjust results.[3] *Id.* Absent an ambiguity[4] examination of any legislative record beyond the actual text of the statutes is inappropriate.

---

[3] Examples of absurd results include, but are not limited to, situations where the interpretation of one statute negates another. *See Soraghan v. Mt. Cranmore Ski Resort, Inc.*, 152 N.H. 399, 405 (2005) ("When interpreting two statutes that deal with a similar subject matter, we construe them so that they do not contradict each other."). The goal of statutory interpretation is to strive to read statutes in harmony with one another rather than in dissonance with one another. *See id.* ("[W]e do not construe statutes in isolation; instead, we attempt to do so in harmony with the overall statutory scheme.").

[4] In this context, ambiguity is a legal term of art that applies only if two or more reasonable interpretations of a statute exist after the agency considers the plain meaning of the words in the statute. *Attorney General v. Loreto Publications, Inc.*, 169 N.H. 68, 74 (2016).

Doug Palardy, Chair
Ahni Malachi, Executive Director
September 7, 2021
Page 6 of 9

Prohibitions Related-to Inherent Traits

The scope of Section 297 and 298's first two prohibitions derives substantially from the meaning of the term "inherent." In the first prohibition, a trainer, government program, or educator may not teach that one identified group is "inherently superior or inferior" to another identified group. In the second prohibition, a trainer, government program, or educator may not teach that one identified group is "inherently racist, sexist, or oppressive, whether consciously or unconsciously." Neither section defines the term "inherent," nor are we aware of any other relevant statutory provisions that define "inherent" as the Legislature used it in Sections 297 and 298. When the Legislature does not specifically define a term within a statute, the Legislature is presumed to have used that term as it is commonly understood. *Franciosa v. Hidden Pond Farm, Inc.*, 171 N.H. 350, 359 (2018). In such situations, the New Hampshire Supreme Court will consult a standard dictionary to discern the common understanding of any given term. *Id.* As an adjudicatory body, the Human Rights Commission should also consult a standard dictionary to discern the common understanding of any given term.

"Inherent" means "structural or involved in the constitution or essential character of something : belonging by nature or settled habit : intrinsic, essential." *Webster's Third New International Dictionary* 1163 (unabridged ed. 2002). The definitions of "intrinsic" and "essential" further illuminate the meaning of "inherent." "Intrinsic" means "belonging to the inmost constitution or essential nature of a thing : essential or inherent and not merely apparent, relative, or accidental." *Id.* at 1186. "Essential" means "forming or constituting the essence of something: making up or being the constituent or intrinsic character or very nature of a thing . . . belonging to or being part of the essence of something: belonging to the constituent fundamental character of a thing: not accidental to something." *Id.* at 777.

The common thread that runs through these definitions is that an inherent characteristic is natural, biological, or innate, as opposed to being apparent, accidental, or a characteristic created by external action or external factors, such as current or historical discrimination, stereotyping, environment, or cultural messaging.

"Inherent," therefore, is properly viewed as a limitation of the scope of Sections 297 and 298's first two prohibitions. With respect to the first, Sections 297 and 298 proscribe training, advocacy, or education that teaches participants that, solely by belonging to one identified group, they are naturally, biologically, or innately, as opposed to merely apparently, accidentally, or because of external action or external factors, superior or inferior to members of other identified groups. With respect to the second, Sections 297 and 298 proscribe training, advocacy, or education that informs participants that solely by belonging to one identified group, they are naturally, biologically, or innately, as opposed to merely apparently, accidentally, or because of external action or external factors, consciously or unconsciously racist, sexist, or oppressive.

Prohibitions Related-to Promoting Discrimination

Interpreting Sections 297 and 298's third and fourth prohibitions does not turn on the meaning of key terms that define the scope of the prohibition. The statutory language makes

Doug Palardy, Chair
Ahni Malachi, Executive Director
September 7, 2021
Page 7 of 9

plain that a public employer or government program may not provide training or education that informs participants that members of an identified group should be discriminated against or receive adverse treatment. Nor may a public employer or government program provide training or education that informs participants that members of one identified group should not treat members of other identified groups equally.

Permitted Trainings, Activities, and Education

Separate from its prohibitions, Section 297 expressly permits certain trainings and programming within the category of "sensitivity training." This is defined as training "based on the inherent humanity and equality of all persons" and based upon the "ideal that all persons are entitled to be treated with equality, dignity, and respect." Sensitivity training consistent with the provisions of Section 297 readily encompasses trainings and programming that promote concepts of equality and the equal, respectful, and dignified treatment of all persons—particularly as they relate to the interactions of members of those identified groups with public employers or government programs.

