# EXHIBIT 21

David Wolowitz, "A Proposal to Mitigate the Risk to Public School Teachers' Careers From New Hampshire's Right to Freedom from Discrimination in Public Workplaces and Education Act," (July 6, 2021/Aug. 2, 2021)



EDUCATION

# A Proposal to Mitigate the Risk to Public School Teachers' Careers From New Hampshire's Right to Freedom from Discrimination in Public Workplaces and Education Act

**David Wolowitz**
Director, Litigation Department and Co-chair of Education Law Group

Published: McLane.com
July 6, 2021



*updated August 2, 2021*

On June 25, 2021, N.H. RSA 354-A:29, the Right to Freedom from Discrimination in Public Workplaces and Education Act, became law. The statute is only five paragraphs. Despite its brevity, or perhaps because of it, it creates a legal minefield for New Hampshire public school teachers and school administrators.

It states as follows:

"The general court hereby finds and declares that practices of discrimination against any New Hampshire inhabitants because of age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin are a matter of state concern, that discrimination based on these characteristics not only threatens the rights and proper privileges of New Hampshire inhabitants but menaces the institutions and foundation of a free democratic state and threatens the peace, order, health, safety and general welfare of the state and its inhabitants."

The section on the "Prohibition on Teaching Discrimination" enumerates four prohibited concepts:

"No pupil in any public school in this state shall be taught, instructed, inculcated or compelled to express belief in, or support for, any one or more of the following:

(a) That one's age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion or national origin is inherently superior to people of another age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin;

(b) That an individual, by virtue of his or her age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin, is inherently racist, sexist, or oppressive, whether consciously or unconsciously;

(c) That an individual should be discriminated against or receive adverse treatment solely or partly because of his or her age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin; or

(d) That people of one age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin cannot and should not attempt to treat others without regard to age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin."

The statute permits discussion of the prohibited concepts only under the following circumstances:

"Nothing in this section shall be construed to prohibit discussing, as part of a larger course of academic instruction, the historical existence of ideas and subjects identified in this section."

I will leave it to others to address the merits of the statute and the possible constitutional issues raised by the statute. Rather, my focus is the specific, and very real, risk the statute creates to the livelihoods of teachers and administrators.

The statute provides for multiple remedies for a violation of the statute. One remedy is a civil action against a school or school district for legal or equitable relief, most likely an injunction to stop the instruction of prohibited concepts. Another remedy is a complaint to the N.H. Commission on Human Rights which has the power to receive, investigate and pass upon complaints of illegal discrimination by teaching prohibited concepts.

While these remedies are significant, the greatest risk to teachers and administrators is the remedy specifically directed at them: *"Violation of this section by an educator shall be considered a violation of the educator code of conduct that justifies disciplinary sanction by the state board of education."* To avoid any doubt about who is covered by this penalty, the statute provides: *"Administrators, specialists, and teachers are included within the definition of this term."* In my opinion, the effect of this penalty is to make teachers and administrators sitting ducks in the shooting gallery of the culture wars.

Sadly, we live in a time when society is so divided that one of the few areas of agreement is on how divided we are. Among the topics most hotly debated are issues related to discrimination or oppression based on sex, gender identity, sexual orientation, race, religion, and national origin. Teachers who teach any topic, give any assignment, or engage in any classroom discussion that might touch on these issues now face the very real possibility of being reported for violating the educator code of conduct. Violations of the educator code of conduct can lead to serious adverse employment consequences, including the loss of one's license and therefore one's livelihood.

The statutory prohibition may appear at first glance to only prohibit teaching with inculcates or compels students to express belief in or support for a prohibited concept. As drafted, the construction of sentence prohibits teaching or instruction of the prohibited concepts, regardless of whether the teaching or instruction inculcates or compels the students to believe in or support the concepts. This reading of the statute is consistent with the FAQ issued by the N.H. Department of Education, Commission For Human Rights, and Department of Justice. Thus, any parent who believes a teacher or administrator has "taught" or "instructed" any of the prohibited concepts can file a complaint with the Department of Education. No lawyer is needed; it is simply a matter of filling out a form. For a teacher, the process of defending oneself from a professional conduct complaint is stressful, time consuming, and potentially expensive. Moreover, even if the teacher prevails, the fact of having been the subject of a professional conduct complaint can adversely impact one's career as most employers require disclosure of past complaints, regardless of the outcome.

Classroom discussions present a particular risk because a teacher cannot predict what students might say and because the definition of "taught" is so broad. Merriam-Webster has multiple definitions for "teach," including "to guide the studies of." If a student begins discussing a prohibited concept and the teacher permits the discussion to continue, the students are arguably being "taught" or "instructed" about a prohibited concept. For example, if a student were to assert that the prohibitions and penalties in the new law are motivated by racism or sexism, which some critics have argued, permitting such discussion to continue could be construed as a violation of the statute. The teacher could potentially be subject to a

professional misconduct charge that by permitting students to engage in a classroom discussion on the topic he or she guided the study of the prohibited concept that an individual is inherently racist and thereby "taught" it. As this topic is a current issue, it would not fall under the limited statutory exception which permits the discussion only of "the historical existence of ideas and subjects." Only by stopping the discussion can the teacher make it unambiguously clear that he or she is not instructing in support of the prohibited concept.

