# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| LOCAL, 8027,<br>AFT-NEW HAMPSHIRE, et al.<br><br>Plaintiffs<br><br>v.<br><br>FRANK EDELBLUT, in his official<br>capacity only as the Commissioner<br>of the New Hampshire Department<br>of Education, et al.<br><br>Defendants | Case No. 1:21-cv-1077-PB |

## REPLY TO THE PLAINTIFFS' JOINT OBJECTION TO THE DEFENDANTS' MOTION TO DISMISS

### Introduction

The plaintiffs bring facial challenges alleging that the new antidiscrimination provisions are unconstitutionally vague. To prevail on these challenges, the plaintiffs must "demonstrate that the law is impermissibly vague in *all* of its applications." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497 (1982) (emphasis added). Unable to sustain that burden even at the pleading stage, the plaintiffs contend, among other things, that: (1) this Court may not consider the manner in which the defendants and the agencies tasked with enforcing the new antidiscrimination provisions (the "enforcing agencies") have construed the provisions, ECF Doc. No. 45 at 21–23; and (2) the enforcing agencies lack the authority to make

determinations about how to exercise their prosecutorial discretion in enforcing the law, *id.* at 31–34. These arguments lack merit.[1]

## Argument

The defendants in no way concede that the new antidiscrimination provisions would present a vagueness problem absent some limiting construction. As discussed in the defendants' underlying memorandum of law, they do not. But this is ultimately beside the point, as the defendants and enforcing agencies have, in fact, construed the antidiscrimination provisions, both in their filings in this case and through formal guidance documents. The plaintiffs' suggestion that this Court should ignore this construction when conducting its vagueness inquiry is simply incorrect.

Through the Department of Justice, the defendants have set forth their view of how the new antidiscrimination provisions operate in their underlying memorandum. As the defendants have explained, the order of operations under the new antidiscrimination provisions requires a complaint to first be filed in the Commission for Human Rights or state superior court. *See* ECF Doc. No. 36-1 at 33–34. Any such complaint is brought against a school or school district, not a teacher, administrator, or staff person. *See id.* A complaint triggers an investigatory process that ultimately results in determination of whether probable cause exists to support the allegations in the complaint. *See id.* at 34. This determination triggers an additional adjudicatory process, up to and including an appeal to the New Hampshire Supreme Court. *See id.* It is only at the end of this process that a finding of discrimination becomes final. *See id.* And the Department of Education may begin the process of bringing a disciplinary claim against an educator in the Board of Education only after a final finding of discrimination. *See id.* at 34–35.

---

[1] The remainder of the plaintiffs' arguments are adequately addressed in the defendants' motion to dismiss and need no further discussion here.

This enforcement scheme is consistent with the plain language of RSA 193:40. Unlike RSA 193:40, III, which permits any aggrieved person to initiate a lawsuit in superior court or file a complaint with the Commission for Human Rights to determine whether or not a violation had occurred, RSA 193:40, IV presumes that an appropriate adjudicator—not the Department or Board of Education—has already determined that a violation has occurred. It states, "Violation of this section by an educator shall be considered a violation of the educator code of conduct." 194:40, IV. It does not invite the public or other aggrieved persons to file complaints with the Department or Board of Education, but instead operates under the presumption that the Board of Education will act if and only if the Commission for Human Rights or superior court has already determined that a violation has occurred. This is consistent with the other sections of RSA chapter 193 that address discrimination. *See* RSA 193:38 (vesting the Commission for Human Rights and Superior Court with the authority to adjudicate discrimination complaints).

The enforcing agencies have also issued FAQs and the Attorney General has issued Attorney General Opinion 2021-01, all of which describe the conduct that the antidiscrimination provisions proscribes. Again, the enforcing agencies looked to the plain meaning of the statutes themselves, while also considering other common canons of statutory construction, including constitutional avoidance. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 842 (2018) (describing the doctrine of constitutional avoidance); *Doe v. Commissioner of New Hampshire Department of Health and Human Services*, 261 A.3d 968, 976 (N.H. 2021) (same). "That canon teaches that Congress is presumed to legislate in accordance with the Constitution and that, therefore, as between two plausible constructions of a statute, an inquiring court should avoid a constitutionally suspect one in favor of a constitutionally uncontroversial alternative." *United*

*States v. Dwinells*, 508 F.3d 63, 70 (1st Cir. 2007).[2] The FAQs and Attorney General Opinion 2021-01 are official public documents and are referred to in the complaints, and therefore may properly be considered by this Court. *See Ironshore Specialty Ins. Co. v. United States*, 871 F.3d 131, 135 (1st Cir. 2017).

"Administrative interpretation and implementation of a regulation are . . . highly relevant to [the vagueness] analysis, for in evaluating a facial challenge to a state law, a federal court must consider any limiting construction that a state court *or enforcement agency* has proffered." *Ward v. Rock Against Racism*, 491 U.S. 781, 795–96 (1989) (quotation and ellipsis omitted). Indeed, courts may even consider those limiting constructions offered directly to the court during the course of litigation. *See*, *e.g.*, *National Organization for Marriage v. McKee*, 649 F.3d 34, 66 (1st Cir. 2011) (accepting and considering arguments proffered by the state for the first time during appellate proceedings). Limiting constructions can unquestionably be found in opinions issued by the Attorney General and official guidance from New Hampshire state agencies. *Avard v. Dupuis*, 376 F. Supp. 478, 482 (D.N.H. 1974). Indeed, New Hampshire law recognizes that the Attorney General "exercise[s] a general supervision over the state departments, commissions, boards, bureaus, and officers, to the end that they perform their duties according to law." RSA 7:8. To that end, the Attorney General "shall . . . advise any state board, commission, agent or officer as to questions of law relating to the performance of their official duties." *Id*. Thus, this Court has recognized that the Attorney General has the authority to "resolve intramural disputes among executive agencies," *New Hampshire v. U.S. Dept. of Educ.*, No. 01-346-M, 2002 WL 1072282 at *3 (D.N.H. May 16, 2002), and to provide limiting constructions of statutes to state

