UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

|  |  |  |
|---|---|---|
| LOCAL, 8027,<br>AFT-NEW HAMPSHIRE, et al.<br><br>Plaintiffs<br><br>v.<br><br>FRANK EDELBLUT, in his official<br>capacity only as the Commissioner<br>of the New Hampshire Department<br>of Education, et al.<br><br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:21-cv-1077-PB |

**REPLY TO THE AFT PLAINTIFFS' SEPARATE OBJECTION TO
THE DEFENDANTS' MOTION TO DISMISS**

**Introduction**

The AFT plaintiffs, in their separate memorandum of law in response to the defendants' motion to dismiss, appear to acknowledge that Counts II-IV of their complaint are not actual separate claims or causes of action, but instead constitute variations on the same theory contained in Count I: the new antidiscrimination provisions fail to provide sufficient notice of the conduct they proscribe. On this basis, the AFT plaintiffs seek to sustain a freestanding First Amendment claim. But in making these arguments, the AFT plaintiffs overstate and overextend an outdated and rarely cited First Circuit decision, *Ward v. Hickey*, 996 F.2d 448 (1st Cir. 1993), in an effort to avoid the straightforward legal conclusion compelled by more recent case law that the First Amendment does not protect curricular and pedagogical speech. This effort is

necessarily unavailing, both because the analysis in *Ward* does not apply in the first place and because, even if it did, the AFT plaintiffs' claims still fail as a matter of law. The AFT plaintiffs' remaining arguments are even less persuasive. The Court should therefore dismiss the AFT plaintiffs' purported First Amendment claim.

## Argument

### I. The AFT plaintiffs' reliance on *Ward* is misplaced.

The AFT plaintiffs rely on *Ward* for the proposition that their curricular and pedagogical speech is entitled to First Amendment protection. Their reliance is misplaced. To begin with, the appeal in *Ward* did not directly present the threshold question the defendants have raised in this case: whether the First Amendment protects a teacher's curricular or pedagogical choices at all. The defendant school district in *Ward* did not raise this issue on appeal; rather, it operated from the assumption that a teacher's classroom speech is entitled to some First Amendment protection under *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 (1969)—a seminal decision addressing *student*, not teacher, speech—and framed its argument from there. *See* Brief of Defendant-Appellee the School Committee of the Town of Belmont, *Ward v. Hickey*, No. 92-1883, 1992 WL 12576401, at *10 (citing and quoting *Tinker*, 393 U.S. at 506–07); *see id.* at *11–*12 (quoting *Tinker*, 393 U.S. at 506). Following the school district's lead, the First Circuit, too, assumed that some First Amendment protections extend to a teacher's classroom speech, likewise based on *Tinker*. *See Ward*, 996 F.2d at 452. The First Circuit went on to assess the plaintiff's claims under a two-step test that necessarily flowed from the threshold, uncontested, assumption that some modicum of First Amendment protection extended to the speech at issue. *See id.* at 452–54.

"Where, in a prior decision, [a court of appeals has] not considered an issue directly and assessed the arguments of the parties with an interest in its resolution, that decision does not bind [the court] in a subsequent case where the issue is adequately presented and squarely before [the court], merely because some of the background facts are the same." *United States v. DiPina*, 178 F.3d 68, 73 (1st Cir. 1999). This is because two of the "essential principles of *stare decisis*" are that "an issue of law must have been heard and decided" and that "if an issue is not argued, or though argued is ignored by the court, or is reserved, the decision does not constitute a precedent to be followed." *Gately v. Comm. of Mass.*, 2 F.3d 1221, 1226 (1st Cir. 1993) (citation and quotation marks omitted). The First Circuit's assumption that the First Amendment extended to the speech at issue in *Ward* is not binding on this Court, because the parties in *Ward* did not brief, and the First Circuit therefore did directly address and decide, that threshold question. Here, in contrast, the plaintiffs contend that the antidiscrimination provisions at issue violate the First Amendment by "restricting [their] proper curricular discretion," ECF Doc. No. 30 ¶ 123, and the defendants have challenged that specific contention on the grounds that curricular and pedagogical choices are not protected by the First Amendment. Whatever *Ward* might say about the proper analysis if the defendants here, like those in *Ward*, had not raised this issue, it does not speak to the issue itself. For this reason alone, the AFT plaintiffs' reliance on *Ward* is misplaced.[1]

This would remain true, however, even if *Ward* had addressed the specific, threshold question raised in the defendants' motion here. The First Circuit has observed that the law-of-

