# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| LOCAL 8027, AFT-NEW HAMPSHIRE, AFL-CIO, RYAN RICHMAN, JOHN DUBE and JOCEYLN MERRILL, teachers in the New Hampshire Public Schools, and KIMBERLY GREEN ELLIOTT and MEGHAN EVELYN DURDEN, parents or guardians of children in the New Hampshire public schools. <br>    Plaintiffs, <br>      v. <br> FRANK EDELBLUT, in his Official Capacity as Commissioner of the DEPARTMENT OF EDUCATION ("DOE"), CHRISTIAN KIM in his Official Capacity as the Chair of the NEW HAMPSHIRE COMMISSION ON HUMAN RIGHTS, and JOHN FOMELLA in his Official Capacity as ATTORNEY GENERAL of the State of New Hampshire. <br>    Defendants. <br> ------------------------------------------------------------------------ <br> ANDRES MEJIA, <br> CHRISTINA KIM PHILIBOTTE, and <br> NATIONAL EDUCATION ASSOCIATION-NEW HAMPSHIRE, <br>    Plaintiffs, <br>      v. <br> FRANK EDELBLUT, in his official capacity only as the Commissioner of the New Hampshire Department of Education, <br> JOHN M. FORMELLA, in his official capacity only as the Attorney General of the State of New Hampshire, <br> AHNI MALACHI, in her official capacity only as the Executive Director of the New Hampshire Commission for Human Rights, <br> CHRISTIAN KIM, in his official capacity only as the Chair of the New Hampshire Commission for Human Rights, <br> KEN MERRIFIELD, in his official capacity only as the Commissioner of the Department of Labor, <br>    Defendants. | Civil No. 1:21-cv-01077-PB |

### AFT PLAINTIFFS' SUR-REPLY IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT .......................................................................................... 1

ARGUMENT ........................................................................................................................ 3

    1.    Parents Alone Can Sue To Ensure That Their Children's Right to Receive Information Is Adequately Protected ........................................ 3

    2.    Defendants Ignore Controlling Authority Protecting The Free Speech Rights of Teachers ................................................................................ 5

        A.    Defendants Cannot Sidestep Controlling First Circuit First Amendment Precedent And Recent Supreme Court Caselaw Protecting The Free Speech Rights of Teachers ......................................... 5

        B.    Defendants Tellingly Make No Effort to Rebut AFT Plaintiffs' Well-Pled Arguments That The Statute Is Overbroad And Reaches Private Speech ....................................................................................... 8

CONCLUSION .................................................................................................................... 10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Alberti v. Carlo-Izquierdo*,
   548 F. App'x 625 (1st Cir. 2013)................................................................................................5

*Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*,
   457 U.S. 853 (1982)....................................................................................................................4

*Buchanan v. Alexander*,
   919 F.3d 847 (5th Cir. 2019) ......................................................................................................7

*Claremont School Dist. v. Governor*,
   142 N.H. 462 (1997) ...................................................................................................................3

*Contoocook Valley Sch. Dist. v. State*,
   174 N.H. 154 (2021) ...................................................................................................................3

*Decotiis v. Whittemore*,
   635 F.3d 22 (1st Cir. 2011).........................................................................................................5

*Garcetti v. Ceballos*,
   547 U.S. 410 (2006).........................................................................................................5, 6, 7, 8

*Griswold v. Driscoll*,
   616 F.3d 53 (1st Cir 2010)..........................................................................................................6

*Hazelwood Sch. Dist. v. Kuhlmeier*,
   484 U.S. 260 (1988).................................................................................................................5, 6

*Kennedy v. Bremerton Sch. Dist.*,
   142 S. Ct. 2407 (2022).....................................................................................................2, 6, 7, 8

*Liddell v. Special Admin. Bd. of Transitional Sch. Dist. of City of St. Louis*,
   894 F.3d 959 (8th Cir. 2018) ......................................................................................................3

*Londonderry Sch. Dist. SAU No. 12 v. State*,
   154 N.H. 153 (2006) ...................................................................................................................3

*Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*,
   551 U.S. 701 (2007)....................................................................................................................3

*Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will Cnty., Ill.*,
   391 U.S. 563 (1968)....................................................................................................................7

*Rideout v. Gardner*,
    123 F. Supp. 3d 218 (D.N.H. 2015), *aff'd* 838 F.3d 65 (1st Cir. 2016)......................1

