## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| LOCAL 8027, AFT-NEW HAMPSHIRE, AFL-CIO, RYAN RICHMAN, JOHN DUBE and JOCEYLN MERRILL, teachers in the New Hampshire Public Schools, and KIMBERLY GREEN ELLIOTT and MEGHAN EVELYN DURDEN, parents or guardians of children in the New Hampshire public schools. | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) | |
| FRANK EDELBLUT, in his Official Capacity as Commissioner of the DEPARTMENT OF EDUCATION ("DOE"), CHRISTIAN KIM in his Official Capacity as the Chair of the NEW HAMPSHIRE COMMISSION ON HUMAN RIGHTS, and JOHN FOMELLA in his Official Capacity as ATTORNEY GENERAL of the State of New Hampshire. | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |
| ------------------------------------------------------------------- | ) | Civil No. 1:21-cv-01077-PB |
| ANDRES MEJIA, CHRISTINA KIM PHILIBOTTE, and NATIONAL EDUCATION ASSOCIATION-NEW HAMPSHIRE, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) | |
| FRANK EDELBLUT, in his official capacity only as the Commissioner of the New Hampshire Department of Education, | ) ) ) | |
| JOHN M. FORMELLA, in his official capacity only as the Attorney General of the State of New Hampshire, | ) ) | |
| AHNI MALACHI, in her official capacity only as the Executive Director of the New Hampshire Commission for Human Rights, | ) ) ) | |
| CHRISTIAN KIM, in his official capacity only as the Chair of the New Hampshire Commission for Human Rights, | ) ) ) ) | |
| KEN MERRIFIELD, in his official capacity only as the Commissioner of the Department of Labor, | ) ) | |
| Defendants. | ) | |

## PLAINTIFFS' JOINT SUR-REPLY IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' VAGUENESS CLAIMS

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES .................................................................................................. ii

A.   The Defendants' Reply is Simply Wrong in its Mischaracterization of the Plaintiffs' Claims and Their Statement of Current Law ......................................... 1

B.   The Defendants' Assertion That Their Manufactured Enforcement Mechanism Fills Any "Vagueness Void" Lacks Merit ............................................................. 3

CONCLUSION ................................................................................................................... 7

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*City of Chicago v. Morales*,
   527 U.S. 41(1999).................................................................................................2, 5

*F.C.C. v. Fox Television Stations, Inc.*,
   567 U.S. 239 (2012)...................................................................................................6

*Grayned v. City of Rockford*,
   408 U.S. 104 (1972)................................................................................................2, 4

*Johnson v. United States*,
   576 U.S. 591 (2015)....................................................................................................1

*Kolender v. Lawson*,
   461 U.S. 352 (1983)..........................................................................................2, 3, 4, 5

*Santa Cruz Lesbian and Gay Cmty.Ctr. v. Trump*,
   508 F. Supp. 3d 521 (N.D. Cal. 2020) ....................................................................3

*Smith v. People of the State of California*,
   361 U.S. 147 (1959)....................................................................................................2

*Ward v. Rock Against Racism*,
   491 U.S. 781 (1989)....................................................................................................5

**Statutes**

N.H. Rev. Stat. Ann. 193:40 ...................................................................................3, 4

N.H. Rev. Stat. Ann. 354-A:21 ...............................................................................2, 4

N.H. Rev. Stat. Ann. 354-A:34 ..................................................................................4

Plaintiffs submit this Sur-Reply in further support of their Joint Opposition to Defendants' Motion to Dismiss ("Joint Opp.," ECF Doc. #45).

**A.     The Defendants' Reply is Simply Wrong in its Mischaracterization of the Plaintiffs' <u>Claims and Their Statement of Current Law</u>**

The opening paragraph of the *Defendants' Reply to the Plaintiffs' Joint Objection to the Defendants' Motion to Dismiss* ( "Reply," ECF Doc. #48), illustrates the untenable arguments that follow.  There, the Defendants reiterate the judicially rejected notion that, to sustain a void-for-vagueness challenge, the "plaintiffs must 'demonstrate that the law is impermissibly vague in *all* of its applications.'"  Reply at 1 (quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497 (1982)).  As previously demonstrated, that argument was *squarely rejected* by Justice Scalia writing for the Court in *Johnson v. United States*, 576 U.S. 591, 602-03 (2015).  *See* Joint Opp. at 39-40.  Yet, the Defendants still offer that rejected notion as the predicate for their motion.  *See* Reply at 1.

