*NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO JUNE 20, 2023

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
* * * * * * * * * * * * * * * * * * *
                                    *
LOCAL 8027 AFT-N.H.,                *
AFL-CIO, ET AL                      *
                                    *
               Plaintiffs,          *   1:21-cv-1077-PB
                                    *   February 15, 2023
          v.                        *   4:00 p.m.
                                    *
FRANK EDELBLUT, COMMISSIONER, N.H.  *
DEPARTMENT OF EDUCATION, ET AL      *
                                    *
               Defendants.          *
* * * * * * * * * * * * * * * * * * *
```

TRANSCRIPT OF STATUS CONFERENCE
HELD VIA VIDEOCONFERENCE
BEFORE THE HONORABLE PAUL J. BARBADORO

Appearances:

For the Plaintiff:          Charles Moerdler, Esq.
                            David Kahne, Esq.
                            Strook, Strook & Lavan LLP

                            Gilles R. Bissonnette, Esq.
                            American Civil Liberties Union of NH

For the Defendant:          Samuel R.V. Garland, Esq.
                            NH Attorney General's Office

Also Present:               Peter J. Peronni, Esq.
                            Elizabeth Clark Milburn, Esq.
                            Morgan C. Nighan, Esq.
                            Esther Kane Dickinson, Esq.
                            Henry Klementowicz, Esq.
                            Jennifer A. Eber, Esq.
                            Suzanne Amy Spencer, Esq.
                            Nathan Reed Fennessy, Esq.

Court Reporter:             Liza W. Dubois, RMR, CRR
                            Official Court Reporter
                            U.S. District Court
                            55 Pleasant Street
                            Concord, New Hampshire 03301
                            (603) 225-1442

```
 1                    P R O C E E D I N G S

 2            THE CLERK:  Good afternoon, Judge.

 3            We're here in the matter of Local 8027, et al vs.

 4   New Hampshire Department of Education, et al, for a preliminary

 5   pretrial conference, 21-cv-1077-PB.

 6            THE COURT:  All right.  So I've read the submission.

 7   It seems like both parties believe that this case is resolvable

 8   on cross motions for summary judgment.

 9            The plaintiffs would like expedited discovery.  The

10   defendant contends that while discovery isn't necessary, they

11   agree that what discovery can be had should be expedited.

12            I'll start with each plaintiff, whichever one wants

13   to go first.  What -- what else would you like to tell me about

14   how you'd like the case to proceed from here?

15            MR. MOERDLER:  If I may, unless Mr. Bissonnette

16   wishes to go first, Charles Moerdler, Strook, Strook & Lavan in

17   New York for AFT.

18            Judge, I think I need to give you a little bit of

19   additional background.

