# EXHIBIT 7

# Declaration of NEA-NH President Megan Tuttle

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| LOCAL 8027, AFT-NEW HAMPSHIRE, AFL-CIO, RYAN RICHMAN, JOHN DUBE and JOCEYLN MERRILL, teachers in the New Hampshire Public Schools, and KIMBERLY GREEN ELLIOTT and MEGHAN EVELYN DURDEN, parents or guardians of children in the New Hampshire public schools.<br>   Plaintiffs,<br>     v.<br>FRANK EDELBLUT, in his Official Capacity as Commissioner of the DEPARTMENT OF EDUCATION ("DOE"), CHRISTIAN KIM in his Official Capacity as the Chair of the NEW HAMPSHIRE COMMISSION ON HUMAN RIGHTS, and JOHN FOMELLA in his Official Capacity as ATTORNEY GENERAL of the State of New Hampshire.<br>   Defendants.<br>-------------------------------------------------------------------------<br>ANDRES MEJIA,<br>CHRISTINA KIM PHILIBOTTE, and<br>NATIONAL EDUCATION ASSOCIATION-NEW HAMPSHIRE,<br>   Plaintiffs,<br>     v.<br>FRANK EDELBLUT, in his official capacity only as the Commissioner of the New Hampshire Department of Education,<br>JOHN M. FORMELLA, in his official capacity only as the Attorney General of the State of New Hampshire,<br>AHNI MALACHI, in her official capacity only as the Executive Director of the New Hampshire Commission for Human Rights,<br>CHRISTIAN KIM, in his official capacity only as the Chair of the New Hampshire Commission for Human Rights,<br>KEN MERRIFIELD, in his official capacity only as the Commissioner of the Department of Labor,<br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil No. 1:21-cv-01077-PB<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DECLARATION OF MEGAN TUTTLE**

I, Megan Tuttle, pursuant to 28 U.S.C. § 1746, depose and say as follows:

1

1. I live in Merrimack County, New Hampshire.

2. I am the President of NEA-NH, a union of more than 16,000 public school educators, the majority of public-school employees in the state.

3. Prior to becoming president, I was a middle school social studies teacher in New Hampshire.

4. I am certified by the State Board of Education, and thus, am subject to the "Educator Code of Conduct" (N.H. Admin. Code R. Ed. 510-512) that is now embedded within N.H. Rev. Stat. Ann. ("RSA") 193:40 (hereinafter, the "Banned Concepts Act" or the "Act"). *See* RSA 193:40, V.

5. I am offering this Declaration in my capacity of President of NEA-NH.

6. In the wake of George Floyd's May 25, 2020 murder, many New Hampshire educators have engaged in professional development opportunities to enhance their skills to teach both (i) to Black, Indigenous, Hispanic, Asian, and other students from historically marginalized groups, and (ii) about the experiences and perspectives of those groups. This not only includes the decision of the Manchester, Exeter Region Cooperative, Concord, and Oyster River school districts to hire diversity, equity, and inclusion professionals, but it also includes educators themselves exploring how they can adjust their teaching methods to provide a more inclusive education.

7. For example, in 2020, Misty Crompton, a member of the Plaintiff NEA-NH and an educator who teaches in Derry, was awarded the prestigious Christa McAuliffe Sabbatical from the New Hampshire Charitable Foundation for her project called "Promoting Just Schools." The sabbatical, created in 1986 in honor of the Concord High School teacher and astronaut, gives one exemplary New Hampshire teacher a year off with pay and a materials budget to bring a great educational idea to fruition. Ms. Crompton's project focused on educational equity—namely, levelling the playing field for students by recognizing how identity, race, and culture of students and teachers play out in the classroom.

8. Since the passage of the Banned Concepts Act, we have received information from our members that they are confused about what is and is not permissible under the law.

9. On two occasions, I wrote to the Attorney General and the Department of Education on behalf of our members asking for specific examples of texts, curriculum, instruction, or other materials which our members could no longer teach. I received no response from either the DOJ or the DOE.

10. On September 13, 2021, Irv Richardson—the Coordinator for Public Education and School Support for the NEA-NH—also asked the Human Rights Commission in an email whether the HRC "had someone … who might provide further clarification on the [Act] and answer questions from educators using a virtual platform." He added in the email to the Human Rights Commission that "our next conference [is] scheduled for October 8th but this topic is so important, we can accommodate any time that would be convenient for the presenter you recommend." The HRC did not respond to this email or accept this speaking invitation.

11. By virtue of their membership in NEA-NH, members receive access to extensive professional development programming. The Act by its vague nature has made it impossible for NEA-NH to provide meaningful professional development about the Act to its members despite demand from its membership to do so.

12. One particular source of confusion is that while the Act was being considered, there were no examples offered of materials, lessons, books, or instruction that were actually being taught in New Hampshire that would be outlawed by the Act. Without these examples, and due to the lack of concrete information offered by the DOJ, DOE or HRC, our members have nothing they can compare their own actions to in order to understand if they may be violating the law.

13. We encouraged members to ask their school administration for assistance with training and clarifying the law. However, we have found that school administration also does not know what is impermissible under the law and therefore cannot provide this necessary training or guidance.

14. I also hear from members that they are nervous about violating the law because they don't want to be investigated by the Department of Education and they don't want to lose their teaching licenses.

15. Since the Act was passed, I have heard of a marked increase in stress of our members worried about licensure actions and parent complaints.

16. The climate created by the Act- one of uncertainty and fear- has led to deep frustration by our members who cannot understand why the enforcement agencies will not assist them in not violating the law.

17. Since the Act passed, I have heard from numerous members that they feel targeted, scared, and that they are considering leaving the profession.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 21st day of July, 2023

                                            */s/ Megan Tuttle*
                                            Megan Tuttle