```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW HAMPSHIRE


* * * * * * * * * * * * * * * * *
                                 *
LOCAL 8027 AFT-NEW HAMPSHIRE,    *
AFL-CIO, ET AL.,                 *
                                 *
              Plaintiffs.        *
                                 *
         v.                      *  No. 1:21-cv-1077-PB
                                 *  January 16, 2024
                                 *
FRANK EDELBLUT, IN HIS OFFICIAL  *
CAPACITY ONLY AS THE             *
COMMISSIONER OF THE NEW          *
HAMPSHIRE DEPARTMENT OF          *
EDUCATION, ET AL.,               *
                                 *
              Defendants.        *
                                 *
* * * * * * * * * * * * * * * * *

         TRANSCRIPT OF TWO EXCERPTS FROM MOTION HEARING
              BEFORE THE HONORABLE PAUL J. BARBADORO

APPEARANCES:

For the Plaintiffs:      Charles Moerdler, Esq.
                         Stroock Stroock & Lavan LLP

                         Gilles R. Bissonnette, Esq.
                         American Civil Liberties Union
                         of New Hampshire

                         Joshua M. Goldman, Esq.
                         Harry Sandick, Esq.
                         Patterson Belknap Webb & Tyler

                         Morgan C. Nighan, Esq.
                         Nixon Peabody LLP

                         Chris Erchull, Esq.
                         GLBTQ Legal Advocates & Defenders
                         (GLAD)

              (Appearances continued next page)
```

```
 1
       For the Defendants:     Samuel R. V. Garland, Esq.
 2                             Nathan W. Kenison-Marvin, Esq.
                               New Hampshire Department of Justice
 3                             Office of the Attorney General (Civil)

 4

 5     Court Reporter:         Brenda K. Hancock, RMR, CRR
                               Official Court Reporter
 6                             United States District Court
                               55 Pleasant Street
 7                             Concord, NH 03301
                               (603) 225-1454
 8
```

I N D E X

                                           Page

Excerpt No. 1............................4
Excerpt No. 2............................8

```
 1                        EXCERPT NO. 1
 2            THE COURT:  Well, is the Socratic method a teaching
 3   method?
 4            MR. GARLAND:  For sure, your Honor, in the abstract.
 5            THE COURT:  Are you teaching when you ask questions
 6   using the Socratic method?
 7            MR. GARLAND:  Yeah, I think you are, for sure.
 8            THE COURT:  When you ask questions of your students
 9   about white privilege, are you teaching it, even though you're
10   not taking a view about white privilege; you're trying to get
11   them to think about white privilege, what it means, is it real,
12   what is the extent of it?  If you ask questions, are you
13   teaching?
14            MR. GARLAND:  I think you are, your Honor, and I think
15   that falls within the definitions that we've identified, that,
16   still, it's some sort of affirmative and deliberate act
17   designed to convey information.  As I understood --
18            THE COURT:  So, let me try a hypothetical on you.  So,
19   suppose a high school teacher is teaching Thoreau's book
20   *Walden*, okay, a book near and dear to my heart, I grew up five
21   miles away from Walden Pond, and there's a famous statement
22   that Thoreau makes in that book:  It's never too late to give
23   up our prejudices.  Suppose a teacher writes that on the board,
24   and a student raises his hand and says, People can't give up
25   their prejudices; they're inherent.  What is the teacher
```

1  supposed to do in response to that to avoid losing their
2  teaching license?
3           MR. GARLAND:  I think a teacher may well have to
4  consider adding context or disclaimer to that sort of
5  statement, may have to identify that it is --
6           THE COURT:  That's wrong?  They have to affirmatively
7  tell the student, That's wrong; that isn't true?
8           MR. GARLAND:  I'm not saying that, your Honor.
9  Something more general in the sense of that's one particular
10 way of looking at it, and I think that's really where this
11 starts to, in my mind, blur the vagueness inquiry and the
12 policy inquiry.  A lot of people of very good faith profoundly
13 disagree that a teacher should have to do that.
14          THE COURT:  Nothing in my ruling -- I don't take any
15 position on whether any of the banned concepts are good or bad,
16 should be in the curriculum, should not be in the curriculum.
17 That's not my job.  I say it's the responsibility of the State.
18 I suggest that school boards are in a better position most
19 often to do that, in conjunction with public hearings and so
20 forth, but it's the State's responsibility, not mine, to
21 declare whether concepts are good.
22          So, I don't take any position on should there be,
23 should it allow, should it not be.  I'm concerned about the
24 vagueness of the statute and how teachers can lose their job,
25 lose their teaching license, potentially be subject to damages

1   for not responding to a comment from a student in a classroom
2   in the right way.  That's my concern.
3           What can you tell me about whether in that
4   hypothetical, what other context would you want to know that
5   could give a teacher guidance about how to respond to a student
6   that challenges Thoreau's statement that, It's never too late
7   to give up our prejudices?
8           MR. GARLAND:  I think the additional guidance that a
9   teacher would need can be found in the statutes, and I think
10  that goes down to Roman numeral I and the letter portions of
11  the statutes, which is, if the statement is coming back of the
12  kind you're describing, a teacher may well have to add a
13  caveat, may well have to add a disclaimer, not a rejection of
14  the notion, I don't think that's contemplated by the statutes,
15  but may well have to make clear how it fits within the larger
16  context of education.  I think the statutes provide sufficient
17  guidance on this, and I do think this is where, when we're
18  talking about cases, that I would posit around the margins the
19  fact that a teacher has to make those judgment calls does not
20  mean the statute is vague.
21          THE COURT:  Could a teacher in a high school civics
22  class assign to students -- and I'm picking up specifically on
23  something from the plaintiffs' brief, where they were picking
24  up on something I said in my opinion about the affirmative
25  action case -- could a teacher assign and have a class