"Sensitivity training" includes implicit bias training. Implicit bias training is premised on teaching people about biases they may have of which they are not consciously aware and helping them become aware of those biases so as to encourage treating others with dignity and respect and to avoid treating others less than equally. Implicit bias training recognizes that biases develop over time through such means as personal experiences, messaging people may receive from media, and other sources. Implicit bias training does not violate Section 297 unless it includes concepts of group superiority or inferiority based on inherent or innate group characteristics or concepts that an identified group should be treated unequally or discriminated against.

"Sensitivity training" is not limited to implicit bias training, however. For example, a public employer or government program may create a web-based resource entitled, "Anti-Racist Resources," and include information designed to promote a better understanding of racism and how to combat racism. But, if that web-based resource stated that it was designed to "serve as a resource to white people" or to "serve as a resource for our white employees," then it could violate Section 297 because it may imply that white people, specifically and for no other reason, are in need of anti-racist resources—resources that could benefit people from all backgrounds.

Section 298 expressly permits schools to educate about and discuss the historical existence of ideas and subjects that are otherwise prohibited under Section 298. Section 298 does not prohibit schools from teaching about discrimination or how discrimination has existed throughout history. Nor does Section 298 prohibit schools from teaching about the role that discrimination may play in creating disparities among different identified groups. Similar to Section 297, Section 298 does not prohibit teaching students about implicit biases nor does it prohibit schools from creating web-based resources designed to promote a better understanding of racism, sexism, or other forms of oppression. Section 298 is violated only when a school educates about concepts of group superiority or inferiority based on inherent or innate group

Doug Palardy, Chair
Ahni Malachi, Executive Director
September 7, 2021
Page 8 of 9

characteristics divorced from history or educates that an identified group should be treated unequally or discriminated against.

Section 298 applies to educational instruction in K-12 schools only. Nothing in Section 298 limits instruction by educators in post-secondary schools. Section 297's prohibitions, however, do apply to the teaching and training of employees and volunteers in public, post-secondary educational institutions.

<u>Construing the Prohibited Activities Together with the Permitted Activities</u>

Construing these new statutes harmoniously, Sections 297 and 298 allow public employers, government programs, and schools to train and educate in a manner that promote concepts of equality and the equal, respectful, and dignified treatment of all persons. Both sections permit public employers, government programs, and schools to train and educate about concepts such as implicit bias. Public employers, government programs, and schools violate Sections 297 and 298 only when trainings or education programs advocate that identified groups are either: (1) oppressive by their nature and not simply oppressive by accident, apparently oppressive, or oppressive because of external action or external factors; (2) consciously or unconsciously biased by their nature and not simply biased (racist or sexist) by accident, apparently biased (racist or sexist), or biased (racist or sexist) because of external action or external factors; (3) deserving of discrimination or adverse treatment; or (4) deserving of unequal treatment.[5]

This construction comports with traditional definitions of racism and sexism. For example, "racism" means, among other things, "the assumption that psychocultural traits and capacities are determined by biological race and that races differ decisively from one another, which is usually coupled with a belief in the inherent superiority of a particular race and its right to domination over others." *Webster's Third New International Dictionary* at 1870. This construction also strikes a harmonious balance between expressly permitted "sensitivity training" or programming and prohibited programming that exacerbates discrimination.

For the reasons set forth above, the new sections added to RSA chapter 354-A and RSA 193:40 prohibit only those trainings or educational programs that: (1) teach participants that one identified group possesses inherent characteristics, meaning natural, biological, or innate characteristics, as opposed to characteristics which are apparent, accidental, or based on external action or external factors, that make them superior or inferior to other identified groups, or that those inherent characteristics make one identified group consciously or unconsciously racist, sexist, or oppressive or (2) teach participants that one identified group should be discriminated against or treated adversely. The new sections added to RSA chapter 354-A and RSA 193:40 do not prohibit trainings or educational programs that teach participants about disparities that may

---

[5] Like many discrimination claims, review of a claimant's allegations will involve a fact-intensive, case-by-case analysis of the training or programming at issue to determine whether the training or programming violated Sections 297 or 298's prohibitions.

Doug Palardy, Chair
Ahni Malachi, Executive Director
September 7, 2021
Page 9 of 9

exist among different identified groups, the current or historical practices that may have contributed to those disparities, or about concepts such as implicit bias.

Sincerely,

*[signature]*

John M. Formella
Attorney General

#3293122