Therefore, to protect themselves against potential professional conduct complaints, teachers should be prepared to immediately stop any classroom discussions on any and all topics potentially relating to the prohibited concepts. Given the high personal and professional risk under the statute, teachers should consider alerting students in advance of classes and events in which prohibited concepts could potentially be discussed that such discussions will not be permitted in order to comply with the law.

The risk of being reported is not only from parents. Under the administrative rules for the N.H. Department of Education, teachers and administrator are required to report any suspected violation of the code of conduct. The rules state: *"Any credential holder shall report any suspected violation of the code of conduct following the school, school district, or SAU reporting procedures."*

Failure to report a suspected violation by a colleague is itself a violation of the code of conduct. *"If the department has reason to suspect that any violation of the code of conduct enumerated in Ed 510.01 through Ed 510.04 was known by a credential holder and not reported, the department shall undertake an investigation, as enumerated in Ed 511.01, against that credential holder."* Section Ed 510.05 – Duty to Report.

Imagine a teacher trying to decide on a daily basis whether an assignment or lesson plan could prompt a discussion about discrimination based on sex, gender identity, sexual orientation, race, religion, or national origin which might possibly be interpreted by a student or parent as teaching a prohibited concept. Given the high stakes, many teachers will likely consult with an administrator. Many administrators may choose to err on the side of caution and advise against addressing the topic to avoid the risk of a possible professional conduct complaint. Consequently, the statute may have a substantial chilling effect on the teaching of subjects that could possibly engender discussion, or even contemplation, of topics relating to sex, gender identity, sexual orientation, race, religion, or national origin.

Given the extraordinarily high risk of teaching related to any of these topics, I recommend that teachers exercise caution even when they are confident their teaching does not violate the statutory prohibitions. Specifically, I propose that teachers alert parents and students in advance of classes, assignments, and classroom discussions of the statute's purpose, its limitations on teaching prohibited concepts, and what the statute permits. Teachers could then assure parents and students that they have reviewed the teaching content and determined that it is in compliance with the statute.

Such a notice is not a guarantee that a complaint will not be filed with the Board of Education. Parents may assert that a professional conduct violation for teaching prohibited concepts should not be determined by the teacher's intent or the content of the course material, but rather by the subjective reaction of a parent who believes their child was "taught" a prohibited concept. Nonetheless, the notice will be substantial evidence that the educator was aware of the law, took meaningful efforts to comply with it, and did not willfully violate it.

Such a notice could take many forms. I include below a basic sample notice which simply recites the statute as a starting point. Notice could be provided prior to a class, an assignment, or a classroom discussion that has the potential of raising concerns about teaching a prohibited concept. I recommend keeping records of having provided the notice, so that they can be provided in the event of a professional conduct complaint.

It is my hope that no teacher will face a professional conduct complaint unfairly alleging a violation of the new law. However, given the realities of the times we live in, my proposal is intended to help teachers protect themselves so that they can continue to perform their important, underappreciated, and increasingly risky, work.

*Note: This is not intended to constitute legal advice. For advice on complying with the new statute, consult with your legal counsel.*

[Sample Notice]

**To: Students and Parents**

**Re: 354-A:29 Right to Freedom from Discrimination in Public Workplaces and Education Act**

On June 25, 2021, N.H. RSA 354-A:29, the Right to Freedom from Discrimination in Public Workplaces and Education Act, became law. It states as follows:

"The general court hereby finds and declares that practices of discrimination against any New Hampshire inhabitants because of age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin are a matter of state concern, that discrimination based on these characteristics not only threatens the rights and proper privileges of New Hampshire inhabitants but menaces the institutions and foundation of a free democratic state and threatens the peace, order, health, safety and general welfare of the state and its inhabitants."

This is to inform you that nothing in the [class, course materials, assignment, classroom discussion] is intended to teach, instruct, inculcate or compel to express belief in, or support of, any of the following:

"(a) That one's age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion or national origin is inherently superior to people of another age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin;

(b) That an individual, by virtue of his or her age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin, is inherently racist, sexist, or oppressive, whether consciously or unconsciously;

(c) That an individual should be discriminated against or receive adverse treatment solely or partly because of his or her age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin; or

(d) That people of one age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin cannot and should not attempt to treat others without regard to age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin."

The statute permits the following:

"Nothing in this section shall be construed to prohibit discussing, as part of a larger course of academic instruction, the historical existence of ideas and subjects identified in this section."

## Related Insights



**EDUCATION**

**Defining the Standard of Care**

By **David Wolowitz**

July 12, 2021

**EDUCATION**

**The Importance Of Understanding And Fulfilling The Duty Of Reasonable Care When Re…**

By **David Wolowitz**

May 13, 2020

See more insights