---

[2] Interpreting the statute through this lens is also consistent with the defendants' duty to honor and uphold the State and Federal Constitutions. N.H. Const. Part II, art. 84 (detailing the oath of office all civil officers for the State of New Hampshire must take); *see also Silva v. Botsch*, 121 N.H. 1041, 1043 (1981) (recognizing that civil officials have a duty to uphold the state constitution).

agencies that may defeat a facial vagueness challenge, *see Avard*, 376 F. Supp. at 482 (recognizing that an opinion from the Attorney General constitutes "administrative interpretation by an agency charged with [the statute's] implementation" that opinion "may cure an otherwise unconstitutionally vague statute").

The defendants and enforcing agencies derive their statutory construction from the plain language of the antidiscrimination provisions themselves and established canons of interpretation. Under controlling precedent, this statutory construction is "highly relevant to [the vagueness] analysis." *Ward*, 491 U.S. at 795. The plaintiffs' suggestion that this Court should nonetheless ignore the construction for one that, by the plaintiffs' own estimation, *creates* a vagueness problem both defies that precedent and the well-established canon of constitutional avoidance. That the plaintiffs have resorted to this line of argument betrays the weakness of their vagueness claims.

The plaintiffs also argue that the enforcing agencies lack the discretion to determine how to enforce the antidiscrimination provisions. This argument is similarly misplaced. Insofar as this case implicates prosecutorial discretion, that discretion indisputably lies with the enforcing agencies. Administrative agencies engaging in civil enforcement of state regulations retain the discretion to determine whether and when to investigate and prosecute regulatory offenses. *See In re Morgan*, 144 N.H. 44, 48 (1999) ("[D]ecisions to investigate and prosecute are committed to the sound discretion of the agency."); *see also Citizens for Responsibility and Ethics in Washington v. Federal Election Commission*, 993 F.3d 880, 888 (D.C. Cir. 2021) (recognizing that even in the context of civil enforcement, regulatory agencies have the right to exercise prosecutorial discretion). "By virtue of its specialized knowledge and authority, the agency 'alone is empowered to develop that enforcement policy best calculated to achieve the ends

contemplated by [the legislature] and to allocate its available funds and personnel in such a way as to execute its policy efficiently and economically.'" *In re Morgan*, 144 N.H. at 48 (quoting *Moog Industries, Inc. v. F.T.C.*, 355 U.S. 411, 413 (1958)).

The legislature established the New Hampshire Commission for Human Rights approximately seventy years ago and vested it with the near exclusive authority to pass upon complaints alleging discrimination in employment, housing, public accommodations, and public education. *See* RSA 354-A:1 (defining the Commission for Human Rights' purpose); RSA 354-A:3 (establishing the Commission for Human Rights); RSA 354-A:21 (outlining the procedure and requirements for filing complaints before the Commission for Human Rights). In codifying the new antidiscrimination provisions, the legislature placed those provisions within RSA chapter 354-A, "State Commission for Human Rights," and vested the Commission for Human Rights with the authority—along with the Superior Court—to enforce the new antidiscrimination provisions. Even the provisions within RSA 193:40 authorize the Commission for Human Rights to be the adjudicator of whether a violation has or has not occurred. RSA 193:40, III.

To the extent the antidiscrimination provisions do not compel the Department of Education, along with any other enforcing agency, to defer to the Commission for Human Rights or the Superior Court in the first instance, such deference remains within the discretion of both the Department of Education itself and, more generally, the Attorney General's Office. *See New Hampshire v. U.S. Dept. of Educ.*, 2002 WL 1072282 at *3 Thus, the plaintiffs argument that the defendants' enforcement system reflects an unlawful exercise of prosecutorial discretion also lacks merit.

**Conclusion**

For the reasons stated above and in the defendants' underlying memorandum, this Court should dismiss the plaintiffs' facial vagueness claims.

        Respectfully submitted,

        FRANK EDELBLUT, in his official capacity as Commissioner of the Department of Education,

        JOHN M. FORMELLA, in his official capacity only as Attorney General of the State of New Hampshire,

        AHNI MALACHI, in her official capacity as Executive Director of the Commission for Human Rights,

        CHRISTIAN KIM, in his official capacity as Chair of the Commission for Human Rights,

           *and*

        KENNETH MERRIFIELD, in his official capacity as Commissioner of the Department of Labor

        By their attorney,

        JOHN M. FORMELLA
        ATTORNEY GENERAL

Date: June 24, 2022        /s/ *Samuel Garland*
        Samuel R.V. Garland, Bar No. 266273
        Senior Assistant Attorney General
        Civil Bureau
        New Hampshire Dept. of Justice
        33 Capitol Street
        Concord, NH 03301
        (603) 271-3650
        Samuel.RV.Garland@doj.nh.gov

**Certificate of Service**

I hereby certify that a copy of the foregoing was served on all counsel of record using the Court's CM/ECF system.

> /s/ *Samuel Garland*
> Samuel R.V. Garland