---

[1] To the extent the First Circuit's treatment of the First Amendment claim in *Ward* may be construed to contain dictum on this threshold question, it is entitled to little if any persuasive value. Any such dictum is not "considered," because the "court of appeals did not receive the benefit of briefing on the issue" and the issue therefore "went unchallenged." *N.H. Lottery Comm'n v. Barr*, 386 F. Supp. 3d 132, 147 (D.N.H. 2019), *aff'd in part, vacated in part sub nom N.H. Lottery Comm'n v. Rosen*, 986 F.3d 38 (1st Cir. 2021).

the-circuit doctrine is "neither a straightjacket nor an immutable rule." *United States v. Lopez*, 890 F.3d 332, 339 (1st Cir. 2018) (citation and quotation marks omitted). Two exceptions to that doctrine exist: "1) where the previous holding is contradicted by controlling authority, subsequently announced; and 2) where authority postdates the original decision, although not directly controlling, nevertheless offers a sound reason for believing that the former panel, in light of fresh developments, would change its collective mind." *Id.* at 340 (cleaned up). *Ward* implicates at least the second, if not both, of these exceptions.

The decision in *Ward* predates *Garcetti*, *Decotiss v. Whittemore*, 635 F.3d 22 (1st Cir. 2011), and much of the out-of-circuit precedent cited in the defendants' memorandum. Those decisions directly address the threshold question of when the First Amendment protects speech made by public officials in their official capacities. Before *Garcetti*, this was an unresolved question, particularly as it related to teacher speech. Federal courts were split on whether teacher speech should be analyzed under the so-called *Pickering-Connick* standard, which approached teacher speech rights through the prism of public-employee speech, or the *Tinker-Hazelwood* standard, which, as noted above, analyzed the speech rights of teachers by analogy to student speech. *See*, *e.g.*, *Chiras v. Miller*, 432 F.3d 606, 616-17 (5th Cir. 2005) (acknowledging the split of authority among the various courts of appeals regarding the question of whether curricular decisions or teacher speech is entitled to First Amendment protection); *Lee v. York County School Div.*, 418 F. Supp. 2d 816, 821 (E.D. Va. 2006) (identifying differing approaches to teacher speech across the courts of appeals). Notably, *Ward* applied the *Tinker-Hazelwood* standard. *See* 996 F.2d at 452.

In *Garcetti*, the Supreme Court reiterated that determining whether the First Amendment protects public-employee speech should be assessed under the *Pickering-Connick* standard,

while refining the standard itself. *See Garcetti*, 547 U.S. at 415–20. Since *Garcetti*, several federal courts of appeals have applied its reasoning to pedagogical and curricular speech, as discussed in the defendants' underlying memorandum. *See* ECF Doc. No. 36-1 at 16–20 & cases cited therein. In *Decotiis*, the First Circuit applied the *Garcetti* framework to First Amendment claims brought by a speech and language therapist working as a state contractor in a school. 635 F.3d at 29–30. Notably, both the First Circuit in an unpublished opinion and several district courts within the First Circuit have cited both *Garcetti* and *Decotiis* when assessing whether an educator's speech was protected by the First Amendment. *See, e.g.*, *Alberti v. Carlo-Izquierdo*, 548 F. App'x 625, 638–39 (1st Cir. 2013); *Salmon v. Lang*, No. CV 19-11378-RGS, 2019 WL 6496844, at *4 (D. Mass. Dec. 3, 2019); *Brady v. Sch. Bd., Somersworth Sch. Dist.*, No. 16-CV-069-JD, 2016 WL 6537629, at *4 (D.N.H. Nov. 3, 2016) (*DiClerico*, J.); *Meagher v. Andover Sch. Comm.*, 94 F. Supp. 3d 21, 36 (D. Mass. 2015); *Estock v. City of Westfield*, 806 F. Supp. 2d 294, 307 (D. Mass. 2011). In contrast, *Ward*, though far older, has only been cited in four subsequent First Circuit decisions, and never in a manner the AFT plaintiffs cite it here. *See Efron v. Mora Dev. Corp.*, 675 F.3d 45, 46 (1st Cir. 2012); *Foote v. Town of Bedford*, 642 F.3d 80, 85 (1st Cir. 2011); *Barton v. Clancy*, 632 F.3d 9, 26 (1st Cir. 2011); *Conward v. Cambridge Sch. Comm.*, 171 F.3d 12, 22 (1st Cir. 1999).