*Roberts v. Hillsborough Mills*,
    85 N.H. 517 (1932) ........................................................................................................3

*Smith v. People of the State of California*,
    361 U.S. 147 (1959)........................................................................................................1

*T.W. by Enk v. Brophy*,
    124 F.3d 893 (7th Cir. 1997) and Fed. R. Civ. ...........................................................3

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,
    383 U.S. 503 (1969)........................................................................................................5

*United States v. Nat'l Treasury Emp's Union*,
    513 U.S. 454 (1995)....................................................................................................2, 9

*United States v. Stevens*,
    559 U.S. 460 (2010)........................................................................................................2

*Ward v. Hickey*,
    996 F.2d 448 (1st Cir. 1993) ......................................................................................1, 6

**Statutes**

N. H. Code. Admin. R. Ed 306.46 ....................................................................................2, 3

N.H. Rev. Stat. Ann. 189:11(j) .......................................................................................2, 3, 6

N.H. Rev. Stat. Ann. 189:13(j) ...............................................................................................6

N.H. Rev. Stat. Ann. 193-E:2-a .............................................................................................2

**Other Authorities**

Fed. R. Civ. P. 17(c) ................................................................................................................3

**PRELIMINARY STATEMENT**

AFT Plaintiffs[1] submit this Sur-Reply in further support of their *Opposition to Defendants' Motion to Dismiss Counts II-IV of the AFT Complaint* ("AFT Opp." ECF Doc. # 46).  The entirety of Defendants' briefing rests on the unsupported premise that the State has unfettered discretion to restrict teachers' speech inside and outside the classroom.  Perhaps recognizing that this position is untenable, *Defendants' Reply to the AFT Plaintiffs' Separate Objection to the Defendants' Motion to Dismiss* ("Reply" ECF Doc. # 49), is replete with baseless procedural assertions that AFT Plaintiffs lack standing and that *Ward v. Hickey*, 996 F.2d 448 (1st Cir. 1993), does not control because the issue of teachers' First Amendment rights was not explicitly briefed by the parties in that case.  These unfounded diversions are an attempt to avoid a substantive and meaningful response to AFT Plaintiffs' well-pled allegations that the Statute's exceedingly broad scope infringes on students' right to receive information and teachers' curricular, extra-curricular, and private speech.[2]  Defendants' silence is also deafening with respect to the judicially-proscribed heightened risk to AFT Plaintiffs' First Amendment rights given the evident vagueness of the Statute.  *See* AFT Opp. at 7 (citing *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972), 408 U.S. 104, 109 (1972) ("where a vague statute 'abuts upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit the exercise of (those) freedoms,'" implicating stricter review[3]).

---

[1] Unless otherwise defined, the capitalized terms herein adopt the definitions set forth in the AFT Opp.

[2] Many of the arguments set forth in the AFT Opposition have been entirely ignored by the Defendants.  For example, Defendants offer no response to AFT Plaintiffs' argument that there is no mention in the legislative record of specific unaddressed discrimination in New Hampshire that the Statute sough to remedy.  *See* AFT Opp. at 23. And the Defendants' submissions make no effort to fill that void. That studied silence is telling, and further discovery will prove the point.

[3] *See Smith v. People of the State of California,* 361 U.S. 147, 151 (1959) ("stricter standards of permissible statutory vagueness may be applied to a statute having a *potentially* inhibiting effect on speech."); *see also Rideout v. Gardner,* 123 F. Supp. 3d 218, 234 (D.N.H. 2015) (Barbadaro, J.), *aff'd* 838 F.3d 65 (1st Cir. 2016) (Where a law is either over-inclusive or under-inclusive or where it "covered far more material than necessary to accomplish its goal" it fails that stricter test).