Similarly, Defendants' Reply opens with the inaccurate assertion that the Plaintiffs' Complaints are limited to "facial [constitutional] challenges."  Reply at 1.  Again, that is not correct.  The challenges here are both facial and as applied.  *See, e.g*., Mejia Compl. at ¶¶ 13, 156; *see also* Joint Opp. at 31 n.17, 36 ("Plaintiffs have also challenged the vagueness of the Statute as applied to educators in the context of how educators will uniquely be subject to enforcement under the Act").  As previously amplified, the Defendants have failed to (i) answer specific questions on how to the enforce the Statute or (ii) meaningfully engage the Statute's unique enforcement regime as to educators.  *See* Mejia Compl. at ¶¶ 110-111, 120-122.[1]

Even on this truncated record, however, the vice of the Statute's application is manifest.  One *undisputed* illustration makes the point.  AFT Plaintiff Joselyn Miller and three other teachers

---

[1] Abbreviations are the same as in the Plaintiffs' Joint Opposition.

were, just a few months ago, subjected to a complaint, commenced at the School District level, simply for signing, *not in a school or classroom,* a petition protesting the Statute.  *See* Joint Opp. at 39-40.  There is nothing in the Statute barring that right, nor could such a bar be sustained.  The actions taken on those (and like) complaints remain a mystery.  *See* AFT Compl. at ¶ 8.  How widespread or inapt were the baseless musings of investigators and others is not yet revealed.  Indeed, the Human Rights Commission has refused to release to the public and educators the details (even in redacted form) of any complaints in which the Commission has concluded that there was no violation even though such information would help guide educators and minimize vagueness and unwarranted reputational injury.  *See* Joint Opp. at 8.[2]

In like fashion, the Reply erroneously maintains that the Plaintiffs urge that "this Court may not consider the manner in which defendants and the agencies tasked with enforcing [the Statute] . . . have construed the provisions."  Reply at 1.  Nothing could be further from the truth.  *See, e.g.*, *City of Chicago v. Morales*, 527 U.S. 41(1999); *Kolender v. Lawson*, 461 U.S. 352 (1983).  As previously noted, discovery is appropriate and vital to determine on a complete record "the mechanisms for the Statute's interpretation and political enforcement" and how the Defendants *actually* enforce the Statute.  *See* Joint Opp. at 3, 8, 31 n.17, 33 n.19, 35-36, 38.[3]

---

[2] New Hampshire law allows for the disclosure of this information.  *See* N.H. Rev. Stat. Ann. ("RSA") 354-A:21, II(a) ("The members of the commission and its staff shall not disclose what has occurred in the course of such endeavors, provided that *the commission may publish the facts in the case of any complaint which has been dismissed, and the terms of conciliation when the complaint has been so disposed of. . . .*") (emphasis added).

[3] The Defendants go to considerable lengths to explain how the Court should conduct its "vagueness inquiry."  Reply at 2.  Ignored, however, is the standard to be applied and the ample Supreme Court precedent directing that where, as here, the vagueness challenge "'abut(s) upon sensitive First Amendment freedoms,' it 'operates to inhibit the exercise of (those) freedoms,'" *see Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972), thereby implicating "stricter standards of permissible statutory vagueness." *Smith v. People of the State of California*, 361 U.S. 147, 151 (1959).  As also set forth in the AFT Sur-Reply, the State's arguments fail to demonstrate that the Statute meets those "stricter standards of permissible statutory vagueness" given the First Amendment concerns.

Finally, it merits emphasis that the Reply omits any response to or mention of the directly relevant decision in *Santa Cruz Lesbian and Gay Cmty. Ctr. v. Trump*, 508 F. Supp. 3d 521 (N.D. Cal. 2020), which preliminarily enjoined former President Trump's "banned concepts" Executive Order (*See* Joint Opp. at 3-7, 11-12, 15-16, 24, 27).  Four of same banned concepts that were enjoined in *Santa Cruz* are reiterated in the challenged Statute.