20            Over the course of the past few weeks, we have been

21   trying to deal with the Attorney General's Office to see if we

22   can find a way of resolving even more of this and having even

23   less of a burden on both lawyers and the Court.  Our thinking

24   had been that your Honor's decision was clear as a bell,

25   explicit, and it resolved, for all purposes, those things I
```

1   won, those things I lost; better stated, those things I won and

2   Gilles lost.

3         THE COURT:  I guess I have to admire your sense of

4   self-confidence, sir.

5         MR. MOERDLER:  I'm so sorry, Judge.

6         THE COURT:  That's all right.  I know you couldn't

7   resist.  Just go ahead.

8         MR. MOERDLER:  You're absolutely right.

9         So the -- what we were thinking of doing was trying

10  to do the following, or we had proposed it.

11        If we could reduce the findings that we thought the

12  Court or the conclusions that the Court had reached into the

13  form of a finding which was a final finding that could be a

14  judgment and that -- in that event, we would then have a final

15  order.  Various portions, including my leave to amend, then

16  going out the window, being dismissed and gone, and thereby be

17  able if they wish to go up, as I understand they do, they would

18  have a final order.  We would then be able to dispense with

19  discovery and go to the First Circuit, if that is their wish,

20  on that basis.

21        Unfortunately, that didn't seem to work too well and

22  the Attorney General's Office thought that it was more

23  appropriate for them to have -- go another round and

24  additionally to raise two what I call new but they're certainly

25  different issues, one of which you specifically commented on in

1    the opinion.

2                       (Technical difficulties.)

3                 THE COURT:  Did I lose counsel?  I think I did.

4                 Let's hope that he logs on again.

5                 And maybe -- Mr. Bissonnette, maybe you can fill us

6    in on your client's position while we're waiting.

7                 MR. BISSONNETTE:  Sure.  Thank you, your Honor.

8                 And I think the -- one of the common themes, I

9    think, between kind of my side and AFT'S side represented by

10   Attorney Moerdler is just the concern about any kind of further

11   delay that would prevent us from getting to final judgment and

12   final resolution.

13                And so Attorney Moerdler is correct that we've been

14   having some discussions with the State to try to see if there

15   was some sort of way, some sort of mechanism, to get to final

16   judgment as quickly as possible, obviously with them reserving

17   their appellate rights.

18                You know, because -- you know, I agree with Attorney

19   Moerdler that it seems like your order was pretty close to

20   final on a lot of these issues recognizing, of course, it was

21   in the posture of a motion to dismiss, but it really wasn't

22   clear to us that there was much left with respect to the

23   analysis.

24                And so that did, as Attorney Moerdler said, led to

25   multiple discussions.  One was in the form of a potential

1   stipulation that would, you know, get this case to final

2   judgment quickly, preserving appellate rights; the other was

3   potentially the option, and this is mentioned in the discovery

4   plan, of foregoing discovery, you know, with the -- with there

5   being a preliminary injunction, agreed-upon preliminary

6   injunction in place, that would serve to provide our clients

7   with the protection that they're entitled to while briefing,

8   summary judgment briefing, occurs.

9           So these are kind of various permutations that we've

10  all discussed to try to get there.

11          Where Moerdler left off, and I know it's a little

12  bit of a cliffhanger, we have -- in the purpose -- as we've

13  been having these discussions with the State, it does seem that

14  there are two other issues that the State, you know, may want

15  to raise.  I'll let Attorney Garland, you know, present those.

16  But I think from where we stand --

17          THE COURT:  I have to acknowledge I'm a little bit

18  confused because when I read the filing, I thought it was you

19  guys that wanted to do discovery and the State said it was a

20  pure legal question --

21          MR. BISSONNETTE:  Sure.

22          THE COURT:  -- that didn't need discovery.  Now I'm

23  hearing you want to do it as a pure legal question and the

24  State wants the chance to do discovery?

25          MR. BISSONNETTE:  Yeah.

1              THE COURT:  I --

2              MR. BISSONNETTE:  Well, I think the concern that we

3    have, I -- I see that.  I think that one of the things that

4    we're struggling with, all of us here, is, you know, discovery

5    could be necessary.  We certainly presented that at the

6    hearing, right, the notion that even in the context of a facial

7    claim there could be issues, important issues, that this Court

8    may think need to be addressed in discovery germane to the

9    facial claim; for example, complaints, how the relevant

10   agencies interpret the law in question, the order of

11   operations.

12             And so I think that certainly are germane, but, you

13   know, there have been questions raised by the State as to

14   whether or not that discovery is necessary for the facial

15   claim.  I think I'm very interested in your thoughts, your

16   Honor, on that because we don't want to forgo something when

17   your Honor may think it's critical to your analysis to reach

18   final judgment.  So I think that kind of, to some extent,

19   explains, you know, the position that we took in the discovery

20   plan.

21             I think where I am at at the end of the day

22   representing my side is however your Honor wants to approach

23   this case, you know, we're amenable, but we are very concerned

24   about delay because --

25             THE COURT:  Yeah.  And I -- I understand that.  Let

1   me offer a couple of comments and then I'll turn to Mr. Garland

2   for his views about the additional issues.

3          I do want -- and you acknowledge this,

4   Mr. Bissonnette.  I was present with a Rule 12(b)(6) motion.

5   The standard in a Rule 12(b)(6) motion, as we all know, is a

6   plausibility standard.  I cannot, in ruling on a 12(b)(6)

7   motion, decide the case for the plaintiffs.  I can only decide

8   whether claims should be dismissed.  And there were certain