1  discussion about Justice Sotomayor's dissent in that case?
2         MR. GARLAND:  For sure, your Honor.
3         THE COURT:  And they could talk about affirmative
4  action and why reparations might be necessary, not just
5  diversity promotion?  They could talk about that, and that
6  wouldn't in any way endanger a teacher for teaching,
7  advocating, inculcating that one group should be preferred over
8  another?
9         MR. GARLAND:  No, I don't think it would run afoul of
10 it, because the statutes don't simply prohibit what you just
11 described, which is one group preferred over another.  They
12 prohibit the idea that --
13        THE COURT:  I don't know if the plaintiffs will agree
14 with you on that.
15        MR. GARLAND:  I doubt they will, your Honor.
16        THE COURT:  I don't think I'll agree with you on it
17 either.  I mean, I won't try to argue with you on it.  But I
18 think the banned concepts can be read to encompass that, that
19 one group should be -- it is wrong that one group should be
20 preferred over another based on their race, for example.
21        MR. GARLAND:  I don't agree with that, your Honor, but
22 the point that I -- the main point that I would make in
23 response to that focuses on the word "could" have that you just
24 used, because I do think a lot of what we're talking about and
25 part of the peril in hypotheticals is it is a question of

1  could, and it's a question of could in cases that are on the
2  margins, could this violate it.
3  　　　　You resisted the notion in the earlier argument, and I
4  remember it well, that you can rewrite the statute, and I'm not
5  advocating that you can, but what you can do, sitting in the
6  context of a federal judge looking at state law, is you can try
7  to divine what the Supreme Court, New Hampshire Supreme Court,
8  would do, again using its rules of construction, and one of its
9  rules of construction is construing language, if it is
10 susceptible of a reading that's broader that creates a
11 constitutional problem and susceptible to narrow
12 construction --
13 　　　　　　　　　　(End of excerpt)
14 (Proceedings continued on the record that are not included in
15 this excerpt transcript)
16 　　　　　　　　　　* * * * * *
17 　　　　　　　　　　EXCERPT NO. 2
18 　　　　THE COURT:  Well, how about the concept of structural
19 racism?  You understand what that term is understood to mean,
20 right?
21 　　　　MR. GARLAND:  Yes.
22 　　　　THE COURT:  Doesn't structural racism -- don't you,
23 engaging in discussions about structural racism, can they not
24 be discussions about how discrimination can evolve into
25 intolerance over time?

1   MR. GARLAND: I would say they certainly can, your
2   Honor, but, as I understand the concept of structural racism,
3   it doesn't get into the sort of inherent
4   superiority/inferiority, inherent racism, sexism, et cetera,
5   that the statute contemplates. That's something far narrower,
6   it's something biological, innate, not just simply something
7   that would be more cultural or learned behavior, and I think
8   that is reflected in the AG opinion, it's reflected in our
9   briefing, and that's the distinction. You can certainly teach
10  about the concept. I don't understand structural racism to say
11  person X is white and therefore was born racist, which I think
12  is where you would start to cross the line with the statute.
13  THE COURT: And you would say teachers have no trouble
14  teaching implicit bias training in their classroom, implicit
15  bias, linking them to the famous website where you can engage
16  in questions and get an implicit bias score? None of that
17  could in any way cross into the line of being impermissible, in
18  danger of violation of the statute? Is that your view?
19  MR. GARLAND: It may well, again, require a teacher to
20  identify what they're not providing the information to do, and
21  the teacher may well have to say, and this is, again, trying --
22  THE COURT: What if a student says, The implicit bias
23  data tells us that we're inherently biased; we can't avoid our
24  discriminatory thinking? That isn't my view of what the
25  implicit bias data suggests, but students are going to raise

1   those kinds of concerns.  Are you saying that, unless they give
2   what you call a disclaimer, they have to correct the student,
3   essentially; otherwise they will be in violation?
4           MR. GARLAND:  Well, I think it depends on how the
5   student raises it.  I think if a teacher were to provide
6   implicit bias training or to teach about implicit bias, and a
7   student were to run home and say, The teacher taught me that I
8   am inherently racist, I don't think that's a violation.  I
9   think that perhaps could result in a complaint, but that's the
10  sort of thing that would be weeded out based on the constraints
11  that are in the statute.  I think if a student, going back to
12  your initial hypothetical, were to bring it up to the teacher
13  in class, a teacher might have to consider how to contextualize
14  that statement.
15                       (End of excerpt)
16  (Proceedings continued on the record that are not included in
17  this excerpt transcript)

C E R T I F I C A T E

I, Brenda K. Hancock, RMR, CRR and Official Court Reporter of the United States District Court, do hereby certify that the foregoing transcript constitutes, to the best of my knowledge, skill, ability and belief, a true and accurate transcription of the within proceedings.

Date: ___5/28/24___        /s/ *Brenda K. Hancock*
                           Brenda K. Hancock, RMR, CRR
                           Official Court Reporter