Indeed, research has revealed only one post-*Garcetti* decision from a district court within the First Circuit that cites *Ward* when assessing claims that might arguably be viewed to arise out of "curricular discretion." *See Griswold v. Driscoll*, 625 F. Supp. 2d 49, 60 (D. Mass. 2009). But that case offers the AFT plaintiffs no refuge, and not merely because the district court dismissed the plaintiffs' First Amendment claims outright for failure to state a claim. *See id.* at 53–54. In an opinion written by Justice Souter, the First Circuit affirmed that dismissal, holding that the

curriculum guide the plaintiffs had challenged "did not implicate the First Amendment." *Griswold v. Driscoll*, 616 F.3d 53, 60 (1st Cir. 2010). The court observed that "there is no denying that the State Board of Education may properly exercise curricular discretion, and the only question on the motion to dismiss is whether the pleadings allow for any doubt about the status of the [challenged] Guide as an element of curriculum." *Id.* at 59. The First Circuit's opinion, which does not reference *Ward* at all, squelches any limited support the district court's decision might otherwise have provided for the AFT plaintiffs' *Ward*-based arguments.

It is likewise no help to the AFT plaintiffs that some of the decisions cited above, including *Decotiis*, involved speech by educators and other school officials made outside of a classroom setting. It makes little sense that an educator's official speech would lack First Amendment protection when it occurs outside of the classroom, but would somehow gain that protection when made while teaching a curriculum established by the government itself. As the Sixth Circuit observed, teachers have "no more free-speech right to dictate the school's curriculum than [they have] to obtain a platform—a teaching position—in the first instance for communicating [their] preferred list of books and teaching methods." *Evans-Marshall v. Bd. of Educ. of Tipp Exempted Vill. Sch. Dist.*, 624 F.3d 332, 340 (6th Cir. 2010). Thus, in the words of the Seventh Circuit, a case involving a teacher's curricular choices is "easier [to resolve] than *Garcetti*" because "teachers hire out their own speech and must provide the service for which employers are willing to pay." *Mayer v. Monroe Cty. Comm. Sch. Corp.*, 474 F.3d 477, 480 (7th Cir. 2007).

All of this is to say that even if one assumes that *Ward* could be read to both address and hold that curricular and pedagogical speech is entitled to some modicum of First Amendment protection, there is ample to reason to believe that the *Ward* panel would have come to a

different conclusion with the benefit of *Garcetti*, *Decotiis*, and the other post-*Garcetti* cases cited above and in the defendants' underlying memorandum. That the panel in *Ward* itself took pains to emphasize the government's broad discretion in regulating classroom speech only bolsters this conclusion. *See, e.g.*, 996 F.2d at 453 ("[T]he classroom is not a public forum, and therefore is subject to reasonable speech regulation."); *id.* ("[S]chools cannot be required to sponsor inappropriate speech."); *id.* ("[S]chools may reasonably limit teachers' speech in that setting."). For this additional reason, the AFT plaintiffs' reliance on *Ward* is misplaced.

## II.   Even if *Ward* applied, the AFT plaintiffs' claims would still fail as a matter of law.

To the extent that *Ward* retains some lingering vitality—and it does not for the reasons previously stated—the new antidiscrimination provisions and guidance from the defendants satisfy the standard *Ward* set out. *Ward* permits speech to be regulated if: "(1) the regulation is reasonably related to a legitimate pedagogical concern; and (2) the school provided the teacher with notice of what conduct was prohibited." 996 F.2d at 452–53. Both of these factors are satisfied here.

Regarding the first factor, *Ward* recognized that courts "have afforded schools great deference in regulating classroom speech" even if such regulations are not viewpoint neutral. *Id.* at 452; *see also Mailloux v. Kiley*, 448 F.2d 1242, 1243 (1st Cir. 1971) ("[F]ree speech does not grant teachers a license to say or write in class whatever they may feel like."). As discussed in the defendants' underlying memorandum, the new antidiscrimination provisions do not prohibit any specific curriculum or education, but instead prohibit teaching that, among other things, certain identified groups are superior or inferior or are not deserving of equal treatment. The provisions likewise do not prohibit, among other things, teaching that groups have held or currently hold such views or the impact that such beliefs have had. Contrary to the plaintiffs'

public claims, the new antidiscrimination provisions simply prohibit speech that supports, encourages, or condones discrimination. This limited prohibition easily satisfies the first prong of the *Ward* analysis.