Neither does Defendants' argument that the Statute does not implicate teachers' First Amendment rights survive following the Supreme Court's recent decision in *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407 (2022) ("*Kennedy*"). That decision reaffirmed, contrary to Defendants' suggestion, that teachers have First Amendment rights to express themselves within the school. The Statute's restrictions, which extend beyond instruction and "to all activities carried out by public schools . . . including extra-curricular activities" are plainly unconstitutional. *See, e.g.*, Mejia Compl., Ex. 19 at 5. Defendants' blanket assertion that the Statute "do[es] not purport to reach private speech," while simultaneously declining to address the Statute's incitement of online harassment, bounty hunters, and threats to teachers' personal safety outside the classroom, is emblematic of the "head in the sand" approach to the Statute's overreach. *See* AFT Opp. at 20, Joint Submission Ex. B.[4]

Finally, Defendants entirely ignore their heightened burden to justify the Statute's *ex ante* prohibition on present and future speech under *United States v. Nat'l Treasury Emp's Union*, 513 U.S. 454 (1995) *("NTEU")*. Instead of satisfying this more exacting standard, Defendants seek to deflect from the law's partisan legislative history directly modelled on former President Trump's Executive Order 13950, "Combatting Race and Sex Stereotyping." Meritless procedural hurdles cannot shield this case from judicial review, and, in particular, discovery confirming the Statute's illegality, by, for example, illustrating how it has been used to improperly chill instructional speech and deprive students of the constitutionally guaranteed education here legally mandated and statutorily delineated. *See, e.g.*, N.H. Rev. Stat. Ann. ("RSA") 189:11(j), 193-E:2-a; N. H. Code.

---

[4] As for the State's repeated suggestion "not to worry" since it will allegedly enforce the Statute responsibly and fairly, Chief Justice Roberts aptly observed, in writing for the Court in *United States v. Stevens*, "the First Amendment protects against the Government; it does not leave us at the mercy of *noblesse oblige*. We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly." 559 U.S. 460, 480 (2010).

2

Admin. R. Ed 306.46; *see also Londonderry Sch. Dist. SAU No. 12 v. State*, 154 N.H. 153, 156-158 (2006).[5] Defendants' Motion should be denied and discovery permitted to proceed, followed by summary judgment.

## ARGUMENT

1. **Parents Alone Can Sue To Ensure That Their Children's Right to Receive Information Is Adequately Protected**

In a transparent attempt to side-step AFT Plaintiffs' substantive arguments that the Statute deprives their children of the right to receive information, Defendants raise meritless procedural arguments that parents lack standing to argue that their children have been deprived of their First Amendment right to receive information. *See* Reply at 8-9. Countless federal courts have held that parents can sue to vindicate the rights of their school children, including their right to receive information, without expressly indicating that the case is brought on behalf of their children. *See Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 718 (2007) (parents have standing to seek relief for their elementary and middle school children who may be "denied admission to the high schools of their choice when they apply for those schools in the future"); *Liddell v. Special Admin. Bd. of Transitional Sch. Dist. of City of St. Louis*, 894 F.3d 959, 965–66 (8th Cir. 2018) ("Parents have standing to sue when practices and policies of a school threaten their rights and interests and those of their children."). The suggestion that this case must be brought directly by students or parents explicitly *on behalf of their children* is therefore wholly unfounded. Indeed, *Roberts v. Hillsborough Mills*, 85 N.H. 517, 519 (1932), *T.W. by Enk v. Brophy*, 124 F.3d 893 (7th Cir. 1997) and Fed. R. Civ. P. 17(c), cited by the Defendants, stand for

---

[5] *See Claremont School Dist. v. Governor*, 142 N.H. 462, 469, 472-474 (1997); *see also Contoocook Valley Sch. Dist. v. State*, 174 N.H. 154 (2021). As *Contoocook* and *Londonderry* make clear, RSA 189:11(j) was enacted as (and remains) a constitutional and judicial imperative for compliance with the adjudicated challenges of the *Claremont* trilogy and its progeny.

3

the unremarkable proposition that a minor child cannot bring suit in court without the assistance of a competent adult. *See* Reply at 8-9. None of Defendants' cases indicate that a parent does not have standing to sue to protect the rights of their school-age children. *See* Reply at 9. Thus, Defendants' request for a more arduous pleading standard should be rejected.[6]

Moreover, Defendants' assertion that "their complaint only purports to bring claims on behalf of the plaintiffs themselves, not their children," is without merit. *See* Reply at 8. Defendants ignore the well-pled allegations showing that the Statute deprives New Hampshire students of access to diverse texts and discussions based on partisan ideology lacking any legitimate pedagogical purpose. *See* AFT Opp. at 18. Specifically, the Complaint alleges that:

- The Statute deprives New Hampshire students of their constitutional right to an adequate education (AFT Compl. at ¶ 2);
- New Hampshire parents, too, are entitled to send their children to school, expecting a full and robust exchange of ideas in the classroom uncorrupted by censorship and extremist partisanship (AFT Compl. at ¶ 4);
- Plaintiff Elliott believes the Statute will prevent her son from receiving a full and robust education. Since the Statute was passed Ms. Elliott has observed a noticeable difference in the breadth of education her son receives (AFT Compl. at ¶ 10);
- Plaintiff Durden believes the Statute will prevent her daughter from receiving a full and robust education (AFT Compl. at ¶ 11);
- Every day that debate is stifled, the students of New Hampshire suffer, and are put at a competitive disadvantage in a complex, multi-cultural world (AFT Compl. at ¶ 59).

Defendants' failure to address the direct applicability of *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 866-68 (1982) to the instant facts is also telling. *See* AFT Opp. at 15-16. *Pico* and its progeny plainly preclude Defendants' actions to enforce a Statute that quite deliberately and based on partisan beliefs restricts students' access to information. *See* AFT Opp. at 16-19. Notably, Defendants do not refute the pall of orthodoxy prompting the

---

[6] To the extent the Court agrees with Defendants that AFT Plaintiffs lack standing to assert a right to receive information claim for their children, AFT Plaintiffs should be granted leave to amend their complaint.

4

Statute's passage based on President Trump's unsuccessful Executive Order, or the absence of any specific discrimination in New Hampshire necessitating the Statute. *See* AFT Opp. at 19, 23. As indicated, "[a]t the very least, additional discovery is needed to ascertain whether HB2 is narrowly partisan and motivated by political orthodoxy." AFT Opp. at 19.

2. **Defendants Ignore Controlling Authority Protecting The Free Speech Rights of Teachers**

<u>Defendants Cannot Sidestep Controlling First Circuit First Amendment Precedent And Recent Supreme Court Caselaw Protecting The Free Speech Rights of Teachers</u>

That "several federal courts of appeals have applied *Garcetti's* reasoning to pedagogical and curricular speech," *see* Reply at 4, does not change the fact that the First Circuit has not done so. *See* AFT Opp. at 8-9 ("[T]he *Garcetti* limitation upon First Amendment protections simply does not apply in cases such as this" where, as Justice Kennedy specifically stated for the *Garcetti* majority, the Court's analysis and holding do not apply to "scholarship or teaching") (*Garcetti v. Ceballos*, 547 U.S. 410, 425 (2006)); *see id.* at 10 ("Tellingly absent from Defendants' recitation of *Garcetti* is any First Circuit case involving the application of *Garcetti* to teachers in the classroom"). Defendants do not address AFT Plaintiffs' Opposition discussing cases from the Fourth, Sixth, and Ninth Circuits declining to extend *Garcetti* in schools. *See* AFT Opp. at 10. Neither is Defendants' reliance on *Alberti v. Carlo-Izquierdo*, 548 F. App'x 625 (1st Cir. 2013), involving a family nurse practitioner working at a university applicable here. Like *Decotiis v. Whittemore*, 635 F.3d 22 (1st Cir. 2011), cited by Defendants in their moving papers and Reply, *Alberti* is not applicable here because the speech at issue was made by a nurse practitioner, not a teacher in the classroom. *See* AFT Opp. at 11. As we have made clear, *Tinker v. Des Moines Indep. Cmty. Sch. Dist.,* 383 U.S. 503 (1969) and *Hazelwood Sch. Dist. v. Kuhlmeier,* 484 U.S.

5

260 (1988) make schools doctrinally distinct from other government employees and New Hampshire has effectively excluded teachers from *Garcetti's* reach.[7]

The First Circuit's *Ward* analysis, as Defendants concede, operates from "the assumption that a teacher's classroom speech is entitled to some First Amendment protection" under *Tinker*. *See* Reply at 2. The need for briefing in *Ward* was obviated by the longstanding principle that teachers retain First Amendment rights. Defendants have not offered a justified reason for ignoring the application of *Ward* here.[8] Thus, the Statute can only survive constitutional muster where the "regulation is reasonably related to a legitimate pedagogical concern and the school provided the teacher with notice of what conduct was prohibited." *Ward*, 996 F.2d at 452 (internal quotation marks and citations omitted). As illustrated, Defendants cannot satisfy either hurdle. *See* AFT Opp. at 11-13; *supra*, note 5.