**B.**     **The Defendants' Assertion That Their Manufactured Enforcement Mechanism Fills Any "Vagueness Void" Lacks Merit**

The Defendants' Reply argues that any vagueness in the Statute may be overlooked by the Court (or is "beside the point") because the "defendants and enforcing agencies have, in fact, construed" the Statute to create an "order of operations" whereby "a complaint [is required] to first be filed in the Commission for Human Rights or state superior court."  Reply at 2.  This construct invoked as the Defendants' principal defense is negated by (i) the express text of the Statute, (ii) the explicit Supreme Court "requirement that a *legislature* establish [the] minimal guidelines to govern law enforcement," *Kolender*, 461 U.S. at 358 (quoting *Smith v. Goguen*, 415 U.S. 566, 574 (1974)), and (iii) by the truncated record thus far, which demonstrates how the law is actually being enforced by multiple New Hampshire agencies.

First, it is not surprising that the authority cited for the Defendants' supposed "order of operations" is the State's own opening brief in this action because there is no such defined process in the Statute.  In fact, the notion that a disciplinary claim against an educator can be brought only after a final determination of discrimination by the Commission is both contradicted by the Statute's plain terms and self-servingly manufactured by the Defendants to save the Statute.  Here, the Statute mandates that a "[v]iolation of this section by an educator shall be considered a violation of the educator code of conduct that justifies disciplinary sanction by the state board of education."  *See* RSA 193:40, IV.  This provision is critical, as its incorporation of the Educator

3

Code of Conduct bootstraps administrative regulations that authorize the Department of Education ("DOE") to independently investigate and prosecute educators for violations of the Code (and, thus, the Statute). *See* Joint Opp. at 31-32, n.18. The FAQs issued by the DOE, Commission for Human Rights and the Department of Justice similarly provide that educators can be disciplined for violating the Statute.[4] Private litigation is also an expressly authorized alternative (RSA 193:40, III), and the Statute further provides for independent Department of Labor and Department of Justice enforcement. *See* RSA 354-A:34 (incorporating the Whistleblowers' Protection Act, which is enforced by the Department of Labor), RSA 354-A:21 (providing for independent Department of Justice enforcement). Thus, the unsupported assertion that all complaints under the Statute are first filed through the Commission of Human Rights or state superior court is simply wrong.

Second, aside from being inconsistent with the Statute, the Defendants' manufactured "order of operations" cannot cure the Statute's vagueness, as it is legally improper. The Supreme Court has made clear that a statute is unconstitutionally vague absent adequate *legislative* guardrails to enforcement (not just in the processing of complaints). "If arbitrary and discriminatory enforcement is to be prevented, *laws* must provide *explicit standards* for those who apply them." *See Grayned*, 408 U.S. at 108-09 (emphasis added); *see also Kolender*, 461 U.S. at 358. Here, there simply were no *legislatively* crafted minimal guidelines for enforcement of the proscribed conduct such as would harness those charged with that task, and it is inappropriate for

---

[4] The enforcing agencies' "FAQs" likewise indicate that there is not one "order of operations" for enforcement. In answering the question "[w]hat remedies are available to students or parents who believe that a school has violated the Prohibition on Teaching Discrimination," the FAQ answers that a student or parent "may file a complaint with the New Hampshire Commission for Human Rights; a complaint with the New Hampshire Office of the Attorney General; or may file a civil claim in superior court to seek damages or declaratory or injunctive relief." *See* Mejia Compl., Ex. 19 (Question 11 addressing k-12 educational programs).

the Defendants to manufacture them out of whole cloth.[5]  Indeed, as Justice Stevens dispositively made clear in *Morales,* 527 U.S. at 60:

> This ordinance is therefore vague "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." (*quoting Coates v. Cincinnati*, 402 U.S. 611, 614 (1971)).  The broad sweep of the ordinance also violates "*the requirement that a legislature establish minimal guidelines to govern law enforcement.*" (*quoting Kolender*, 461 U.S. at 358 (emphasis added)).

*Ward v. Rock Against Racism,* 491 U.S. 781 (1989), relied upon by the Defendants (Reply at 4-5), illustrates the point. Where the *legislative body* enacting regulations provides explicit, even if flexible, guidelines for enforcement, the pitfalls noted in *Kolender* and like Supreme Court rulings may be diminished, as they were in *Ward.*  However, there is no claim at all that the *legislature* made any effort here to provide the requisite explicit guidelines for enforcement.