9   claims that were dismissed and the remaining claims were not

10  dismissed.

11         Now, because of the complexity of the legal issues

12  that you presented to me, I felt it would be helpful for this

13  case going forward to give you a full-throated, carefully

14  considered explanation of how I viewed the relevant law and I

15  took the extra time to do that so that it would be my best

16  effort to tell you how I think the law works in this particular

17  case.

18         That does not mean that I've decided the case.  I

19  was not in a position to decide it and I'm sure those of you

20  that undertook a close reading would find the word plausible or

21  plausibly interspersed with a lot of my conclusions, first.

22         Second, I left certain issues open because they

23  weren't reached by Mr. Garland, at least to my satisfaction.

24  One of the principal issues was in resolving ATF (sic)

25  plaintiff's First Amendment claim, I concluded that the

1    plaintiffs do not have a First Amendment right to control

2    curricular speech.  And so I found that claim to be deficient

3    as to how it applied to curricular speech.  I -- and that

4    ruling has been made.

5          But I made clear that implicit in their argument,

6    your -- the ATF plaintiff's argument, was an argument that even

7    if there is not a First Amendment protected right on the part

8    of teachers over curricular speech that the laws, arguably, I

9    emphasize arguably, reached beyond curricular speech and dealt

10   with let's call it extracurriculars such as the prayers that

11   were recently decided were not curricular speech and were

12   entitled to First Amendment protection in the recent Supreme

13   Court decision.

14         Now, that issue, I -- ATF asserts that the law can

15   be read broadly enough to encompass a wide range of

16   extracurricular speech.  Under *Garcetti*, government employees

17   may retain certain First Amendment rights with respect to their

18   speech even though they are government employees and I simply

19   was trying to make clear on that issue, the issue has not been

20   fully joined and I certainly can't dismiss the claim in its

21   entirety.

22         So that's important to note as an example of the

23   case where I said there is an issue here, the -- the

24   defendants' briefing does not warrant complete dismissal of the

25   claim and there may be a remnant of protection, but that

1 doesn't mean I know the outer boundaries of that remnant of

2 protection.  I -- it doesn't mean I've explained to you how I

3 would resolve the issue if I determined that there was

4 extracurricular speech that could potentially be encompassed by

5 the rule because then I would not be doing an all-or-nothing

6 *Garcetti* analysis; I would be doing a more nuanced balancing

7 analysis that would have been required under pre-*Garcetti* case

8 law.

9        So that's an example of an area where my order was

10 not dispositive.  And I -- I would -- while I have tried to be

11 as clear as I possibly can about my views on the relevant law,

12 and I recognize particularly with respect to the vagueness

13 claim I have outlined my views about how a vagueness -- a

14 facial vagueness challenge should be raised.  I have identified

15 various problems with the vagueness of the statute, but I

16 haven't made a definitive ruling and nobody should count their

17 chickens here.  Okay?

18        As to -- and I'll turn now to Mr. Garland.

19        And, Mr. Garland, things seem to have flipped.  It

20 seems like you want discovery delay and they want an immediate

21 ruling.  Tell me about your thinking.

22        MR. GARLAND:  I don't know if that's quite right,

23 your Honor.  Our position still, our default position, is that

24 we can do additional briefing on the First Amendment issue you

25 just identified.  We've identified a few areas where I think we

1    feel we need to -- particularly given the posture in the

2    briefing on the 12(b)(6) motion -- certainly need to preserve

3    arguments with respect to vagueness, if not persuade you that

4    the statute is not, in fact, vague.

5              And so we couldn't agree to a stipulation based on

6    the framework of your order though we do very much appreciate,

7    you know, the effort you put into it.  It's very helpful to

8    see, you know, the framework and your views on the law.  That's

9    been very useful for our analysis.

10             And so my default position is we can brief those

11   remaining issues in cross motions now.  I think they're legal

12   issues.  No discovery is necessary.  But understanding that --

13   you know, my understanding is the plaintiffs didn't agree to

14   that, short of us agreeing to a PI, which I'm not authorized to

15   do, or agreeing to a stipulation, which I'm not authorized to

16   do, we tried to find some middle ground of compromise --

17             THE COURT:  Let me stop you because I need to

18   understand.

19             I get it, PI, to the extent they wanted a PI to

20   leave in place while we do something, you aren't able to agree

21   to that.  I understand.  I'm not sure what this stipulation

22   that you both are talking about would entail.  And what, if

23   anything, can you tell me about this idea of a stipulation?

24             MR. GARLAND:  Yeah, absolutely, your Honor.

25             So after your order came out, we -- we talked within

1    a few days, I think Attorney Moerdler and Attorney Bissonnette

2    and myself, about, you know, what your order said and kind of

3    the road map that we all saw from it and I think we all agreed

4    that it was a very thorough order that gave us a lot of clarity

5    on where you view -- view the case in terms of, you know, the

6    legal analysis.

7              My proposal then was further briefing, just as I

8    just suggested to you.  The response that I got from -- to

9    that, and understandably, was that the plaintiffs were

10   resistant to that, but if we were willing to agree to some sort

11   of stipulation of final judgment along the terms of your order

12   that would end the district court matter, we would preserve our

13   right to appeal, and that would be something that they would

14   entertain.  And I certainly -- I brought it back to my clients

15   and it was not something we could agree to.

16             And so.

17             THE COURT:  Are you saying a stipulation that given

18   the Court's rulings that judgment should enter for the