Regarding the second factor, the question of notice dovetails with the plaintiffs' vagueness claims. The AFT plaintiffs make no attempt to explain why an analysis of their vagueness claim does not similarly control their First Amendment claim to the extent *Ward* applies. In fact, the AFT plaintiffs' notice-based arguments under *Ward* expressly refer to the arguments in the plaintiffs' joint submission with respect to vagueness. *See* ECF Doc. No. 46 at 20. Because the plaintiffs' lack-of-notice claim fails as matter of law for the reasons stated in the defendants' memorandum, ECF Doc. No. 36-1 at 22–32, they cannot save the AFT plaintiffs' First Amendment claim.

### III.    The AFT plaintiffs' remaining arguments are meritless.

The AFT plaintiffs' offer two additional arguments in support of their First Amendment claim, both of which lack merit. First, the AFT plaintiffs contend that their First Amendment claim can proceed based on the purported rights of students to receive information. This argument fails for several reasons. First, none of the AFT plaintiffs are students. While two of the AFT plaintiffs allege they are parents who are concerned about what their children will be taught in light of the new antidiscrimination provisions, ECF Doc. No. 30 ¶¶ 10, 11, their complaint only purports to bring claims on behalf of the plaintiffs themselves, not their children. *See* Fed. R. Civ. P. 17(b)(1) ("Capacity to be sued is determined as follows: (1) for an individual who is not acting in a representative capacity, by the law of the individual's domicile"); *Roberts v. Hillsborough Mills*, 85 N.H. 517, 519 (1932) ("Ordinarily, there are only two recognized ways in which a minor may take binding action in the enforcement or discharge of his legal rights;

namely, through a duly appointed guardian acting within his powers, or through his next friend by proceedings in court."); *see also* Fed. R. Civ. P. 17(c)(2) ("A minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem."); *T.W. by Enk. V. Brophy*, 124 F.3d 89, 895 (7th Cir. 1997) ("To maintain a suit in federal court, a child or mental incompetent must be represented by a competent adult."). Additionally, the complaint does not contain any well-pleaded factual basis for why any particular student's First Amendment rights have been violated by the antidiscrimination provisions, much less facts that might sustain a facial challenge to those provisions. *See Barchock v. CVS Health Corp.*, 886 F.3d 43, 48 (1st Cir. 2018) (setting forth the familiar standard for motions to dismiss). Nor have the AFT plaintiffs explained why they have third-party standing to maintain claims based on injuries to purported non-parties—injuries that are qualitatively different from the injuries the AFT plaintiffs contend they themselves will suffer as a result of the new antidiscrimination provisions. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("The party invoking federal jurisdiction bears the burden of establishing [the] elements [of standing]."); *Doe v. Hopkinton Public Schools*, 19 F.4th 2021, 510 (1st Cir. 2021) (discussing the limitations of the prudential third-party standing doctrine and its interplay with traditional Article III standing). For all of these reasons, the AFT plaintiffs' reliance on purported student speech rights cannot sustain their First Amendment claim.

The AFT plaintiffs alternatively argue that the new antidiscrimination provisions chill their private speech. This argument requires little rebuttal. The new antidiscrimination provisions do not purport to reach private speech, as discussed in the defendants' underlying memorandum. That the AFT plaintiffs premise their First Amendment claim on "curricular discretion" and

focus the vast majority of their complaint on purported confusion over what they can and cannot *teach* only confirms this.

## Conclusion

For all of these reasons, and those stated in the defendants' underlying memorandum of law, the AFT plaintiffs' First Amendment claim should be dismissed.

        Respectfully submitted,

        FRANK EDELBLUT, in his official capacity as Commissioner of the Department of Education,

        JOHN M. FORMELLA, in his official capacity only as Attorney General of the State of New Hampshire,

        AHNI MALACHI, in her official capacity as Executive Director of the Commission for Human Rights,

        CHRISTIAN KIM, in his official capacity as Chair of the Commission for Human Rights,

        *and*

        KENNETH MERRIFIELD, in his official capacity as Commissioner of the Department of Labor

        By their attorney,

        JOHN M. FORMELLA
        ATTORNEY GENERAL

| | |
|---|---|
| Date:  June 24, 2022 | /s/ *Samuel Garland*<br>Samuel R.V. Garland, Bar No. 266273<br>Senior Assistant Attorney General<br>Civil Bureau<br>New Hampshire Dept. of Justice<br>33 Capitol Street<br>Concord, NH 03301<br>(603) 271-3650<br>Samuel.RV.Garland@doj.nh.gov |

**Certificate of Service**

I hereby certify that a copy of the foregoing was served on all counsel of record using the Court's CM/ECF system.

/s/ *Samuel Garland*
Samuel R.V. Garland