Just last month, the Supreme Court reaffirmed *Tinker* by stating that: "[O]ur precedents remind us that the First Amendment's protections extend to 'teachers and students,' neither of whom 'shed their constitutional rights to freedom of speech or expression at the schoolhouse gate.'" *Kennedy*, 142 S. Ct. at 2423 (quoting *Tinker*, 393 U.S. at 506). In *Kennedy*, the Court held that Bremerton School District violated a football coach's First Amendment rights when they fired him after he prayed with students on the football field. With respect to the application of *Garcetti* to teacher speech, the Court specifically stated that both parties "appear to accept, at least for argument's sake, that Mr. Kennedy's speech does not raise questions of academic freedom that

---

[7] The 4-3 majority in *Garcetti*, 547 U.S. 410 rested its public employee speech restriction on the premise that such employees have implicitly agreed to waive that fundamental right to speech in return for public employment and its intentional speech restriction. *See Garcetti, supra*, 418-419. Here, the employer has by statute (RSA §189:11(j)) negated any such implicit waiver by *mandating* that the employee teach that which is here sought to be throttled; indeed, the employee faces dismissal for failure to do so (RSA §189:13(j)). Thus, by statute and unlike *Garcetti,* New Hampshire commands, it does not proscribe, teacher speech in the relevant areas.

[8] *Griswold v. Driscoll*, 616 F.3d 53 (1st Cir 2010), which Defendants misconstrue, is addressed at n.16 of AFT Opp.

6

may or may not involve 'additional' First Amendment 'interests' beyond those captured" by the *Garcetti-Pickering* framework. *Kennedy*, 142 S. Ct. at 2424. Thus, *Garcetti*, and certainly the *Garcetti* precedent alone, still does not control on the pertinent question here—when the First Amendment protects speech made by teachers in the classroom. *See* AFT Opp. at 8-9; *see also Buchanan v. Alexander*, 919 F.3d 847, 852 (5th Cir. 2019) (finding that the "Supreme Court has established that academic freedom is a special concern of the First Amendment, which does not tolerate laws that cast a pall of orthodoxy over the classroom" and subsequently applying the *Pickering* analysis) (internal quotation marks and citations omitted).[9]

To the extent this Court finds that *Garcetti* (or some combination of *Garcetti* and *Pickering*) apply, the *Kennedy* decision strikes directly at the cases, cited by Defendants in their Motion, holding that *all* speech of primary and secondary school teachers is without First Amendment protection. *See* Memorandum of Law in Support of to Dismiss (ECF Doc. # 36) at 18 (citing *Mayer v. Monroe Cnty. Cmty. Sch. Corp.*, 474 F.3d 477 (7th Cir. 2007). The *Kennedy* Court flatly rejected the assertion that the prayer was undertaken as part of the coach's official duties, holding that the Ninth Circuit erred by "treating everything teachers and coaches say in the workplace as government speech subject to government control." *See Kennedy*, 142 S. Ct. at 2425.

The Supreme Court's expansion of free speech rights for public employees in schools applies with equal force here. Like a coach praying at a football game, the Statute here sweeps broadly beyond the four walls of the classroom to extracurricular activities. While Defendants claim that the Statute applies only to curricular speech, the guidance documents make clear that the Statute not only covers "instruction" but also "advocat[ing]," and not only in the classroom setting but also at "all school activities." *See* Mejia Compl., Ex. 19 at 5. Accordingly, the Supreme

---

[9] *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will Cnty., Ill.*, 391 U.S. 563 (1968). *See also*, fn. 7, *supra*.

Court's finding that a coach's three prayers on the football field were not speech within the scope of his official duties under *Garcetti* necessarily raises the following questions when considering how the instant Statute is being enforced:

- What if a teacher wants to organize a drive for displaced Ukrainians after school and "advocates" against the Russian government and its oppression?
- What if instead of kneeling to pray a coach took a knee during the national anthem because of his or her views about existing structural racism in this country?
- What if a teacher wears a "Buffalo Strong" t-shirt to a soccer game in support of the individuals murdered in Buffalo at the hands of a white supremacist?