Moreover, far from "clarifying" the text, as set forth more fully in the Plaintiffs' initial brief (Joint Opp. at 23-29), the supposed "clarifications" only compound the confusion as to what is prohibited by the Statute.  Notably, the Attorney General publicly acknowledged in its September 7, 2021 Opinion that "[s]ome have voiced concerns that these new statutes are confusing and that public employers and schools will struggle to understand the scope of the new prohibitions."  *See* Mejia Compl., Ex. 20 (citing *Governor's Advisory Council on Diversity and Inclusion,* Letter to Gov. re HB 544, June 2, 2021).  Fair notice is an essential pre-requisite of

---

[5] There likewise is no merit to the Defendants' notion that the absence of a formal or even implicit invitation to "the public or other aggrieved persons to file complaints with the Department or Board of Education" validates the claimed enforcement mechanism or accommodates some sort of presumption (Reply at 3) of tenable *Kolender* guardrails. First, the DOE website explicitly called for such complaints, even providing the Commission for Human Rights form therefor.  *See* Mejia Compl., Ex. 23.  The DOE even initially included (and later apparently removed) a DOE employee as a person to field complaints under the Statute when it published its complaint website on November 10, 2021.  *See* Mejia Compl. at ¶ 139-40.  Second, it is *legislatively mandated* minimal guidelines governing enforcement—substance, not process—that *Kolender* and its prodigy mandate in determining vagueness and their absence says it all.  Finally, it speaks volumes that the Defendants' Reply must go far afield—to the statutory construction (not vagueness analysis) of an alien detention statute—to find some semblance of support.

statutes regulating such matters as conduct.  *F.C.C. v. Fox Television Stations, Inc.,* 567 U.S. 239, 253 (2012); *see also* Joint Opp. at 23-29.

Lastly, in practice, the Defendants' "order of operations" theory finds no support in the record developed to date.  The DOE and private citizens have both enmeshed themselves in the investigation and enforcement of the Statute.  Despite the Defendants' manufactured orderly process, the DOE has apparently elected to conduct its own investigations under the Statute.  *See* Joint Opp. at 8, n.5.  An *undisputed* illustration makes the point.  Defendant Education Commissioner Edelblut recently conducted a widely publicized press event, in the course of which he released some 72 pages of DOE assembled documents concerning complaints received by his agency.  *See* Joint Opp., Ex. B.  Included was a single page of a DOE investigation report expressly prepared for Commissioner Edelblut concerning the propriety of a course curriculum specifically stated to have been reviewed under the Statute.  *See id.*  Included as well were a far ranging, redacted and incomplete collection of documents presenting questions, statements, coursework and seeming complaints concerning racial, sexual and other matters upon which commentary was apparently provided in materials that DOE investigators apparently had for some reason scrutinized.  The circumstances surrounding how and with what accompanying materials these materials came into the DOE investigator's possession is unclear and warrants discovery.[6]

---

[6] Still further evidence exists undermining the Defendants' so-called "order of operations" requiring the Human Rights Commission to first process complaints.  "No Left Turn" employed one alternative where such complaints went directly to the DOE.  *See* Joint Opp. at 36-37.  The "Bounty Hunters" appears to be another enforcement mechanism. AFT Compl. at ¶ 45; Mejia Compl. at ¶ 144.

## **CONCLUSION**

For the foregoing reasons, the Defendants' Motion should be denied and the Plaintiffs should be permitted to conduct discovery.  This Court will then have a sufficiently complete record to resolve on summary judgment the issues presented—ones critical to a sound, basic education and the future of New Hampshire's children.

Dated: July 22, 2022

By:   */s/ Peter J. Perroni*
NOLAN PERRONI, PC
NH Bar No. 16250
73 Princeton Street
North Chelmsford, MA  01863
978-454-3800
peter@nolanperroni.com

STROOCK & STROOCK & LAVAN LLP
Charles G. Moerdler, Esq.*
David J. Kahne, Esq.*
Elizabeth Milburn, Esq.*
180 Maiden Lane
New York, New York 10038
(212) 806-5400
cmoerdler@stroock.com

DAVID J. STROM, Esq.,*
General Counsel,
American Federation of Teachers
555 New Jersey Avenue, Northwest
Washington, D.C.  20001-2079
303-393-7472
dstrom@aft.org

MARK RICHARD *
Phillips, Richard, Rind, P.A.
936 Sunset Drive
Suite 283
Miami, Fl 3317
305-412-8332
mrichard@phillipsrichard.com

SELENDY & GAY PLLC
Faith Gay, Esq.*
1290 6th Avenue
New York, NY 10104
(212) 390-9000
fgay@selendygay.com