19   plaintiff but the defendant wants to preserve its rights to

20   challenge on appeal?  Is that your position?

21             MR. GARLAND:  Exactly, your Honor.  And we

22   weren't --

23             THE COURT:  That's the stipulation that was being --

24             MR. GARLAND:  Yes.

25             THE COURT:  Okay.  And you couldn't do that is what

1    it comes down to.

2             MR. GARLAND:  I think we -- there are issues that we

3    need to at a very least preserve, if not -- if not, you know,

4    kind of -- there's no --

5             THE COURT:  Testify what those issues would be.

6             MR. GARLAND:  Yes, your Honor.

7             So I think one issue that you've already identified

8    is the scope of the -- kind of the application of this law to

9    speech and whether that implicates extracurricular speech at

10   all.  And if it does, whether under the Pickering Connick

11   standard it violates the Constitution.  And so I think that

12   issue is certainly still out there, it's not something that

13   we've briefed, and we acknowledge that.

14            Another issue that I think we need to provide some

15   clarification on, because your order pointed out, in your view,

16   inconsistencies are what I said in court to you during the

17   hearing versus what the Attorney General's opinion says.

18   And -- and, you know, I've gone back and read the hearing

19   transcript and I think I could have certainly been clearer on

20   that with you at that time.

21            And so --

22            THE COURT:  That's a nice way of saying that I got

23   it wrong in describing your position; is that --

24            MR. GARLAND:  I don't want to go so far as to say

25   that, your Honor.  Certainly not that.

1      But in terms of there being detention there, I think

2  that's something that we've given additional thought to in

3  light of your order and the way that certainly it's framed

4  there.

5      And then I think also there's a question of

6  severability.  You correctly noted we never briefed that.  I

7  think there is an important question around that, particularly

8  insofar as you've identified the penalties really being a

9  significant factor in your -- in your analysis.  And we think

10  there's some briefing we could do around that.

11      There may well be --

12      THE COURT:  There definitely could be a severability

13  argument presented here because there is a -- as you well

14  know -- a severability provision in the statute.  And although

15  Mr. Bissonnette tried to characterize his claim as an as

16  applied claim as to teachers, what I really think it is is a

17  facial challenge by teachers' groups about the way in which the

18  statute affects teachers.  And that was the focus of my

19  analysis because that was the -- what the plaintiffs were

20  presenting to me.

21      And it would not necessarily follow that the

22  entire statute would fall root and branch even if it is a --

23  my ultimate conclusion that the claims presented by teachers,

24  that the claim can -- that the statute cannot be

25  constitutionally applied to teachers because of the sanction

1    provisions which affect them in unique ways and leave them

2    particularly vulnerable in ways that require greater notice to

3    satisfy fair notice concepts.

4            And that was at the heart of my analysis about the

5    way I think facial challenges work and about the way vagueness

6    challenges work when there are aspects of the law that are

7    particularly problematic in that they impose very, very serious

8    career-ending sanctions on teachers.  And it does not follow

9    that every other provision in the statute, it applies much more

10   broadly than teachers, and for which there are not comparable

11   penalties.

12           And so I think that's something that definitely is

13   the case and certainly I would fully understand if any

14   stipulation you were being asked to enter into would be a

15   stipulation only as to the vagueness of the statute as it

16   applies to educators.  And I use the term educators as that's

17   the statutory term there which is broader than what we think of

18   as just teachers but encompasses a variety of people that

19   require certifications for their ability to practice their

20   profession.

21           So I -- I understand your concern about that.  I

22   understand your desire to be able to weigh in on the Pickering

23   Connick standard and how it might apply to speech by teachers

24   outside of the classroom which really hasn't been addressed.

25   But that's fine.  Nobody can make you enter into a stipulation

1    or a preliminary injunction.

2              I understand -- I -- look.  I -- I am sufficiently

3    humble that I understand the reality of my situation.  It is

4    highly, highly likely that however this case is resolved at my

5    level, it will be appealed.  And it is highly, highly likely

6    that the Court of Appeals will be the -- the final voice on

7    this particular issue.  And why not get it to them as soon as

8    we possibly can.  That -- that is a sensible thing.

9              But I can tell you, having sat with appellate panels

10   many, many times, that's great, but an appellate panel doesn't

11   want to issue a definitive case-resolving decision on less than

12   a complete record.  They would rather have me make sure that I

13   develop a complete record before they have to weigh in on these

14   issues.

15             And so I -- I think we have to be somewhat cautious

16   on simply saying, oh, Barbadoro in the 12(b)(6) order told us

17   clearly about what he thinks.  Yeah, I've told you what I think

18   about the way vagueness law works, for example, the way facial

19   challenges to vague statutes work, and those are unresolved

20   issues.  They have not been authoritatively resolved by the

21   First Circuit.  So the First Circuit might well take a

22   different view on that matter and if they do, it could end the

23   litigation right there because this is a facial vagueness

24   challenge.

25             So I understand the parties wanting to get it to the

1    Court of Appeals and I would be happy to have the Court of

2    Appeals hear it.  I just want to be sure I don't let the Court

3    of Appeals down here and I develop a record that is sufficient

4    so that that court will be comfortable in resolving those

5    issues.

6              And so you asked me about, you know, are there