*Kennedy* suggests the foregoing would be private citizen speech separate and apart from a teacher's official duties; yet, the Statute would preclude such speech. *See Kennedy*, 142 S. Ct. at 2425 ("Nor is it dispositive that Mr. Kennedy's prayers took place 'within the office' environment—here, on the field of play."). Moreover, *Kennedy's* call for an inquiry undertaken "practically, rather than with a blinkered focus on the terms of some formal and capacious written job description," confirms the need for further discovery to assess whether the Statute, in practice, prohibits private citizen speech bearing on matters of public concern. *See Kennedy*, 142 S. Ct. at 2424; *see also* AFT Opp. at 14-15. "To proceed otherwise would be to allow [Defendants] to use 'excessively broad job descriptions' to subvert the Constitution's protections." *Kennedy*, 142 S. Ct. at 2424.

### Defendants Tellingly Make No Effort to Rebut AFT Plaintiffs' Well-Pled Arguments That The Statute Is Overbroad And Reaches Private Speech

Defendants' argument that the Statute "do[es] not purport to reach private speech" based solely on their own conjecture is contrary to the facts of this case. *See* Reply at 9. Defendants fail to rebut the AFT's Complaint and Opposition demonstrating that the Statute implicates private speech:

8

- AFT Plaintiffs have been the subject of online harassment, obscenities and vicious attacks (AFT Compl. at ¶¶ 3, 8);
- The constant specter of bounty hunters (AFT Compl. at 4);
- Fear for personal safety, requiring the installation of personal security and safety equipment in his home (AFT Compl. at ¶ 8);
- Private right of action turns citizen on citizen and encourages surveillance and vigilantism (AFT Compl. at ¶ 57).

Indeed, absent discovery, Defendants' self-serving conjecture is belied by documents already before this Court. *See*, *e.g.*, AFT Opp. at 20, Joint Submission Ex. B.

Finally, Defendants entirely overlook AFT Plaintiffs' reliance on *NTEU* governing prior restraints, like the Statute, limiting future speech. *See* AFT Opp. at 22-23. Thus, Defendants fail to show how the Statute addresses "real, not merely conjectural" harms and that the "regulation will in fact alleviate these harms in a direct and material way." *See id.* (quoting *NTEU*, 513 U.S. at 475). Nothing in Defendants' Reply negates the AFT Plaintiffs' significant showing that the Statute's passage was prompted by efforts to engage in "wholesale silencing of uncomfortable ideas based on narrowly partisan interests." *Id.* at 23. Defendants also cannot and do not rebut the Statute's particularly suspect overbreadth as to all age groups and multitude topics inside and outside the classroom without showing any legislative efforts to tailor a specific ban to students' educational needs. *See id.* at 23-24. No showing is made that the Statute is narrowly or even reasonably tailored to a legitimate pedagogical interest.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion should be denied, and this case should proceed to discovery to assess the Statute's continuing assault on teachers' free speech rights.

Dated: July 22, 2022

By: */s/ Peter J. Perroni*
NOLAN PERRONI, PC
NH Bar No. 16250
73 Princeton Street
North Chelmsford, MA 01863
978-454-3800
peter@nolanperroni.com

STROOCK & STROOCK & LAVAN LLP
Charles G. Moerdler, Esq.*
David J. Kahne, Esq.*
Elizabeth Milburn, Esq.*
180 Maiden Lane
New York, New York 10038
(212) 806-5400
cmoerdler@stroock.com

DAVID J. STROM, Esq.,*
General Counsel,
American Federation of Teachers
555 New Jersey Avenue, Northwest
Washington, D.C. 20001-2079
303-393-7472
dstrom@aft.org

MARK RICHARD *
Phillips, Richard, Rind, P.A.
936 Sunset Drive
Suite 283
Miami, Fl 3317
305-412-8332
mrichard@phillipsrichard.com

SELENDY & GAY PLLC
Faith Gay, Esq.*
1290 6th Avenue
New York, NY 10104
(212) 390-9000
fgay@selendygay.com

*Co-Counsel for Local 8027, AFT-New
Hampshire, AFL-CIO, Ryan Richman,
John Dube and Jocelyn Merrill,
teachers in the New Hampshire Public Schools,
and Kimberly Green Elliot and Meghan Evelyn
Durden parents or guardians of children in the
New Hampshire public schools,*