*Co-Counsel for Local 8027, AFT-New
Hampshire, AFL-CIO, Ryan Richman,
John Dube and Jocelyn Merrill,
teachers in the New Hampshire Public Schools,
and Kimberly Green Elliot and Meghan Evelyn
Durden parents or guardians of children in the
New Hampshire public schools,*

ANDRES MEJIA AND CHRISTINA KIM PHILIBOTTE,

By and through their attorneys,

| | |
|---|---|
| */s/ Gilles R. Bissonnette* | */s/ Morgan C. Nighan* |
| Gilles R. Bissonnette (N.H. Bar. No. 265393) | Morgan C. Nighan (N.H. Bar. No. 21196) |
| Henry R. Klementowicz (N.H. Bar No. 21177) | NIXON PEABODY LLP |
| SangYeob Kim (N.H. Bar No. 266657) | Exchange Place |
| AMERICAN CIVIL LIBERTIES UNION OF NEW HAMPSHIRE | 53 State Street |
| 18 Low Avenue, Concord, NH  03301 | Boston, MA  02109-2835 |
| Tel.  603.224.5591 | Tel.: 617.345.1031 |
| gilles@aclu-nh.org | mnighan@nixonpeabody.com |

*/s/ Chris Erchull*
Chris Erchull (N.H. Bar No. 266733)
GLBTQ LEGAL ADVOCATES & DEFENDERS
18 Tremont, Suite 950
Boston, MA 02108
Tel.: 617.426.1350
cerchull@glad.org

Pamela E. Phelan (N.H. Bar No. 10089)
Sarah J. Jancarik (N.H. Bar No. 272310)
DISABILITY RIGHTS CENTER-NEW HAMPSHIRE
64 N Main St, Ste 2
Concord, NH 03301-4913
Tel.: 603.228.0432
Sarahj@drcnh.org

William E. Christie (N.H. Bar No. 11255)
S. Amy Spencer (N.H. Bar No. 266617)
SHAHEEN & GORDON, P.A.
107 Storrs Street
P.O. Box 2703
Concord, NH  03302
Tel.: 603.225.7262
wchristie@shaheengordon.com
saspencer@shaheengordon.com

*Co-counsel for Plaintiffs Andres Mejia and Christina Kim Philibotte*

*/s/ David A. Vicinanzo*
David A. Vicinanzo (N.H. Bar No. 9403)
NIXON PEABODY LLP
900 Elm Street, 14th Floor
Manchester, NH 03101
Tel.: 603.628.4000
dvicinanzo@nixonpeabody.com

Travis Hill*
NIXON PEABODY LLP
55 West 46th Street
New York, NY 10036-4120
Tel.: 212.940.3131
thill@nixonpeabody.com

Emerson Sykes*
Speech, Privacy, and Technology Project
Leah Watson*
Sarah Hinger*
Racial Justice Program
AMERICAN CIVIL LIBERTIES UNION
   FOUNDATION
125 Broad Street, 18th Floor
New York, NY  10004
Tel.: 212.549.2500
esykes@aclu.org
lwatson@aclu.org
shinger@aclu.org

NATIONAL EDUCATION ASSOCIATION-NEW HAMPSHIRE,

By and through its attorneys,

*/s/ Jason Walta*
Alice O'Brien*
Jason Walta*
NATIONAL EDUCATION ASSOCIATION
1201 Sixteenth St. NW
Washington, DC 20036
Tel: 202.822.7035
aobrien@nea.org
jwalta@nea.org

Esther K. Dickinson (N.H. Bar No. 20764)

Lauren Snow Chadwick (N.H. Bar No. 20288)
Staff Attorneys
NATIONAL EDUCATION ASSOCIATION-
    NEW HAMPSHIRE
9 South Spring Street
Concord, NH 03301-2425
Tel.: 603.224.7751
edickinson@nhnea.org
lchadwick@nhnea.org

Nathan R. Fennessy (N.H. Bar No. 264672)
Rue K. Toland (N.H. Bar No. 269021)
PRETI FLAHERTY BELIVEAU & PACHIOS LLP
57 North Main Street
Concord, NH 03301
Tel.: 603.410.1500
nfennessy@preti.com
rtoland@preti.com


*Admitted *pro hac vice*.


*Co-Counsel for National Education Association-New Hampshire*