7    things that could -- if I were an appellate judge, for example,

8    reviewing a record in this case, one of the things I might want

9    to know more about, for example, is exactly what kinds of

10   extracurricular speech do teachers have with their students.

11             We had some discussion of that, but there's no

12   evidence in the record about what kinds of extracurricular

13   speech teachers actually have with their students.

14             It might be useful to know during the ensuing months

15   since this case has been filed, have there been any complaints

16   about violations of the statute by teachers or educators more

17   broadly.

18             It could be valuable to know what -- whether there

19   have been further expressions of opinion by implementers of

20   the -- the statute between now and then.

21             If the parties -- but it is up to the parties to

22   develop their cases, not me.  I'm here to respond to what you

23   do, not sit -- try to set up the case the way I would want it

24   to be set up.  But I do think that those are a couple of things

25   the Court of Appeals, a judge on the Court of Appeals, might

1    want to know something about and I could see a question being

2    asked, well, why shouldn't we just remand that to the trial

3    judge here, let him develop a record.  And that then delays the

4    case by another year.

5              So you don't want to bring it up prematurely and

6    then it takes -- because this -- these raise -- these are very

7    important and complex and unresolved issues.  I guarantee you

8    the Court of Appeals will want to carefully consider these

9    issues before it writes an opinion.

10             It will take many, many months.  It'll be well over

11   a year before the Court of Appeals likely responds on it.  So

12   the last thing you want is to push it up prematurely to the

13   Court of Appeals, only to be told that it has to be -- certain

14   issues have to be developed on remand and we're now three years

15   into the process.

16             So I will not -- it's up to you to build the record

17   that you both want to build.  I'm here to help you do that.

18   But those are a couple of thoughts that I have.  And then --

19             MR. BISSONNETTE:  Sure.

20             THE COURT:  -- one thought that I almost always do,

21   and there may just be nothing on this point, is I like to have

22   a full indexed copy of the legislative history of a statute

23   like this in the record.  And it may be that my brief summary

24   of that legislative history is all that there is and if that's

25   so, fine.  But if there were any statements on the floor, if

1    there were any statements in committee of which there's a

2    record, it probably is worthwhile to collect and include it in

3    the record --

4              MR. BISSONNETTE:  Yes.

5              THE COURT:  -- so that the Court of Appeals doesn't

6    have to go hunting around in it -- for it if they think it is.

7              So those are, I guess, three things that -- three or

8    four things that if I were an appellate judge potentially I

9    might need to see something in the record about before I could

10   finally resolve the matter.

11             So I -- I understand.  I don't fault the Attorney

12   General for not agreeing to a stipulation.  I -- I don't fault

13   the Attorney General for not agreeing to a PI.

14             It remains if the -- if the plaintiffs -- and I

15   think the plaintiffs made absolutely the right choice in not

16   seeking a PI initially because, again, I think Mr. Bissonnette

17   has enough experience with me to know that I don't rush into

18   making difficult decisions on the constitutionality of state

19   statutes and I don't do that lightly and it would have taken me

20   several months before I could feel comfortable giving you the

21   analysis I gave here.

22             So I don't fault anybody here, but it -- if -- if

23   you are unable to agree on either a stipulation or a -- the

24   entry of a PI, the plaintiffs certainly could ask for a

25   preliminary injunction.  Again, I would want to be sure that

1    the record was sufficiently developed so the Court of Appeals

2    could finally resolve the case, but it might make more sense to

3    simply do some limited expedited discovery on a targeted set of

4    issues and have a schedule for cross motions, where both

5    parties agree now the record is fully complete, we've had a

6    chance to build our record, we're satisfied, we both believe

7    the Court has everything it needs to resolve all issues in the

8    case, and then I can take my crack at it and then you can go

9    back -- go to the Court of Appeals.

10              MR. BISSONNETTE:  Yup.

11              THE COURT:  You know, so if after -- you know,

12    unlike at the current stage, where I have only issued a ruling

13    denying a motion to dismiss, if I conclude after a fully

14    developed record that the plaintiffs are entitled to summary

15    judgment, at that point I would either enter the preliminary --

16    the permanent injunction or I would say to the State Attorney

17    General's Office what I have said in the very few times I have

18    ever held a state statute unconstitutional:  Oh, by the way,

19    I've given you this explanation, I don't expect you to be

20    enforcing this thing against anybody while you're on appeal and

21    if you're feeling otherwise, tell me, you know.  Because

22    normally state officials are presumed to follow rules of

23    federal courts and -- rulings of federal courts and unless you

24    ask for my permission to stay the effect of my order, I'd

25    expect you to abide by it, you know.

1          MR. BISSONNETTE:  Yeah.

2          THE COURT:  So -- so that's where I am.  I

3     understand your positions now.

4          Counsel, I'm sorry we lost you for a minute, but you

5     have an able colleague in Mr. Bissonnette who was able to, I

6     believe, fully describe your position.  You must have other AFT

7     counsel here on the file -- or in the hearing.  If you want any

8     of them to speak or if you want to say anything else, go ahead,

9     but where I am is this.

10          It sounds like the parties undertook reasonable

11     efforts to get an expedited decision by way of the entry of a

12     PI that could be appealed or a stipulation for judgment

13     reserving the right to appeal.  Those are both legitimate

14     things to do for legitimate reasons.  The Attorney General is

15     not prepared to enter into a stipulation or agreed-upon PI and

16     so we are then left with how do we proceed.

17          Mr. Garland acknowledges there are a couple of

18     issues that he needs to do supplemental briefing on based on my

19     order.  Even if there were no facts in dispute, he'd need to do

20     briefing on that.  Mr. Bissonnette said, you know, we want a

21     fast ruling, we want to get this thing moving, but, you know,

22     if there are particular concerns the Court has, we would

23     obviously want to listen to that.  My response to that,

24     paraphrasing again, is it's up to you guys to build the record

25     that you want.

1      I don't -- that's not my role.  But I tried to

2  identify a handful of issues on which it might be helpful to a

3  Court of Appeals judge reviewing this case and I -- I -- I

4  think I identified what some -- some discovery or record

5  stipulations could maybe do it about what teachers do in their

6  interactions with students that could be characterized as

7  extracurricular in a way that would entitle them to Pickering

8  Connick First Amendment protection even if they have no First

9  Amendment protection as to curricular speech.

10      Another issue that -- that I identified was it could

11  be helpful to know what, if any, complaints have, in fact, been

12  made between now -- the time of the statute's effectiveness and

13  now that weren't provided to me and, finally, to the extent

14  there have been enforcer interpretation in addition to what I

15  had available to me, those would be potentially relevant to

16  know.

17      And then the last thing I referenced was if there is

18  any substantial legislative history that wasn't in front of me,

19  I didn't go out and try to do it myself.  The preferred way, at

20  least for me, is for the parties to collect it, stipulate it,

21  index it, Bates stamp it, and submit it as an exhibit so that

22  no -- no other law clerk or Court of Appeals judge has to send

23  somebody up to the New Hampshire Archives to try to dig out

24  obscure legislative history.

25      Some judges think it's relevant.  Some don't.  I

1   have used it on occasion.  I don't -- I'm cautious about using

2   it.  But generally when the constitutionality of a statute is

3   challenged, I like to see the legislative history.

4           So in response to Mr. Bissonnette's question, those

5   are some things that you might want to consider.  But if you're

6   just ready to file your motions and you agreed to file them,

7   I'll rule on what I -- what you've given.

8           Okay?  So, Mr. Bissonnette, do you want to follow up

9   and then --

10          MR. BISSONNETTE:  I do.

11          THE COURT:  Okay.  Go ahead.

12          MR. BISSONNETTE:  I just want to say I think this

13  has been really helpful for me just -- to learn just how to --

14  how we as litigants in the parties here should interpret your

15  order in this case.  And what I was struggling with in reading

16  this order is that, you know -- and obviously I saw all the

17  Rule 12(b)(6) caveats, but, you know, one of the questions that

18  was really presented in my brain is is this kind of an unusual

19  case where maybe there were legal rulings kind of embedded

20  within that 12(b)(6).

21          Clearly you made clear to us that I shouldn't over

22  read that and I appreciate that very much.  And I think, two,

23  our discovery plan really was designed to reflect what we

24  talked about at the inception of this case at the motion to

25  dismiss argument which is if it was denied -- it was denied,

1 then we do expedited discovery and cross motions in the normal

2 course but on an expedited basis, recognizing that at least in

3 the plaintiff's view there is exigence here and harm the longer

4 this law moves forward without some sort of relief.

5   So I just want to say that this has been very

6 helpful to me, I'm sure to all of my colleagues here.  We are

7 prepared to move forward on an expedited basis as reflected in

8 the discovery plan, a truncated 90-day discovery window with

9 various discovery topics that we've specified in the discovery

10 plan, much of which you've already covered during this status

11 conference.

12   So I just -- I want to just be very clear we're

13 ready to move forward.  We're ready to move forward quickly.

14 We're ready to move forward now on these limited issues.  You

15 know, because -- and we really do not want this to go beyond

16 90 days.  We're all going to have to work fast and quickly in

17 order to get that brief -- get that -- those briefs on file.

18   I would say that I do believe the legislative

19 history may already be part -- may have already been docketed.

20 I'd have to go and check that.  But on those --

21   THE COURT:  I just wanted to be sure we had it --

22   MR. BISSONNETTE:  Yeah, I'll agree.  I'll check that

23 again, your Honor.  I don't want to misspeak.

24   But we're prepared to move forward along the lines

25 that you've conveyed to us.

1           THE COURT:  All right.  So I -- I do think,
2    Mr. Garland, so you have some legal issues that you want to be
3    able to brief.  We've talked about those.  I think they're
4    appropriate to raise in a -- in the cross motions for summary
5    judgment practice.  I -- I think if the discovery is narrow and
6    focused and it will require some work on each side to get this
7    record fully developed, there's a reasonable possibility that
8    you can get the discovery done in this kind of expedited way.
9    I would take, at most, a handful of depositions.  A lot of it
10   would be, you know, paper discovery.  A lot of it -- and it
11   is -- we're not talking hundreds of thousands of pages here.
12   We're talking a very limited subset of pages.
13           But I'm thinking, for example, to the extent
14   Mr. Bissonnette decides that it's important to have in the
15   record how teachers interact with students on an
16   extracurricular basis, he's got to come forward with some
17   evidence on that particular point and you should be entitled to
18   interrogate that evidence in order to make sure the issue is
19   fairly represented.
20           And so I think a relatively small subset of
21   depositions with lawyers working together -- Mr. Moerdler, one
22   thing we did not -- we talked about while you were
23   unfortunately offline was -- and I'm not sure, it looks like
24   your screen's frozen, but if you're hearing me -- there's also
25   a severance question here because at least my order was

1   targeted at the relief that the two groups of plaintiffs were

2   seeking, which was really targeted at teachers who, in my view,

3   are in the most vulnerable position as a result of this statute

4   and who face unique problems that make the State's position far

5   less tenable.

6            And so there's a reasonable likelihood here that I

7   would do nothing more by way of final judgment than determine

8   that any application of the statute -- that the provision --

9   the only provision that I'm saying are unconstitutionally

10  vague are those provisions that bear directly on what educators

11  are -- how they affect educators and leaving potentially other

12  for further development perhaps in other cases those provisions

13  which have no bearing on educators.

14           So that -- unless the parties posture the case in a

15  different way, there is a severability provision.  I would be

16  inclined to focus any ruling I make on those provisions which

17  have been litigated in front of me and not on sweeping

18  wholesale invalidation of the statute, even if I'm persuaded by

19  the plaintiffs' position.

20           And, you know, I understand, Mr. Bissonnette, I -- I

21  could have written a 15-page order that just would have denied

22  in part and granted in part, but I felt that the legal issues

23  are complex enough that as you go forward you ought to at least

24  know my position so that you can, in the final set of briefing,

25  stake out your reasoning why I'm right on this and wrong on

1    that and give me one last chance to correct any mistakes and

2    then -- then the Court of Appeals can have it.

3         So that's why I did what I did.  And I understand

4    it.  I mean, there -- on certain issues like how -- how should

5    a vagueness challenge be viewed and what does fair notice

6    require, and what do the kind of penalty provisions -- how do

7    these provisions operate and what are the challenges they

8    present when -- in the face of a vagueness challenge, those are

9    my views.  They're not likely to change because I spent a lot

10   of time thinking about them.  And other people -- other judges

11   might have different views and the Court of Appeals might well

12   correct me on those views.  But I'm unlikely to change them

13   between now and then unless you present me with some obvious

14   legal analysis on a point that I've overlooked and I didn't

15   think through.

16        So I think we're -- we've got a path going forward.

17   It seems like that path involves this expedited discovery and I

18   do think in the long run, Mr. Bissonnette, what your clients

19   want is not just a quick ruling that gets -- that ends up with

20   three years of delay; you want a ruling that can form a basis

21   for a successful appellate challenge, as does Mr. Garland

22   because both sides have an interest in having the final

23   authoritative determination on the constitutionality of this

24   statute, which we all know isn't going to come from me.

25        So let's -- let's do this.  Let's get the expedited

1    discovery done.  Let's follow the briefing schedule you've

2    negotiated.

3            Mr. Moerdler, I'll give you a chance in just a

4    second.

5            Let's get the cross motions for summary judgment

6    filed.

7            The one thing, you know, I -- Mr. Garland served as

8    a law clerk on this court.  He knows well our law clerk

9    changing schedule.  I was -- I was saddened to see that you're

10   proposing a schedule that doesn't let me decide the case until

11   I have a turnover of law clerks because that means a very

12   substantial reeducation campaign with some relatively new law

13   school graduates.  But, you know, I -- as valuable as my law

14   clerks are on this, is my work, I fully know the law in this

15   area, so I'll have to make the most of my experience and

16   educate them quickly.

17           But, you know, again, it'll be a new crop of law

18   clerks in September trying to struggle with whatever happens at

19   oral argument.  And it may take me a few months to get a final

20   order out although I really hope that that order of mine is

21   clear enough and is careful enough in a legal analysis that at

22   least it sets forth my position that should enable all of us to

23   do our work more efficiently, at least at this level.

24           So, Mr. Moerdler, I'm sorry.  You were cut off and I

25   just didn't want to wait until we got you back on.  I hope

1    there's another representative of AT that was on the line that

2    can brief you.  In any event, I have a court reporter here and

3    if you need a transcript, you can order one.  But I think I've

4    summarized what -- where we were on this.

5              But what else would you like to say, sir?

6              I'm sorry, I'm not hearing you now.

7              Who's local counsel for Mr. Moerdler?

8              MR. KAHNE:  I can -- Chuck, it sounds like you might

9    be muted.

10             This is David --

11             THE COURT:  Yeah, you're muted.  So let me turn to

12   your cocounsel and just, sir, what would you like to say?

13             MR. KAHNE:  Thank you, Judge.  There's just one

14   point I wanted to make and I think it's just sort of for

15   clarification purposes.

16             The stipulation that we were contemplating, I think

17   it did not -- it wasn't so expansive as to get into the area of

18   the First Amendment.  It was really supposed to be sort of

19   narrowly focused on the facial -- and not even the as applied

20   challenge, only the facial vagueness challenge.  Because as you

21   pointed out, I think your opinion in that area was particularly

22   clear.

23             So -- but we fully understand your -- your point

24   about you're developing an entire record as opposed to going

25   up piecemeal, but I just wanted to make clear that the part of

1  the -- of the stipulation and that the expedition that we were

2  seeking was just on that portion of the facial vagueness, to

3  get that up to the First Circuit as quickly as possible.

4        THE COURT:  And I get that, because that's the

5  portion of my order which is the most definitive.  It does turn

6  largely on legal issues and facts that are either undisputed or

7  language in the statute itself.

8        And you could do that, but, again, suppose you had a

9  one judge on a three-judge panel that said, you know, I'm not

10  sure that a facial vagueness challenge should be subject to --

11  to review, but maybe there's a First Amendment claim here that

12  is sufficient to justify a -- a more exacting vagueness review

13  standard, but we can't answer that question.

14        So you never know what a panel on the Court of

15  Appeals would be interested in knowing and since there is that

16  issue hanging out there, if, for example, there -- you were to

17  persuade me that there is First Amendment-protected speech that

18  is affected by this statute, that would bolster your vagueness

19  challenge because, as we know, First Amendment vagueness

20  challenges are subject to a quite rigorous standard of review

21  and it might give the -- the Court of Appeals an alternative

22  path if the Court did not want to take up the issue that I took

23  up about how *Johnson* affects facial vagueness challenges; they

24  might want to focus on the First Amendment as an alternative

25  route to getting to the same standard of review.

1          So you could -- so I -- I understand your concern,

2     but the absolute worst thing we could have is a remand here.

3     Okay?  We need to get it done with me and so that the court

4     that really will decide the case can decide it.  And that's the

5     quickest path to answering the question for both sides, which

6     is so important.

7          So I think you just have to bear with us.  The

8     reality is federal courts, appropriately, are very deferential

9     to state and federal legislative bodies.  We don't lightly

10    entertain constitutional challenges to state or federal

11    legislation.  There are only, really, two cases in 30 years

12    where I've found a state statute unconstitutional.

13         In both cases, I was ultimately upheld.  The -- one

14    by Mr. Bissonnette in the First Circuit and one by the Supreme

15    Court in the Vermont case that affirmed my decision after the

16    First Circuit reversed me on it.  But they're very important,

17    serious challenges that you don't resolve lightly.  And I have

18    great respect for the New Hampshire Legislature and I'm going

19    to carefully consider any constitutionality challenge to a

20    state statute.  It just takes time.  It's too important to do

21    it quickly.

22         So I'll get it done as fast as I can, but it's going

23    to take a little bit of time.

24         I don't know, Mr. Moerdler.  Are you back online?

25         Oh, no, sorry.  I -- I'm sorry, Mr. Moerdler.  We'll

1    just try to get you next time.  And I -- you, fortunately, have

2    a very good team of lawyers here who can speak for your client

3    as well as for the coplaintiff.

4                  So I think we've about covered it.

5                  Mr. Bissonnette, anything more from you?

6                  MR. BISSONNETTE:  No, your Honor.  Thank you.

7                  THE COURT:  Mr. Garland, anything from you?

8                  MR. GARLAND:  No.  The only thing I want to flag,

9    your Honor, is I think -- you're probably aware of it -- is the

10   only real dispute in terms of the discovery plan that we've

11   generally agreed to in our -- is with respect to the

12   presumptive limits on the number of depositions, the number of

13   interrogatories, et cetera.

14                 So there -- I just want to flag there's a dispute

15   there.  I don't want to -- I don't need to advocate anything,

16   but --

17                 THE COURT:  Here's what I would say.  You guys have

18   been good at working together.  Meet and confer and try to

19   reach reasonable agreements.  If somebody thinks someone else

20   is going too far -- we don't want to delay the case.

21   Somebody -- if there's a dispute, the proponent of the

22   deposition is going to have to make a strong case that -- and

23   explain specifically what they could get from the deposition.

24                 Otherwise, I wouldn't -- these are not just general

25   fishing expedition kind of discovery here.  We're going to move

1    quickly.  And I'm confident that you will.  We've got good

2    lawyers all around on this case, so I think you can work

3    through those things.

4           So I won't make any ruling on it now.  We'll --

5    we'll approve the plan as proposed, enter the deadlines that

6    have been proposed.  If you need to modify them, if you can

7    agree, I'll agree to reasonable modifications.  If you run into

8    discovery disputes, I don't like to engage on those matters,

9    but I will in this case.  Just ask for a conference and I'll --

10   I'll help you resolve it quickly.

11          I -- the parties I don't think have asked for this,

12   but I -- I recognize that the briefing limitations are probably

13   not sufficient here, so we ought to use a 50-page limit on

14   briefs rather than our limit in the rule and a -- I -- I

15   think -- I can't remember whether you envisioned this, but we

16   could have a 50-page on the briefs and I'm going to set it for

17   oral argument.  I don't think we need reply and surreply briefs

18   because we'll do oral argument.  All right?  So that will save

19   us a couple of weeks while we wait for replies and surreplies.

20          So give you a good, full briefing opportunity for

21   opening briefs and then we'll set oral argument and we should

22   be able to get through the case like that.  Okay?

23          MR. BISSONNETTE:  Your Honor, I appreciate that.  In

24   the spirit of expediting this, I appreciate that.  That's

25   helpful.  Thank you.

1          THE COURT:  Anything else, Mr. Garland?

2          MR. GARLAND:  Not at all.  Thank you very much, your

3    Honor.

4          THE COURT:  Mr. Kahne, anything from the AT

5    plaintiffs?

6          MR. KAHNE:  No.  Thank you, Judge.

7          THE COURT:  Okay.  Thanks, folks.  I'll look for

8    your -- for your briefs and let me know if you need anything

9    before then.

10          MR. BISSONNETTE:  Thank you, your Honor.

11          MR. GARLAND:  Thank you.

12          THE COURT:  Thank you.  That concludes the hearing.

13          (Proceedings concluded at 4:50 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25

# C E R T I F I C A T E

I, Liza W. Dubois, do hereby certify that the foregoing transcript is a true and accurate transcription of the within proceedings, to the best of my knowledge, skill, ability and belief.


Submitted: 3/22/23                    */s/  Liza W. Dubois*
                                      LIZA W. DUBOIS, RMR, CRR